# UNITED STATES DISTRICT COURT
## FOR THE
### DISTRICT OF CONNECTICUT

MALCOLM H. WIENER          :      CIVIL ACTION NO

Plaintiff,                  :

       v.                    :

AXA EQUITABLE LIFE INSURANCE    :      JUNE 10, 2015
COMPANY

Defendant.

## NOTICE OF REMOVAL

     To the Judges of the United States District Court for the District of Connecticut, Defendant, AXA Equitable Life Insurance Company, hereby files this Notice of Removal pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 1441, and 28 U.S.C. § 1446 and, in support thereof, respectfully states:

     1.      On or about May 15, 2015, Defendant, AXA Equitable Life Insurance Company through the State of Connecticut, Office of the Insurance Commissioner, was served with a Summons and Complaint for this matter. On May 26, 2015, the Summons and Complaint for this matter was filed in the Superior Court for the Judicial District of Stamford at Stamford entitled: Malcolm H. Wiener v. AXA Equitable Life Insurance Company, with docket number FST-CV15-6025418-S (hereinafter "State Action") returnable June 2, 2015, a copy of which is attached hereto as Exhibit A.

8.     The State Action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332 because (1) the citizenship of the Defendant is wholly diverse from the citizenship of the Plaintiff; and (2) the amount in controversy, exclusive of interest and costs, likely exceeds One Hundred Thousand Dollars ($100,000.00).  Removal of this action to this Court is proper pursuant to 28 U.S.C. § 1441 *et seq*.

9.     Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is filed with this Court within thirty (30) days after receipt by the undersigned Defendant of the Summons and Complaint, setting forth the claims for relief upon which the action is based.

10.     Defendant, AXA Equitable Life Insurance Company, has complied with the procedural requirements for removal as set forth in 28 U.S.C. § 1446.

11.     The Superior Court for the Stamford at Stamford is located within the District of Connecticut, and, therefore, venue is proper pursuant to 28 U.S.C. § 86, because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

12.     A copy of the written notice required by 28 U.S.C. § 1446(d) is attached hereto as Exhibit C.

WHEREFORE, Defendant, AXA Equitable Life Insurance Company, respectfully removes this action from the Superior Court of Connecticut, Judicial District of Stamford, to this Court pursuant to 28 U.S.C. § 1332 and U.S.C. § 1441.

THE DEFENDANT,
AXA EQUITABLE LIFE INSURANCE
COMPANY

BY:    /s/ Robert E. Cassot
          Robert W. Cassot, Esq.
          Federal Bar No.: ct24094
          Morrison Mahoney LLP
          One Constitution Plaza, 10th Floor
          Hartford, CT 06103
          Telephone: (860) 616-4441
          Fax: (860) 244-3800
          E-Mail: rcassot@morrisonmahoney.com

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically on this 10th day of June, 2015, and was served by mail to anyone unable to accept electronic filing and to plaintiff's counsel named below. Notice of this filing will be sent by e-mail to all parties by operation of the Court 's electronic filing system or by mail to anyone unable accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

Nicole C. Bikakis, Esq.
Tracy A. Saxe, Esq.
Saxe Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT 06517
T:       203-287-2100
F:       203-287-8847
E:       tas@sdvlaw.com
ncb@sdvlaw.com
*Counsel for Plaintiff*

BY:   __/s/ Robert E. Cassot__
Robert W. Cassot, Esq.

1236608v1

# EXHIBIT A

A. DeliLLO
12:58 5/15/15

**SUMMONS - CIVIL**
JD-CV-1  Rev. 9-14
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259  P.B. Secs. 3-1 through 3-21, 8-1

STATE OF CONNECTICUT
**SUPERIOR COURT**
www.jud.ct.gov

· See other side for instructions

☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.

☒ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.

☒ "X" if claiming other relief in addition to or in lieu of money or damages.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code)* *(C.G.S. §§ 51-346, 51-350)* | Telephone number of clerk *(with area code)* | Return Date *(Must be a Tuesday)* | | |
|---|---|---|---|---|
| 123 Hoyt Street, Stamford, Connecticut 06905 | ( 203 ) 965-5308 | June | 2 | 2015 |
| | | Month | Day | Year |

| ☒ Judicial District | G.A. | At *(Town in which writ is returnable)* *(C.G.S. §§ 51-346, 51-349)* | Case type code *(See list on page 2)* | |
|---|---|---|---|---|
| ☐ Housing Session | Number: | Stamford | Major: C | Minor: 20 |

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(to be entered by attorney only)* |
|---|---|
| Nicole C. Bikakis, Esq., Saxe Doernberger & Vita, P.C., 1952 Whitney Avenue, Connecticut 06517 | 412266 |

| Telephone number *(with area code)* | Signature of Plaintiff *(If self-represented)* |
|---|---|
| ( 203 ) 287-2100 | |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book | ☒ Yes   ☐ No | Email address for delivery of papers under Section 10-13 *(if agreed to)* |
|---|---|---|
| | | ncb@sdvlaw.com |

| Number of Plaintiffs: 1 | Number of Defendants: 1 | ☐ Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; Country, if not USA)* | |
|---|---|---|
| First Plaintiff | Name:  Malcolm H. Wiener<br>Address: 66 Vista Drive, Greenwich, Connecticut 06830 | P-01 |
| Additional Plaintiff | Name:<br>Address: | P-02 |
| First Defendant | Name:  AXA Equitable Life Insurance Company, 1290 Avenue of the Americas 13th Fl., NY, NY 10104 served<br>Address: via Insurance Commissioner, Connecticut Insurance Dept.,153 Market St., Hartford, CT 06103 | D-01 |
| Additional Defendant | Name:<br>Address: | D-02 |
| Additional Defendant | Name:<br>Address: | D-03 |
| Additional Defendant | Name:<br>Address: | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at  www.jud.ct.gov  under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at  www.jud.ct.gov  under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed *(Sign and "X" proper box)* | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | Name of Person Signing at Left | Date signed |
|---|---|---|---|
| *(signature)* | | Nicole C. Bikakis | 05/13/2015 |

| If this Summons is signed by a Clerk: | For Court Use Only |
|---|---|
| a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.<br>b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.<br>c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.<br>d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint. | File Date |

| I certify I have read and understand the above: | Signed *(Self-Represented Plaintiff)* | Date |
|---|---|---|

Name and address of person recognized to prosecute in the amount of $250

**Sally C. Richmond, 1952 Whitney Avenue, Hamden, Connecticut 06517**

| Signed *(Official taking recognizance)* "X" proper box) | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | Date |
|---|---|---|
| *(signature)* | | 5/13 |

A TRUE COPY
ATTEST:
SANFORD P. LEVINE
CONNECTICUT STATE MARSHAL
AN INDIFFERENT PERSON

(Page 1 of 2)

## *STATE OF CONNECTICUT*
## OFFICE OF INSURANCE COMMISSIONER

P.O. BOX 816
HARTFORD, CT 06142-0816

This is to certify that the foregoing is a copy of a process served upon me, a person in the office of the Insurance Commissioner of Connecticut, designated by him, pursuant to the statute in such cases made and provided, as one upon whom, in his absence, service of process may be made, upon an insurance company, corporation or association, with the same force and effect as though made on such commissioner personally.

May 15, 2015                                         12:58 pm

*Katharine C. Wade*

*Insurance Commissioner*



## *STATE OF CONNECTICUT*
## OFFICE OF INSURANCE COMMISSIONER

P.O. BOX 816
HARTFORD, CT 06142-0816

SERVICE OF PROCESS
AXA EQUITABLE LIFE INS CO
CORPORATION SERVICE CO
50 WESTON STREET
HARTFORD CT 06120-1537

**Pursuant to the statute in such cases made and provided, I forward herewith a copy of the process served as set forth in the certificate thereto attached.**

Respectfully yours,

*Katharine C. Wade*

*Insurance Commissioner*

RETURN DATE: JUNE 2, 2015           :       SUPERIOR COURT

MALCOLM H. WIENER                    :       J.D. OF STAMFORD

v.                                   :       AT STAMFORD

AXA EQUITABLE LIFE INSURANCE COMPANY :       MAY 13, 2015

<u>COMPLAINT</u>

The Plaintiff, MALCOLM H. WIENER ("Plaintiff"), by and through his attorneys, Saxe Doernberger & Vita, P.C., as and for his Complaint, alleges as follows:

<u>THE PARTIES</u>

1.      Plaintiff is a citizen of the State of Connecticut, who presently resides at 66 Vista Drive, Greenwich, Connecticut 06830.

2.      Upon information and belief, AXA Equitable Life Insurance Company ("Defendant") is an insurance company duly organized and existing under the laws of the State of New York with its principal place of business located at 1290 Avenue of the Americas, 13th Floor, New York, New York 10104.

<u>JURISDICTION AND VENUE</u>

3.      This Court has subject matter jurisdiction over this action pursuant to Conn. Gen. Stat. § 33-929(f), in that Plaintiff is a resident of this State and Defendant is engaged in the business of insurance in this State.

4.      Venue is appropriate in this judicial district pursuant to Conn. Gen Stat. § 51-345 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and Plaintiff resides in this judicial district.

5.      Defendant transacts business in this State and is subject to the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

### The Policies

6.      Plaintiff acquired a series of flexible premium life insurance policies from Defendant (collectively, the "Policies") as follows:

a.      On or about October 14, 1986, policy number 36 224 259 (attached hereto as "Exhibit A") in the amount of Nine Million Dollars ($9,000,000.00), which on or about November 30, 1987 was reduced to Seven Million Two Hundred Thousand Dollars ($7,200,000.00);

b.      On or about May 14, 1987, policy number 37 205 147 (attached hereto as "Exhibit B") in the amount of Nine Million Dollars ($9,000,000.00), which on or about November 30, 1987 was reduced to Seven Million Two Hundred Thousand Dollars ($7,200,000.00); and

c.      On or about May 14, 1987, policy number 37 205 155 (attached hereto as "Exhibit C") in the amount of Two Million Dollars ($2,000,000.00), which on or about November 30, 1987 was reduced to One Million Six Hundred Thousand Dollars ($1,600,000.00).

7.      The Policies are universal life insurance plans that stay in effect throughout Plaintiff's life provided that the conditions of the Policies are met.

8.      Plaintiff was born on July 3, 1935 and purchased the policies at Fifty-One (51) years of age.

2

9.     Plaintiff resided in Greenwich, Connecticut at the time the Policies were issued.

10.     David Hungerford ("Hungerford"), an agent and/or representative of Defendant, was a retirement planning specialist and financial advisor assigned to the Policies by Defendant.

11.     Hungerford was responsible for advising Plaintiff with respect to the financial management of the Policies.

12.     Plaintiff's former company, Millburn Corporation ("Millburn"), a New York company, was responsible for maintaining the Policies on Plaintiff's behalf, including paying any and all premiums.

13.     Plaintiff, through Millburn, relied on Hungerford's advice in maintaining the Policies.

14.     Millburn's business address was designated as the mailing address for the Policies.

15.     Upon information and belief, on or about March 4, 2009, AXA unilaterally instituted a change of address for the Policies, wherein the mailing address was changed from Millburn's address to Plaintiff's personal residence.

16.     Beginning on or about March 4, 2009, Plaintiff proceeded to forward any and all mail relating to the Policies received at his personal residence directly to Millburn.

17.     The Policies provide for semi-annual premium payments due on the first day of May and the first day of November of each year.

18.     Pursuant to the express terms of the Policies, Defendant is required to send a premium reminder notice to Plaintiff's last known address prior to each premium due date.

19.     The Policies require that Plaintiff maintain the cash value of the Policies at a level sufficient to cover the cost of monthly deductions.

20.     Pursuant to the express terms of the Policies, if upon any monthly anniversary the cash value of the Policies is insufficient to cover the cost of monthly deductions, Defendant is required to send a policy lapse notice to Plaintiff's last known address informing Plaintiff of the calculated shortfall and resultant premium payment needed to prevent the Policies from lapsing.  The Policies provide Plaintiff a Sixty One (61)-day grace period in which to make such payment

21.     The only way Plaintiff or Millburn would know whether there was a premium shortfall and in what amount is by receipt of the policy lapse notice from Defendant.

22.     Defendant copied Hungerford on all premium reminder notices and policy lapse notices.

23.     Despite being copied on all policy lapse notices, Hungerford never advised Plaintiff as to how to properly maintain the Policies.

24.     From the time the Policies were issued to the present date, Plaintiff has paid in excess of Three Million Dollars ($3,000,000.00) in premiums.

25.     Plaintiff's intention was, and remains, to continue to pay premium as required by the terms of the Policies.

4

### Defendant's Conduct in Terminating the Policies

26.     On or about December 2, 2013, when Plaintiff was Seventy Eight (78) years old, Plaintiff received by way of regular mail a notice of policy termination for each of the Policies (attached hereto as Exhibit D) along with an application for reinstatement.

27.     The purpose of the application for reinstatement as stated on the application form is to "[p]rovide a preliminary indication of [the Plaintiff's] insurability[.]"

28.     The Policy states that Defendant has the discretion to approve a reinstatement application if the "evidence of insurability" provided by Plaintiff is "satisfactory" to the Defendant.

29.     Prior to December 2, 2013, Plaintiff had not received any notice that either the cash value of the Policies was insufficient to cover the cost of monthly deductions or that premium was past due.

30.     Immediately upon receipt of the policy termination notices, Plaintiff set about completing the application for reinstatement and obtaining the requested medical evidence of insurability.

31.     On or about December 23, 2013, Plaintiff submitted the reinstatement application complete with the required medical evidence of insurability.

32.     On or about February 21, 2014, Millburn, on behalf of Plaintiff, sent a letter to Defendant informing Defendant that a premium reminder notice was never received by Plaintiff or Millburn and enclosed a premium payment in the form of a single check in the amount of Ninety Six Thousand and Ninety Three Dollars ($96,093.00) (attached hereto as Exhibit E).  That figure was based on the last premium payment notice in Plaintiff's and Millburn's possession, which was dated July 1, 2013.

33.     On or about February 21, 2014, Defendant accepted and cashed Plaintiff's check.

34.     On or about February 27, 2014, Hungerford sent an email to Millburn stating that he was pursuing reinstatement of the Policies (attached hereto as Exhibit F).

35.     On or about March 3, 2014, Millburn, on behalf of Plaintiff, contacted Defendant to advise that Plaintiff had not received a premium payment notice since July 1, 2013, to contest the termination of the Policies by Defendant on December 2, 2013, and to request that the Policies be reinstated.

36.     On or about March 5, 2014, Defendant refunded Plaintiff's February 21, 2014 payment by way of three separate AXA checks accompanied by a notice stating that Plaintiff's reinstatement application was still under the consideration of Defendant's underwriting department.

37.     On or about March 5, 2014, in response to Millburn's March 3, 2014 inquiry, Defendant sent a letter to Plaintiff (attached hereto as Exhibit G), enclosing policy lapse notices generated and allegedly sent to Plaintiff on October 1, 2013, stating that the termination of the Policies was valid, that a premium reminder notice was not sent out because it is Defendant's policy to not send out premium reminder notices during policy provided grace periods, that reinstatement of the Policies would not be considered absent evidence of medical insurability, and that Defendant would continue monitoring the status of Plaintiff's December 23, 2013 reinstatement application.

38.     The copies of the October 1, 2013 policy lapse notices attached to Defendant's March 5, 2014 letter constitute the first time Plaintiff ever received notice that

the Policies' cash value was insufficient on October 1, 2013 or of the amount of premium payment required to keep the Policies in force.

39.     On or about March 24, 2014, Defendant sent a notice to Plaintiff formally declining Plaintiff's reinstatement application, stating only that "[t]he decision results from our evaluation of specific items of information obtained from you in your application, or supplements to the application statements: specifically information received from Dr. Barry Boyd" (attached hereto as Exhibit H).

40.     Plaintiff is and has been ready, willing and able to pay any and all outstanding premium amounts owed on the Policies.

41.     Defendant has refused any and all of Plaintiff's attempts to make payment and reinstate the Policies.

42.     Despite significant efforts, Plaintiff has been unable to secure replacement life insurance coverage.

### COUNT I – DECLARATORY AND INJUNCTIVE RELIEF

43.     The allegations of paragraphs 1 through 42 are hereby repeated and realleged as if fully set forth herein.

44.     Defendant failed to send a policy lapse notice to Plaintiff on or before October 1, 2013, which is a condition precedent to declaring the Policies terminated for nonpayment of premium.

45.     Defendant failed to send a premium reminder notice for the November 1, 2013 premium due date, as is required by the express terms of the Policies.

46.     Defendant wrongfully terminated the Policies on December 2, 2013.

47. An actual case and justiciable controversy exists between Plaintiff and Defendant regarding whether Defendant is obligated to reinstate the Policies, and a declaratory judgment pursuant to Conn. Gen. Stat. §52-29 is necessary and appropriate to determine the rights and duties of Plaintiff and Defendant concerning the Policies.

48. Plaintiff seeks a declaration that the Policies remain in force pursuant to Conn. Gen. Stat. § 52-29.

## COUNT II – EQUITABLE REINSTATEMENT

49. The allegations of paragraphs 1 through 42 are hereby repeated and realleged as if fully set forth herein.

50. Enforcing the termination of the Policies will result in Plaintiff suffering a disproportionate forfeiture, given the more than Three Million Dollars ($3,000,000.00) paid into the Policies over twenty-six years, and Plaintiff's inability to secure replacement life insurance coverage.

51. Defendant's conduct in withholding the October 1, 2013 policy lapse notice and the premium reminder notice for the November 1, 2013 premium due date prevented Plaintiff from curing the lapse of the Policies prior to the December 1, 2013 grace period expiration date, thereby bringing about the termination of the Policies.

52. Defendant's conduct in withholding the October 1, 2013 policy lapse notice and the premium reminder notice for the November 1, 2013 premium due date was intended to mislead Plaintiff as to the status of the Policies.

53. Defendant's conduct in withholding the October 1, 2013 policy lapse notice and the premium reminder notice for the November 1, 2013 premium due date indicates Defendant's intent to leverage the lapsed status of the Policies in order to bring about the

termination of the Policies and thereby evade responsibility for payment of the Policies' significant death benefits.

54.    Plaintiff relied on the receipt of policy lapse notices and premium reminder notices to ascertain the status of the Policies, to determine if any premiums were owed, and, if so, to learn the proper amount to pay Defendant.   Without said notice, Plaintiff would not know if any payment was due nor the amount of such required payment.

55.    Defendant knew or should have known that Plaintiff relied upon Defendant to provide the aforementioned policy lapse notices and premium reminder notices.

56.    Defendant's conduct in assigning Hungerford as the financial advisor on the Policies, and Hungerford's conduct in failing to advise Plaintiff with respect to how to financially manage the Policies to keep them from lapsing, after having led Plaintiff and Millburn to rely on the receipt of such advice, ensured that Plaintiff would be in the position where a single missed policy lapse notice would bring about the termination of the Policies, and thereby allow Defendant to evade responsibility for payment of the Policies' significant death benefits.

57.    Defendant knew or should have known that Plaintiff would rely on Hungerford to provide advice with respect to how to financially manage the Policies to keep them from lapsing.

58.    Plaintiff's failure to remit payment of the outstanding premiums prior to December 2, 2013 was unintentional, as Plaintiff was not aware that any premiums were outstanding.

59.    Plaintiff's failure to remit payment of the outstanding premiums prior to December 2, 2013 was a direct result of Defendant's failure to issue the October 1, 2013

9

policy lapse notice and/or the premium reminder notice for the November 1, 2013 premium due date, and Hungerford's conduct in failing to advise Plaintiff with respect to how to financially manage the Policies to keep them from lapsing.

60.     Plaintiff had no other reasonable means of determining the status of the Policies other than relying on the receipt of notices from the Defendant, and/or the receipt of advice from Hungerford.

61.     Plaintiff's failure to remit payment of the outstanding premiums prior to December 2, 2013 did not prejudice the Defendant as Plaintiff was ready, willing and able to remit full payment for any outstanding premiums upon notice that the Policies' cash value was insufficient, and in fact did tender such a payment to the Defendant upon receiving notice of the same.

62.     Defendant will not suffer any substantial or undue prejudice from reinstatement of the Policies since (1) Plaintiff is ready, willing, and able to pay all outstanding premiums with interest; and (2) Defendant has indicated its willingness to reinstate the Policies if Plaintiff provided "evidence of medical insurability."

63.     Plaintiff is ready, willing and able to pay any and all outstanding premiums needed to reinstate the Policies.

64.     Plaintiff has provided the required evidence of medical insurability.

65.     In light of the aforementioned circumstances surrounding Plaintiff's failure to pay the outstanding premiums prior to December 2, 2013, Plaintiff seeks equitable reinstatement of the Policies.

## COUNT III – BREACH OF CONTRACT
### (Failure to Send October 1, 2013 Policy Lapse Notice)

66.   The allegations of paragraphs 1 through 42 are hereby repeated and realleged as if fully set forth herein.

67.   Defendant failed to send a policy lapse notice to Plaintiff's last known address when, on October 1, 2013, the value of the Policies was insufficient to cover the monthly deductions.

68.   Defendant's conduct in withholding the October 1, 2013 policy lapse notice is a breach of the express terms of the Policies.

69.   Defendant's breach prevented Plaintiff from remitting timely payment for the premium owed as of October 1, 2013, as a result of which Plaintiff has suffered damages in the form of the terminated Policies.

70.   Plaintiff seeks to be put back in the position it was in prior to Defendant's breach by having the Policies reinstated.

## COUNT IV – BREACH OF CONTRACT
### (Failure to Send November 1, 2013 Premium Reminder Notice)

71.   The allegations of paragraphs 1 through 42 are hereby repeated and realleged as if fully set forth herein.

72.   Defendant failed to send out a premium reminder notice for the November 1, 2013 premium due date.

73.   Defendant's conduct in withholding the premium reminder notice is a breach of the express terms of the Policies.

74.   Plaintiff has suffered damages as a result of Defendant's breach in the form of the terminated Policies.

11

75.     Plaintiff seeks to be put back in the position it was in prior to Defendant's breach by having the Policies reinstated.

### COUNT V – VIOLATION OF CUTPA

76.     The allegations of paragraphs 1 through 42 are hereby repeated and realleged as if fully set forth herein.

77.     At all relevant times hereto, Defendant was engaged in the conduct of trade or commerce as defined by the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a(3) and the Connecticut Unfair Insurance Practices Act (CUIPA), Conn. Gen. Stat. § 38a-815.

78.     At all relevant times hereto, Defendant was an insurer as defined by the Connecticut Unfair Insurance Practices Act (CUIPA), Conn. Gen. Stat. § 38a-815.

79.     At all relevant times hereto, Defendant was prohibited by CUTPA § 42-110b from engaging in unfair or deceptive acts or practices in the conduct of trade or commerce.

80.     Defendant has engaged in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of CUIPA § 38a-816(1), CUTPA § 42-110b, and the public policy of the State of Connecticut by engaging in conduct including, but not limited to, the following:

> a. Misrepresenting the benefits, advantages, terms or conditions of the Policies by failing to send out the policy lapse notice and/or the premium reminder notice in order to procure the lapse and forfeiture of the Policies and avoid paying out the significant death benefits under the Policies, in violation of CUIPA § 38a-816(1)(a);

12

b. Making a misrepresentation for the purpose of inducing or tending to induce a forfeiture or lapse of the Policies by failing to send out the policy lapse notice and/or the premium reminder notice in order to procure the lapse and forfeiture of the Policies and avoid paying out the significant death benefits under the Policies, in violation of CUIPA § 38a-816(1)(f);

c. Failing to send out the policy lapse notice and/or premium reminder notice in order to procure the lapse and forfeiture of the Policies and avoid paying out the significant death benefits under the Policies, in violation of CUTPA § 42-110b; and/or

d. Employing the practice of not sending out premium reminder notices during policy-provided grace periods, which has the resulting and/or intended effect of procuring the lapse and forfeiture of variable premium life insurance policies, thereby allowing Defendant to avoid paying out death benefits in violation of CUTPA § 42-110b.

81.     Such immoral, unethical, oppressive and/or unscrupulous conduct offends public policy as established by Connecticut statutes, common law and otherwise, including but not limited to Conn. Gen. Stat. § 38a-816.

82.     Defendant's promise to send out premium reminder notices, as expressed in the Policies, constitutes a misrepresentation as to the terms and conditions of the Policies as Defendant never intended on sending premium reminder notices during policy-provided grace periods, which Defendant knew or reasonably should have known would mislead the Plaintiff and thereby result in the termination of the Policies.

13

83.    Defendant's conduct in withholding the October 1, 2013 policy lapse notice and/or the November 1, 2013 premium reminder notice is an omission constituting a misrepresentation of fact as to the status of the Policies, which Defendant knew or reasonably should have known would mislead the Plaintiff and thereby result in the termination of the Policies.

84.    Defendant's immoral, unethical, oppressive and/or unscrupulous conduct as aforesaid is the proximate cause of the termination of the Policies, and has thereby caused significant injury to Plaintiff, which the Plaintiff could not reasonably have avoided.

85.    Defendant's immoral, unethical, oppressive and/or unscrupulous conduct has no countervailing benefits to consumers or competition.

86.    Defendant's immoral, unethical, oppressive and/or unscrupulous conduct was intended to rob Plaintiff of his rights and benefits under the Policies, namely the pay out of death benefits to his beneficiaries, for which benefits Plaintiff has paid in excess of Three Million Dollars ($3,000,000.00) to date.

87.    Defendant's immoral, unethical, oppressive and/or unscrupulous conduct reveals a reckless indifference to the rights of the Plaintiff and/or an intentional and wanton violation of those rights.

## COUNT VI – FRAUDULENT MISREPRESENTATION

88.    The allegations of paragraphs 1 through 42 are hereby repeated and realleged as if fully set forth herein.

89.    Defendant's statement in the Policies that it would provide premium reminder notices in advance of the semi-annual premium due date was a false

representation of fact made to the Plaintiff in light of Defendant's policy of not sending out premium reminder notices during policy provided grace periods.

90.     Defendant knew that it would not provide a premium reminder notice during a policy provided grace period at the time it made the statement and did not inform the Plaintiff as such.

91.     Defendant's promise to provide premium reminder notices was intended to induce Plaintiff to rely on the receipt of said notices during policy-provided grace periods in order to increase the likelihood that Plaintiff would fail to make payment within the grace period and thereby bring about the termination of the Policies so that Defendant could avoid payment of the significant death benefits under the Policies and retain the benefit of the premiums paid thereunder.

92.     Plaintiff relied on the receipt of premium reminder notices to ascertain the status of the Policies, to determine if any premiums were owed, and, if so, to learn the proper amount to pay to the defendant.  Without said notice, Plaintiff would not know if any payment was due nor the amount of such required payment.

93.     Plaintiff's reliance on Defendant's promise to send out a premium reminder notice brought about Plaintiff's failure to remit payment of the outstanding premiums prior to December 2, 2013, to Plaintiff's detriment.

<u>COUNT VII.– BREACH OF COVENANT OF GOOD FAITH<br>AND FAIR DEALING (BAD FAITH)</u>

94.     The allegations of paragraphs 1 through 42 are hereby repeated and realleged as if fully set forth herein.

95.   The Policies are contractual agreements which contain an implied covenant of good faith and fair dealing, requiring Defendant to deal honestly and in good faith with Plaintiff.

96.   Defendant's conduct in withholding the October 1, 2013 policy lapse notice and/or the premium reminder notice for the November 1, 2013 premium due date was purposeful and was intended to procure the termination of the Policies so that Defendant could avoid payment of the significant death benefits owed under the Policies.

97.   Defendant's conduct in assigning Hungerford as the financial advisor on the Policies, and Hungerford's conduct in failing to advise Plaintiff with respect to how to financially manage the Policies to keep them from lapsing, after having lead Plaintiff and Millburn to rely on the receipt of such advice, was purposeful and intended to ensure that Plaintiff would be in the position where a single missed policy lapse notice would bring about the termination of the Policies, and thereby allow Defendant to evade responsibility for payment of the Policies' significant death benefits.

98.   Defendant's aforesaid conduct reveals a design to mislead or deceive Plaintiff into failing to timely pay the premium amounts owed within the Policies' grace period and thereby procure the Policies' terminations.

99.   Defendant's denial of Plaintiff's reinstatement application on the basis of unsatisfactory "evidence of medical insurability," knowing that the Policies were wrongfully terminated, is deceptive and wrongful.

100.   Defendant's conduct in procuring the termination of life insurance policies, and thereby the forfeiture of death benefits for Plaintiff's beneficiaries, is dishonest, egregious, morally reprehensible, and constitutes bad faith.

101.   Defendant's conduct constitutes a breach of the implied covenant of good

faith and fair dealing.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for judgment as follows:

a)   A declaration that Defendant must reinstate the Policies;

b)   Attorney's fees;

c)   Costs;

d)   Punitive damages;

e)   Post judgment interest;

f)   Any other relief which the Court may find to be just and equitable.

DATED:   Hamden, Connecticut
         May 13, 2015

THE PLAINTIFF,
MALCOLM H. WIENER


Tracy Alan Saxe, Esq.
Nicole C. Bikakis, Esq.
SAXE DOERNBERGER & VITA, P.C.
Attorneys for Plaintiff
1952 Whitney Avenue
Hamden, Connecticut    06517
(203) 287-2100
(203) 287-8847
tas@sdvlaw.com
ncb@sdvlaw.com
Juris No. 412266

RETURN DATE: JUNE 2, 2015             :     SUPERIOR COURT

MALCOLM H. WIENER               :     J.D. OF STAMFORD

v.                           :     AT STAMFORD

AXA EQUITABLE LIFE INSURANCE COMPANY   :     MAY 13, 2015

<u>STATEMENT OF DEMAND</u>

The amount in demand is greater than FIFTEEN THOUSAND DOLLARS AND NO

CENTS ($15,000.00), exclusive of interest and costs.

THE PLAINTIFF,
MALCOLM H. WIENER

Tracy Alan Saxe, Esq.
Nicole C. Bikakis, Esq.
SAXE DOERNBERGER & VITA, P.C.
Attorneys for Plaintiff
1952 Whitney Avenue
Hamden, Connecticut   06517
(203) 287-2100
(203) 287-8847
tas@sdvlaw.com
ncb@sdvlaw.com
Juris No. 412266

## CERTIFICATION

Pursuant to Conn. Gen. Stat. 42-110g(c), this is to certify that a copy of the

foregoing was sent via regular mail, on this 13th day of May 2015, to the following:

Office of the Attorney General
55 Elm Street
Hartford, CT 06106

Commissioner of Consumer Protection
165 Capitol Avenue
Hartford, CT 06106


_____
Nicole C. Bikakis, Esq.

20



# EXHIBIT A



|  |  |
|---|---|
| *INSURED PERSON* | MALCOLM H WIENER |
| *POLICY OWNER* | MALCOLM H WIENER |
| *FACE AMOUNT OF INSURANCE* | $7,200,000 |
| *DEATH BENEFIT* | OPTION B (SEE PAGE 6) |
| *POLICY NUMBER* | 36 224 259 |

**LIFE
INSURANCE
POLICY**

**We agree** to pay the insurance benefits and to provide the other rights and benefits of this policy in accordance with its provisions.

### Flexible Premium Adjustable Life Plan

This is a flexible premium adjustable life policy. You can:

- increase or decrease the face amount of insurance;
- change the amount and frequency of the premiums you pay;
- change the death benefit option.

This is a non-participating policy.

All of these rights and benefits are subject to the terms and conditions of this policy. All requests for policy changes are subject to our approval and may require evidence of insurability.

*Pauline Sherman*

Pauline Sherman, Senior Vice President,
Secretary and Associate General Counsel

Christopher M. Condron
Chairman and Chief Executive Officer

**You Have Ten Days to Examine this Policy.** If you are not satisfied with this policy for any reason, you may cancel it by returning it to us within 10 days after you receive it. If you do, we will refund the premium that was paid.

No. 85-200

## *Contents*

*Policy Information*   3

*Table of Guaranteed Maximum Insurance Costs*   4

*Who Benefits from this Policy?*   5

*The Insurance Benefits We Pay*   5

*The Premiums You Pay*   7

*Your Policy Account and How it Works*   8

*Our Annual Report to You*   10

*The Cash Surrender Value of this Policy*   10

*How a Loan Can be Made*   11

*How Benefits are Paid*   12

*Other Important Information*   13



*A copy of the application for this policy and any additional benefit riders are at the back of the policy.*

### *In this policy:*

*"We"*, *"our"* and *"us"* mean Equitable Variable Life Insurance Company.

*"You"* and *"your"* mean the owner of the policy at the time an owner's right is exercised.

References to amounts and values include all adjustments provided by this policy.

No. 85-200                    Page 2

POLICY INFORMATION

INSURED PERSON    MALCOLM H WIENER

POLICY OWNER     MALCOLM H WIENER
FACE AMOUNT
OF INSURANCE     $7,200,000

DEATH BENEFIT    OPTION B (SEE PAGE 6)

POLICY NUMBER    36224259


BENEFICIARY      CAROLYN SEELY WIENER

REGISTER DATE    NOV 01, 1986            ISSUE AGE   51

DATE OF ISSUE    FEB 11, 1987                       SEX   MALE

                                          NON-SMOKER


PARTIAL
CASH VALUE
WITHDRAWAL       MINIMUM WITHDRAWAL IS $500.

STATE OF
RESIDENCE        CONNECTICUT


AN INITIAL PREMIUM PAYMENT OF $96,782.50 IS DUE ON OR BEFORE DELIVERY
OF THE POLICY.

THE PLANNED PERIODIC PREMIUM OF $96,782.50 IS PAYABLE SEMIANNUALLY.

PREMIUM PAYMENTS ARE FOR THE INSURANCE BENEFITS AND ANY ADDITIONAL
BENEFIT RIDERS LISTED BELOW.

THE PREMIUM PAYMENTS SHOWN ABOVE MAY NOT BE SUFFICIENT TO CONTINUE THE
POLICY AND LIFE INSURANCE COVERAGE IN FORCE TO THE FINAL POLICY DATE,
WHICH IS THE POLICY ANNIVERSARY NEAREST THE INSURED PERSON'S 95TH
BIRTHDAY.  THE PERIOD FOR WHICH THE POLICY AND COVERAGE WILL CONTINUE
IN FORCE WILL DEPEND ON:  (1) THE AMOUNT, TIMING AND FREQUENCY OF PREMIUM
PAYMENTS; (2) CHANGES IN THE FACE AMOUNT OF INSURANCE AND THE DEATH BENEFIT
OPTIONS; (3) CHANGES IN THE INTEREST RATES CREDITED, AND IN THE MONTHLY
COST OF INSURANCE DEDUCTIONS FROM THE POLICY ACCOUNT FOR THIS POLICY AND
ANY BENEFITS PROVIDED BY RIDERS TO THIS POLICY; AND (4) LOAN AND PARTIAL
NET CASH SURRENDER VALUE WITHDRAWAL ACTIVITY.

85-200-3NY



POLICY INFORMATION CONTINUED - POLICY NUMBER 36224259

---------------TABLE OF EXPENSE CHARGES----------------

INITIAL ADMINISTRATIVE CHARGE:

   $250 SUBTRACTED FROM THE INITIAL PREMIUM PAYMENT.

CHARGE FOR APPLICABLE TAXES:



   2% OF EACH PREMIUM PAYMENT.  THIS AMOUNT IS SUBTRACTED FROM EACH
   PREMIUM PAYMENT.  WE RESERVE THE RIGHT TO CHANGE THIS PERCENTAGE TO
   CONFORM TO CHANGES IN LEGISLATION OR IF THE INSURED PERSON CHANGES
   RESIDENCE.

MONTHLY ADMINISTRATIVE CHARGE:

   $4 DEDUCTED MONTHLY FROM THE POLICY ACCOUNT.  WE RESERVE THE RIGHT TO
   CHANGE THIS CHARGE, BUT IT WILL NEVER BE MORE THAN $8 A MONTH.  CHANGES
   WILL BE AS DESCRIBED IN "CHANGES IN POLICY COST FACTORS" ON PAGE 14.

FOR PARTIAL WITHDRAWAL OF NET CASH SURRENDER VALUE:

   $25 DEDUCTED FROM THE POLICY ACCOUNT WHENEVER THERE IS A PARTIAL NET CASH
   SURRENDER VALUE WITHDRAWAL.

FOR AN INCREASE YOU ASK FOR IN THE FACE AMOUNT OF INSURANCE:

   $1.50 FOR EACH $1,000 OF INCREASE (BUT NOT MORE THAN $250) IS DEDUCTED
   FROM THE POLICY ACCOUNT.

POLICY INFORMATION CONTINUED - POLICY NUMBER 36224259

--------------TABLE OF SURRENDER CHARGES--------------

| POLICY YEAR | CHARGE |
|---|---|
| 1 | $76,950 |
| 2 | 76,950 |
| 3 | 76,950 |
| 4 | 76,950 |
| 5 | 76,950 |
| 6 | 76,950 |
| 7 | 61,560 |
| 8 | 46,170 |
| 9 | 30,780 |
| 10 | 15,390 |

THE APPLICABLE SURRENDER CHARGE IS SUBTRACTED FROM THE POLICY ACCOUNT IF THE POLICY IS GIVEN UP FOR ITS NET CASH SURRENDER VALUE IN THE FIRST 10 POLICY YEARS. IF THE FACE AMOUNT OF INSURANCE IS REDUCED IN THE FIRST 10 POLICY YEARS, A PRO RATA SHARE OF THE SURRENDER CHARGE FOR THAT POLICY YEAR MAY BE SUBTRACTED FROM THE POLICY ACCOUNT. SEE PAGE 11.

--------------ENDORSEMENTS--------------

1. AMENDMENT TO SUICIDE EXCLUSION:  THE SUICIDE EXCLUSION IN THIS POLICY, OTHER THAN IN ANY ACCIDENTAL DEATH BENEFIT RIDER, IS AMENDED BY DELETING THE PHRASE "WHILE SANE OR INSANE."

2. WE WILL REVIEW THE POLICY ACCOUNT INTEREST RATES EACH POLICY YEAR AND WILL REVIEW THE COST OF INSURANCE RATES AT LEAST EVERY FIVE YEARS AND AT THE TIME ANY CHANGE IS MADE FOR NEW ISSUES.  ANY ADJUSTMENT IN THESE RATES WILL BE BY CLASS AND BASED UPON CHANGES IN FUTURE EXPECTATIONS FOR SUCH ELEMENTS AS INVESTMENT EARNINGS, MORTALITY, PERSISTENCY, EXPENSES AND TAXES, AND WILL BE DETERMINED IN ACCORDANCE WITH PROCEDURES AND STANDARDS ON FILE WITH THE NEW YORK INSURANCE DEPARTMENT.

3. THE INTEREST WE CREDIT TO THE POLICY ACCOUNT WITH RESPECT TO ANY LOANED AMOUNTS WILL BE AT AN ANNUAL RATE NOT LESS THAN THE RATE WE CHARGE FOR LOAN INTEREST REDUCED BY 2%; IN NO EVENT WILL WE CREDIT LESS THAN 4.5% A YEAR.

4. THE MONTHLY ADMINISTRATIVE CHARGE AS DESCRIBED ON PAGE 3 CONTINUED AND PAGE 10 OF YOUR POLICY WILL NOT APPLY.

POLICY INFORMATION CONTINUED – POLICY NUMBER 36224259

5. THE FIRST $1,000 OF POLICY ACCOUNT WILL BE CREDITED WITH 4.5% EFFECTIVE ANNUAL INTEREST.

6. AMENDMENT TO "POLICY LOANS" PROVISION:   THE THIRD SENTENCE IS DELETED.

7. AMENDMENT TO "THE BASIS WE USE FOR COMPUTATION" PROVISION:   THE LAST SENTENCE OF THE FIRST PARAGRAPH IS DELETED.

8. THE PHRASE "AS INTERPRETED BY US" IS DELETED FROM

    A.   ITEM 5 ON PAGE 7 OF THE POLICY;

    B.   THE THIRD PARAGRAPH ON PAGE 8;

    C.   THE FIRST PARAGRAPH ON PAGE 12; AND

    D.   THE THIRD PARAGRAPH ON PAGE 14.

9. THE PHRASE "WE DEEM IT" IS ALSO DELETED FROM THE THIRD PARAGRAPH ON PAGE 14.

S.85-98

85-200-3                    PAGE 3 - CONTINUED

EXHIBIT A

POLICY INFORMATION CONTINUED - POLICY NUMBER 36224259

------TABLE OF GUARANTEED MAXIMUM INSURANCE COSTS------

GUARANTEED MAXIMUM MONTHLY RATES PER $1,000
OF NET AMOUNT AT RISK (SEE PAGE 9)

| INSURED PERSON'S ATTAINED AGE | MONTHLY RATE | INSURED PERSON'S ATTAINED AGE | MONTHLY RATE |
|---|---|---|---|
| 51 | 0.61000 | 86 | 15.02167 |
| 52 | 0.66583 | 87 | 16.36667 |
| 53 | 0.72833 | 88 | 17.73833 |
| 54 | 0.80000 | 89 | 19.17167 |
| 55 | 0.87667 | 90 | 20.67750 |
| 56 | 0.96000 | 91 | 22.28750 |
| 57 | 1.04667 | 92 | 24.03333 |
| 58 | 1.14000 | 93 | 26.11000 |
| 59 | 1.23917 | 94 | 28.01333 |
| 60 | 1.35000 | | |
| 61 | 1.47333 | | |
| 62 | 1.61333 | | |
| 63 | 1.77250 | | |
| 64 | 1.94917 | | |
| 65 | 2.14333 | | |
| 66 | 2.35083 | | |
| 67 | 2.57250 | | |
| 68 | 2.80917 | | |
| 69 | 3.06500 | | |
| 70 | 3.35333 | | |
| 71 | 3.68167 | | |
| 72 | 4.06000 | | |
| 73 | 4.49583 | | |
| 74 | 4.98333 | | |
| 75 | 5.51333 | | |
| 76 | 6.07667 | | |
| 77 | 6.66583 | | |
| 78 | 7.27983 | | |
| 79 | 7.92417 | | |
| 80 | 8.63500 | | |
| 81 | 9.43083 | | |
| 82 | 10.33317 | | |
| 83 | 11.37333 | | |
| 84 | 12.51417 | | |
| 85 | 13.73750 | | |

85-200-4

PAGE 4

EXHIBIT A

## Who Benefits from this Policy?

**Owner.** The owner of this policy is the insured person unless stated otherwise in the application, or later changed.

If the insured person is living on the Final Policy Date defined in the Policy Information section, we will pay you the amount in the Policy Account on that date minus any outstanding loan and loan interest. This policy will then end.

As the owner, you are entitled to exercise all the rights of this policy while the insured person is living. To exercise a right, you do not need the consent of anyone who has only a conditional or future ownership interest in this policy.

**Beneficiary.** The beneficiary is as stated in the application, unless later changed. The beneficiary is entitled to the insurance benefits of this policy. If two or more persons are named, those who survive the insured person will share the insurance benefits equally, unless you have made another arrangement with us.

If there is no designated beneficiary living at the death of the insured person, we will pay the benefits to the surviving children of the insured person in equal shares. If none survive, we will pay the insured person's estate.

**Changing the Owner or Beneficiary.** While the insured person is living, you may change the owner or beneficiary by written notice in a form satisfactory to us. You can ask for such a form from our agent or by writing to us. The change will take effect on the date you sign the notice. But it will not apply to any payment we make or other action we take before we receive the notice. If you change the beneficiary, the previous arrangement you made as to a payment option for the benefits is cancelled. You may choose a payment option for the new beneficiary in accordance with "How Benefits Are Paid" on page 13.

**Assignment.** You can assign this policy but we will not be bound by an assignment unless we have received it in writing. Your rights and those of any other person referred to in this policy will be subject to the assignment. We assume no responsibility for the validity of an assignment.

## The Insurance Benefits We Pay

We will pay the insurance benefits of this policy to the beneficiary when we receive proof that the insured person died before the Final Policy Date. These insurance benefits include the following amounts, which we will determine as of the date of the insured person's death:

• the death benefit described below;

• plus any extra benefits that are from riders to this policy;

• minus any loan that was taken out on this policy;

• minus any overdue monthly deductions if the insured person dies during the grace period.



*THE INSURANCE*
*BENEFITS*
*WE PAY (continued)*

We will add interest to the resulting amount for the period from the date of death to the date of payment. We will compute the interest at a rate we determine, but not less than the greater of (a) the rate we are paying on the date of payment under the Deposit Option on Page 12; or (b) the rate required by any applicable law.

Payment of these benefits may also be affected by other provisions of this policy. See Pages 14 and 15, where we specify the suicide exclusion, our right to contest the policy, and what happens if age or sex has been misstated. Special exclusions or limitations (if any) are listed in the Policy Information section.

Death Benefit. The death benefit will be determined under either Option A or Option B below, whichever is chosen and is in effect on the date the insured person dies:

Under Option A, the death benefit is the greater of the following items (a) or (c).

Under Option B, the death benefit is the greater of the following items (b) or (c).

(a) The Face Amount of Insurance on the date of death.

(b) The Face Amount of Insurance *plus* the amount in the Policy Account on the date of death.

(c) A percentage of the amount in the Policy Account on the date of death. Such percentage is the applicable percentage from the table below for the insured person's age (nearest birthday) at the beginning of the policy year in which death occurs.

*TABLE OF*
*APPLICABLE PERCENTAGES*

For ages not shown, the applicable percentages shall decrease by a ratable portion for each full year

| Insured Person's Age | Percentage | Insured Person's Age | Percentage |
|---|---|---|---|
| 40 and under | 250% | 65 | 120% |
| 45 | 215 | 70 | 115 |
| 50 | 185 | 75 thru 90 | 105 |
| 55 | 150 | 95 | 100 |
| 60 | 130 | | |

Changing the Face Amount of Insurance or the Death Benefit Option. During the first policy year the death benefit option and the Face Amount of Insurance will be those you chose on the application for this policy and which are shown in the Policy Information section. At any time after the first policy year while this policy is in force, you may change the death benefit option or the Face Amount of Insurance by written request to us, subject to our approval and the following:

1.  You may ask us to increase the Face Amount of Insurance if you provide evidence satisfactory to us of the insurability of the insured person. Any increase you ask for must be at least $10,000. We will deduct the charge for such increase shown in the Policy Information section from the Policy Account as of the date the increase takes effect.

2.  You may ask us to reduce the Face Amount of Insurance but not to less than the minimum amount for which we would then issue this policy under our rules. If you do this in the first ten policy years, we may deduct from the Policy Account a pro rata share of the applicable surrender charge (see Page 11).

3.  You can change your death benefit option. If you ask us to change from Option A to Option B, we will decrease the Face Amount of Insurance by the amount in the Policy Account on the date of change. However, we reserve the right to decline to make such change if it would reduce the Face Amount of Insurance below the minimum amount for which we would then issue this policy under our rules. If you ask us to change from Option B to Option A, we will increase the Face Amount of Insurance by the amount in the Policy Account on the date of change. Such decreases and increases in the Face Amount of Insurance are made so that there is no change in the Net Amount at Risk (see Page 9).

4.  Any change will take effect on the monthly policy anniversary which coincides with or next follows the date we approve the request.

5.  We reserve the right to decline to make any change that we determine would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us (see Page 14).

6.  We will send you a written notice showing each change. The notice is to be attached to and made part of this policy. The information in it will supersede the corresponding information in the Policy Information section. We may require you to return the policy to us to make a change.

## The Premiums You Pay

The initial premium payment shown in the Policy Information section is due on or before delivery of the policy. No insurance will take effect before the initial premium payment is paid. Other premiums may be paid at any time at the premium collection office we designate while the policy is in force and before the Final Policy Date. They may be in any amount subject to the limits described below.

**THE PREMIUMS YOU PAY** *(continued)*

We will send premium reminder notices to you for the planned periodic premium shown in the Policy Information section unless you ask us not to in the application for this policy or later by written notice. You may skip planned premium payments or change their frequency and amount.

Limits. Each premium payment after the initial one must be at least $100. We may increase this minimum limit 90 days after we send you written notice of such increase.

We reserve the right not to accept premium payments in a policy year that we determine would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us (see Page 14).

Grace Period. If the Net Cash Surrender Value on any monthly anniversary is less than the monthly deductions for that month described on Page 9, we will stop making such deductions. There will then be a grace period of 61 days after that anniversary. If a grace period starts, we will send you and any assignee on our records at last known addresses a notice. The notice will state the grace period and the amount sufficient to cover 3 monthly deductions.

If by the end of the grace period we do not receive an amount sufficient to cover at least 3 monthly deductions, we will then send you and any assignee on our records at last known addresses a notice that this policy has ended without value.

If the insured person dies during the grace period, we will pay the insurance benefits as described on Page 5.

Reinstatement. If this policy has ended without value, you may reinstate it while the insured person is alive if you:

1. Ask for reinstatement within 3 years after the end of the grace period; and

2. Provide evidence of insurability satisfactory to us; and

3. Make a premium payment sufficient to keep the policy in force for at least 3 months after the date of reinstatement.

The effective date of the reinstated policy will be the monthly anniversary on or next following the date we approve your reinstatement application.

*Your Policy Account and How it Works*

When we receive your premium payments, we subtract the expense charges shown in the table in the Policy Information section. We put the balance into your Policy Account as of the date we receive the premium payment, and before any deductions from the Policy Account due on that date are made. We also put into your Policy Account any credits arising from a disability benefit under this policy.

Your Policy Account earns interest at effective annual rates we determine. This interest is also added to your Policy Account. We make deductions from the Policy Account as described below. We will also subtract from the Policy Account any Net Cash Surrender Values you ask for. More details are given below and in the cash surrender value section on Page 10.

How We Add Interest. We will determine such interest rates annually in advance for unloaned and loaned amounts. The loaned amount, if any, is the part of the Policy Account equal to the amount of any outstanding policy loan and loan interest. The interest rates we determine each year will apply to the policy year that follows the date of determination. Any change in the interest rates we determine will be as described in "Changes in Policy Cost Factors" on Page 14. Such effective annual interest rates will not be less than 4½%.

We will add interest to your account at the end of each policy month based on amounts that were in the account throughout the month. We will credit interest on the balance of premium payments received in a policy month that are put into your Policy Account from the date we receive them, except that interest on the initial premium payment will be credited from the Register Date if later. We will credit interest on amounts that you withdraw from the Policy Account during a policy month only from the beginning of the policy month to the date of withdrawal.

Monthly Deductions. At the beginning of each policy month we make a deduction from the Policy Account to provide insurance coverage, subject to the Grace Period provision on Page 3. Such deduction for any policy month is the sum of the following amounts determined as of the beginning of that month:

○ The monthly cost of insurance for the insured person that we determine.

○ The monthly cost of any benefits provided by riders to this policy, as determined in accordance with such riders.

The monthly cost of insurance is our current monthly "cost of insurance rate" times the "net amount at risk" (Death Benefit minus the amount in the Policy Account) at the beginning of the policy month; *plus* any extra charge shown in the Policy Information section times the Face Amount of Insurance at the beginning of the policy month. For this purpose the amount in the Policy Account is determined before the monthly cost of insurance deduction but after all other deductions due on that date have been made. The cost of insurance rate is based on the sex, attained age, and rating class of the insured person. ("Attained age" means age on the birthday nearest to the beginning of the then current policy year.)

We will determine cost of insurance rates from time to time. Any change in the cost of insurance rates we use will be as described in "Changes in Policy Cost Factors" on Page 14. They will never be more than those shown in the Table of Guaranteed Maximum Insurance Costs on Page 4 plus any extra charge in the Policy Information section.

**YOUR POLICY ACCOUNT AND HOW IT WORKS** *(continued)*

Also at the beginning of each policy month, we make a deduction from the Policy Account for monthly administrative charges, subject to the Grace Period provision on Page 8. They are shown in the Table of Expense Charges in the Policy Information section.

Other Deductions. We also make the following other deductions from the Policy Account as they occur:

- If you make a partial withdrawal of the Net Cash Surrender Value, we deduct the charge for it shown in the Table of Expense Charges in the Policy Information Section.

- We subtract surrender charges if you give up the policy for its Net Cash Surrender Value or if you reduce the Face Amount of Insurance.

- We make a deduction from the Policy Account if you increase the Face Amount of Insurance (see Page 7).

**Our Annual Report to You**

For each policy year we will send you a report that shows the current Death Benefit, value of your Policy Account, cash surrender value and any outstanding policy loan with the current loan interest rate. It will also show all amounts added to or deducted from the Policy Account in the year: the premiums paid, interest added, insurance cost deductions, and all expense charges, surrender charges and partial net cash surrender value withdrawals made in the year. The report will also show such other information as may be required by the insurance supervisory official of the jurisdiction in which this policy is delivered.

**The Cash Surrender Value of this Policy**



Net Cash Surrender Value. You may give up this policy for its Net Cash Surrender Value at any time while the insured person is living. You may do this by sending us a written request and this policy. The Net Cash Surrender Value is equal to the Cash Surrender Value minus any loan and loan interest. We will compute the Net Cash Surrender Value as of the date we receive your request and this policy. All insurance coverage under this policy ends on such date.

Cash Surrender Value. The Cash Surrender Value on any date is equal to the amount in the Policy Account on that date minus any applicable surrender charge.

Surrender Charges. If you give up this policy for its Net Cash Surrender Value in the first ten policy years, we will subtract a surrender charge from the Policy Account. The surrender charge for each such year is shown in the Table of Surrender Charges in the Policy Information section. The surrender charge stays the same throughout a policy year, except as stated below.

If the Face Amount of Insurance is reduced during any of the first ten policy years because you ask us to reduce it, we may also deduct from the Policy Account a pro rata surrender charge. The amount of the pro rata surrender charge will be determined by the following formula:

$$\frac{A}{B} \times C$$

where A — Represents the decrease in the Face Amount of Insurance to which a surrender charge will be applied. The amount of the decrease is the difference between the current Face Amount of Insurance and the new Face Amount of Insurance. However, this amount will be reduced by (1) the sum of all requested and approved prior increases in the Face Amount of Insurance; less (2) the sum of all requested and approved prior reductions in the Face Amount of Insurance (as described in sections 1 and 2 of "Changing the Face Amount of Insurance or the Death Benefit Option" on Page 7) minus the portion of such prior reductions on which a pro rata surrender charge was previously made.

where B — Is the initial Face Amount of Insurance.

where C — Is the original surrender charge for the applicable policy year as shown in the Table of Surrender Charges when this policy was issued.

When a pro rata surrender charge is made, the Table of Surrender Charges for that year and subsequent years will be reduced proportionately.

The written notice we send you when the Face Amount of Insurance is reduced at your request will show surrender charges. If because of such pro rata deductions the surrender charge is reduced to zero, there will be no further surrender charges.

Partial Net Cash Surrender Value Withdrawal. After the first policy year you may ask for a partial Net Cash Surrender Value withdrawal, subject to our approval and to the minimum withdrawal amount shown in the Policy Information section. A partial withdrawal will result in a reduction in the Death Benefit, the Cash Surrender Value and in the Policy Account equal to the amount withdrawn plus the amount of the following expense charge. When a partial withdrawal is made, we will deduct an expense charge from the Policy Account equal to the amount shown in the Table of Expense Charges in the Policy Information section.

Such change in the Death Benefit, Cash Surrender Value and in the Policy Account will take effect on the date of withdrawal. We will send you a written notice showing each change. The notice is to be attached to and made part of this policy. The information in it will supersede the corresponding information in the Policy Information section. We may require you to return the policy to us to make a change.

We reserve the right to decline a request for a partial Net Cash Surrender Value withdrawal if: (a) the Death Benefit would be reduced below the minimum amount for which we would then issue this policy under our rules; or (b) we determine that the withdrawal would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us (see Page 14).

## How a Loan Can Be Made

**Policy Loans.** You can get a loan on this policy while it has a loan value. This policy will be the only security for the loan. The initial loan and each additional loan must be for at least the minimum loan amount shown in the Policy Information section, except for a loan to pay a premium to us. Any amount on loan is still considered to be part of your Policy Account. While on loan, it will still earn interest as stated on Page 9.

The amount of the loan may not be more than the loan value. Any existing loan and loan interest will be subtracted from a new loan.

**Loan Value.** The loan value on any date is the Cash Surrender Value on that date.

**Loan Interest.** Interest on a loan accrues daily, at an annual rate of 8%. We may charge a lower rate for any period of time. Interest is due on each policy anniversary. If the interest is not paid when due, it will be added to the loan and bear interest at the loan rate.

**Loan Repayment.** You may repay all or part of a policy loan at any time while the insured is alive and this policy is in force. We will assume that any payment you make to us while you have a loan is a loan repayment, unless you tell us in writing that it is a premium payment.

Failure to repay a policy loan or to pay loan interest will not terminate this policy. However, if the Net Cash Surrender Value is not sufficient for the monthly deduction due on a monthly anniversary the Grace Period provision will apply (see Page 8).

## How Benefits Are Paid

You can have insurance benefits, net cash surrender value withdrawals, and the Policy Account payable on the Final Policy Date paid immediately in one sum. Or, you can choose another form of payment for all or part of them. If you do not arrange for a specific choice before the insured person dies, the beneficiary will have this right when the insured person dies. If you do make an arrangement, however, the beneficiary cannot change it after the insured person dies.

The options are:

1. DEPOSIT: The sum will be left on deposit for a period mutually agreed upon. We will pay interest at the end of every month, every 3 months, every 6 months or every 12 months, as chosen.



2. INSTALLMENT PAYMENTS: There are two ways that we pay installments:

FIXED PERIOD: We will pay the sum in equal installments for a specified number of years (not more than 30). The installments will be at least those shown in the Table of Guaranteed Payments on Page 16.

FIXED AMOUNT: We will pay the sum in installments as mutually agreed upon until the original sum, together with interest on the unpaid balance, is used up.

3. MONTHLY LIFE INCOME: We will pay the sum as a monthly income for life. The amount of the monthly payment will be at least that shown in the Table of Guaranteed Payments on Page 16. You may choose any one of three ways to receive monthly life income. We will guarantee payments for at least 10 years (called "10 Years Certain"); at least 20 years (called "20 Years Certain"); or until the payments we make equal the original sum (called "Refund Certain").

4. OTHER: We will apply the sum under any other option requested that we make available at the time of the insured person's death or net cash surrender value withdrawal, or on the Final Policy Date, whichever applies.

We guarantee interest under the Deposit Option at the rate of 3% a year and under either Installment Option at 3½% a year. We may raise these guaranteed rates. We may also allow interest under the Deposit Option and under either Installment Option at a rate above the guaranteed rate.

The payee may name and change a successor payee for any amount we would otherwise pay to the payee's estate.

Any arrangements involving more than one of the options, or a payee who is not a natural person (for example, a corporation) or who is a fiduciary, must have our approval. Also, details of all arrangements will be subject to our rules at the time the arrangement takes effect. These include rules on: the minimum amount we will apply under an option and minimum amounts for installment payments; withdrawal or commutation rights; naming payees and successor payees; and proving age and survival.

Payment choices (or any later changes) will be made and will take effect in the same way as a change of beneficiary. Amounts applied under these options will not be subject to the claims of creditors or to legal process, to the extent permitted by law.

## Other Important Information

Your Contract with Us. This policy is issued in consideration of payment of the initial premium payment shown in the Policy Information section.

*OTHER IMPORTANT*
*INFORMATION*
*(continued)*

This policy, and the attached copy of the initial application and all subsequent applications to change the policy, make up the entire contract.

Only our President or one of our Vice Presidents can modify this contract or waive any of our rights or requirements under it. The person making these changes must put them in writing and sign them.

Policy Changes – Applicable Tax Law. For you and the beneficiary to receive the tax treatment accorded to life insurance under the federal law, this policy must qualify initially and continue to qualify as life insurance under the Internal Revenue Code or successor law. Therefore, to assure this qualification for you we have reserved earlier in this policy the right to decline to accept premium payments, to decline to change death benefit options, or to decline to make partial withdrawals that would cause the policy to fail to qualify as life insurance under applicable tax law as interpreted by us. Further, we reserve the right to make changes in this policy or its riders (for example in the percentages on Page 6) or to make distributions from the policy to the extent we deem it necessary to continue to qualify this policy as life insurance. Any such changes will apply uniformly to all policies that are affected. You will be given advance written notice of such changes.

Changes in Policy Cost Factors. Changes in policy cost factors (interest, cost of insurance deductions and expense charges) will be by class and based upon changes in future expectations for such elements as: investment earnings, mortality, persistency, expenses and taxes. Any change in policy cost factors will be determined in accordance with procedures and standards on file, if required, with the insurance supervisory official of the jurisdiction in which this policy is delivered.

When the Policy is Incontestable. We have the right to contest the validity of this policy based on material misstatements made in the initial application for this policy. We also have the right to contest the validity of any policy change based on material misstatements made in any application for that change. However, we will not contest the validity of this policy after it has been in effect during the lifetime of the insured person for two years from the Date of Issue shown in the Policy Information section. We will not contest any policy change that requires evidence of insurability, or any reinstatement of this policy, after the change or reinstatement has been in effect for two years during the insured person's lifetime.

No statement shall be used to contest a claim unless contained in an application.

All statements made in an application are representations and not warranties.

See any additional benefit riders for modifications of this provision that apply to them.

What If Age or Sex has Been Misstated? If the insured person's age or sex has been misstated on any application, we will adjust any benefits to reflect the correct age and sex.

85-200-13

How the Suicide Exclusion Affects Benefits. If the insured person commits suicide (while sane or insane) within two years after the Date of Issue shown in the Policy Information section, our liability will be limited to the payment of a single sum. This sum will be equal to the premiums paid, minus any loan and loan interest and minus any partial withdrawal of the net cash surrender value. If the insured person commits suicide (while sane or insane) within two years after the effective date of a change that you asked for that increases the Death Benefit, then our liability as to the increase in amount will be limited to the payment of a single sum equal to the monthly cost of insurance deductions made for such increase.

How We Measure Policy Periods and Anniversaries. We measure policy years, policy months and policy anniversaries from the Register Date shown in the Policy Information section. Each policy month begins on the same day in each calendar month as the day of the month in the Register Date.

How and When We Defer Payment. We may defer payment of any cash surrender withdrawal or loan amount (except a loan to pay a premium to us) for up to six months after we receive a request for it. We will allow interest, at a rate of at least 3% a year, on any cash surrender value payment we defer for 30 days or more.

The Basis We Use for Computation. We provide cash surrender values that are at least equal to or more than those required by law. If required to do so, we have filed with the insurance supervisory official of the jurisdiction in which this policy is delivered a detailed statement of our method of computing such values. We compute reserves under this policy by the Commissioners Reserve Valuation Method.

We base minimum cash surrender values and reserves on the "Commissioners 1980 Standard Ordinary Male and Female Mortality Tables." We also use these tables as the basis for determining maximum insurance costs, taking account of sex, attained age and rating class of the insured person. We use interest compounded annually at 4½%.

Policy Illustrations. Upon request we will give you an illustration of the future benefits under this policy based upon both guaranteed and current cost factor assumptions. However, if you ask us to do this more than once in any policy year, we reserve the right to charge you a fee for this service.

Policy Changes. You may change this policy to another available plan of insurance or add additional benefit riders or make other changes, subject to our rules at the time of change.

EXHIBIT A

## Table of Guaranteed Payments
### MINIMUM AMOUNT FOR EACH $1,000 OF ORIGINAL SUM

| | Option 2 | | | Option 3 | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | **FIXED PERIOD INSTALLMENTS** | | | **MONTHLY LIFE INCOME** | | | | | |
| | | | | | 10 Years Certain | | 20 Years Certain | | Refund Certain |
| Number of Years' Installments | Monthly Installment | Annual Installment | AGE | Male | Female | Male | Female | Male | Female |
| 1 | $84.70 | $1,000.00 | 50 | $4.50 | $3.96 | $4.27 | $3.89 | $4.28 | $3.87 |
| 2 | 43.08 | 508.60 | 51 | 4.58 | 4.02 | 4.32 | 3.94 | 4.35 | 3.93 |
| 3 | 29.21 | 344.86 | 52 | 4.67 | 4.09 | 4.38 | 4.00 | 4.42 | 3.99 |
| 4 | 22.28 | 263.04 | 53 | 4.75 | 4.16 | 4.44 | 4.06 | 4.50 | 4.05 |
| 5 | 18.12 | 213.99 | 54 | 4.85 | 4.24 | 4.50 | 4.12 | 4.58 | 4.11 |
| 6 | 15.36 | 181.32 | 55 | 4.94 | 4.32 | 4.56 | 4.18 | 4.66 | 4.18 |
| 7 | 13.38 | 158.01 | 56 | 5.04 | 4.40 | 4.62 | 4.24 | 4.74 | 4.25 |
| 8 | 11.91 | 140.56 | 57 | 5.15 | 4.49 | 4.68 | 4.31 | 4.83 | 4.33 |
| 9 | 10.76 | 127.00 | 58 | 5.26 | 4.58 | 4.74 | 4.38 | 4.93 | 4.41 |
| 10 | 9.84 | 116.18 | 59 | 5.37 | 4.68 | 4.81 | 4.45 | 5.03 | 4.49 |
| 11 | 9.09 | 107.34 | 60 | 5.49 | 4.78 | 4.86 | 4.52 | 5.13 | 4.58 |
| 12 | 8.47 | 99.98 | 61 | 5.62 | 4.89 | 4.92 | 4.59 | 5.24 | 4.67 |
| 13 | 7.94 | 93.78 | 62 | 5.75 | 5.00 | 4.98 | 4.66 | 5.35 | 4.77 |
| 14 | 7.49 | 88.47 | 63 | 5.88 | 5.12 | 5.04 | 4.73 | 5.48 | 4.88 |
| 15 | 7.11 | 83.89 | 64 | 6.03 | 5.25 | 5.09 | 4.80 | 5.60 | 4.99 |
| 16 | 6.77 | 79.89 | 65 | 6.17 | 5.39 | 5.14 | 4.88 | 5.74 | 5.10 |
| 17 | 6.47 | 76.37 | 66 | 6.32 | 5.53 | 5.19 | 4.95 | 5.88 | 5.22 |
| 18 | 6.20 | 73.25 | 67 | 6.48 | 5.68 | 5.24 | 5.01 | 6.03 | 5.35 |
| 19 | 5.97 | 70.47 | 68 | 6.64 | 5.83 | 5.28 | 5.08 | 6.18 | 5.49 |
| 20 | 5.76 | 67.98 | 69 | 6.80 | 6.00 | 5.32 | 5.14 | 6.35 | 5.64 |
| 21 | 5.57 | 65.74 | 70 | 6.97 | 6.17 | 5.35 | 5.20 | 6.53 | 5.79 |
| 22 | 5.40 | 63.70 | 71 | 7.15 | 6.34 | 5.38 | 5.26 | 6.71 | 5.96 |
| 23 | 5.24 | 61.85 | 72 | 7.32 | 6.53 | 5.41 | 5.30 | 6.91 | 6.13 |
| 24 | 5.10 | 60.17 | 73 | 7.50 | 6.72 | 5.43 | 5.35 | 7.12 | 6.32 |
| 25 | 4.97 | 58.62 | 74 | 7.67 | 6.92 | 5.45 | 5.38 | 7.34 | 6.52 |
| 26 | 4.84 | 57.20 | 75 | 7.85 | 7.12 | 5.47 | 5.42 | 7.58 | 6.73 |
| 27 | 4.73 | 55.90 | 76 | 8.02 | 7.32 | 5.48 | 5.44 | 7.82 | 6.96 |
| 28 | 4.63 | 54.69 | 77 | 8.19 | 7.53 | 5.49 | 5.46 | 8.09 | 7.21 |
| 29 | 4.54 | 53.57 | 78 | 8.36 | 7.75 | 5.50 | 5.48 | 8.38 | 7.47 |
| 30 | 4.45 | 52.53 | 79 | 8.52 | 7.96 | 5.50 | 5.49 | 8.67 | 7.75 |
| | | | 80 | 8.67 | 8.16 | 5.51 | 5.50 | 9.00 | 8.05 |
| | | | 81 | 8.81 | 8.36 | 5.51 | 5.51 | 9.34 | 8.39 |
| | | | 82 | 8.94 | 8.55 | 5.51 | 5.51 | 9.70 | 8.73 |
| | | | 83 | 9.06 | 8.73 | 5.51 | 5.51 | 10.10 | 9.12 |
| | | | 84 | 9.16 | 8.90 | 5.51 | 5.51 | 10.52 | 9.53 |
| | | | 85 & over | 9.26 | 9.05 | 5.51 | 5.51 | 10.96 | 9.97 |

If installments are paid every 3 months, they will be 25.32% of the annual installments. If they are paid every 6 months, they will be 50.43% of the annual installments.

Amounts for Monthly Life Income are based on age nearest birthday when income starts. Amounts for ages not shown will be furnished on request.

93-300-16

EXHIBIT A

## Limitation on Amount of Insurance Rider

*(This limitation is required by the laws of New York State)*

*In this rider, "we", "our" and "us" mean AXA Equitable Life Insurance Company. "You" and "your" mean the Owner of the policy at the time an Owner's right is exercised.*

If the insured person dies before the age of 14 years and 6 months, the benefit paid may be limited. The total amount of life insurance payable on the life of the insured person under this policy and under all other insurance policies in effect on the Date of Issue of this policy, in our company and all other companies, shall be subject to the following maximum amount limitation:

| Insured Person's Attained Age | Maximum Amount Limitation |
|---|---|
| Less than 4 years and 6 months | The greater of: a) $5,000; or b) 25% of the total amount of life insurance in effect on the life of the applicant for this policy on its Date of Issue. |
| Between 4 years and 6 months and 14 years and 6 months | The greater of: a) $10,000; or b) 50% of the total amount of life insurance in effect on the life of the applicant for this policy on its Date of Issue. |

"Total amount of life insurance" as used in this rider shall not include: (a) return premium benefits; (b) additional benefits in the event of death by accident; (c) any additional insurance provided by use of dividends; (d) any variable death benefit above the guaranteed minimum death benefit provided under a variable life insurance policy; (e) any additional insurance provided by amounts credited to a policy after its issue; or (f) any insurance provided by a policy in excess of the face amount of insurance in force at the time of demand or death. Any part of this Policy not in excess of the above limits at the date of issue will not become in excess by reason of any later reduction in the amount of insurance on the Applicant's life.

If the total amount of life insurance on the life of the insured person is in excess of this maximum, we will terminate the amount of such excess insurance that is in effect under this policy. We will do this when the insured person dies or upon your earlier written request, but only if we are given satisfactory proof that such excess exists at the time of such death or request.

We will make an appropriate refund of the Monthly Deductions from the Policy Account if such excess insurance is terminated. We will determine the amount of the refund based on the Monthly Deductions made for the terminated insurance, with appropriate adjustments to recognize interest on such deductions (at $4\frac{1}{2}\%$ per year compounded annually), any loan on the policy, and any partial withdrawal of the net cash surrender value. We will pay the refund to you if the insured person is living at the time of payment. If the insured person is not then living, we will pay it to the beneficiary. When such refund is paid, all of our obligations for such excess insurance terminate.

No such refund will be paid, however, if we have paid an excess amount as part of a death claim without having had proof satisfactory to us that an excess amount of insurance existed.

*AXA Equitable Life Insurance Company*

Karen Field Hazin, Vice President, Secretary and Associate General Counsel

Christopher M. Condron, Chairman and Chief Executive Officer

R85-406

EXHIBIT A

EXHIBIT A

## Exchange Privilege Rider

In this rider, "we", "our" and "us" mean AXA Equitable Life Insurance Company. "You" means the Owner of the policy at the time an Owner's right is exercised.

After the first policy year you may exchange this policy for a new policy on the life of a new insured person, subject to conditions we determine. These conditions include but are not limited to the following:

1. We must be satisfied that the new insured person is insurable for the amount of insurance applied for.

2. The new insured person must join in the request for the new policy and the owner of the new policy must have an insurable interest in the new insured person. If this policy is assigned, the assignee must consent to the exchange.

3. The exchange may be made as of the beginning of any policy month if neither the original insured person nor the new insured person is then over age 65.

4. This policy must be in effect on the exchange date with all monthly deductions from the Policy Account having been made, and with no such deductions then being waived nor amounts credited to the Policy Account by a disability rider.

5. Within 31 days before the date of exchange, we must receive (a) written request for the exchange on our application form, and (b) evidence of the new insured person's insurability satisfactory to us.

6. We will carry over to the new policy any loan and loan interest not repaid.

7. Insurance under this policy will cease when insurance under the new policy takes effect.

8. The new policy must qualify as life insurance under the Internal Revenue Code or successor legislation.

THE NEW POLICY. Planned periodic premiums for the new policy will be based on our rules in effect on its Register Date for the insurance age of the new insured person on that date. The Register Date of the new policy will be the same as the Register Date of this policy. However, if the new insured person's date of birth is later than the Register Date of this policy, the Register Date of the new policy will be the policy anniversary of this policy next preceding the date of exchange. The face amount of insurance and the death benefit option in the new policy will be the same as in effect in this policy on the date of exchange.

You may ask that additional benefit riders be included in the new policy. The issue of any rider will require our consent and evidence of insurability satisfactory to us.

The time periods in the Incontestability and Suicide Exclusion provisions of the new policy will begin on the Date of Issue of the new policy.

*AXA Equitable Life Insurance Company*

Karen Field Hazin, Vice President,
Secretary and Associate General Counsel

Christopher M. Condron,
Chairman and Chief Executive Officer

R83-40SNY      Exchange Privilege

<u>EXHIBIT A</u>

M. Wien

**Application To**   ☐ **The Equitable Life Assurance Society of the United States**

☒ **Equitable Variable Life Insurance Company**

REQUEST FOR   ☑ CHANGE (as specified in Section I) OF POLICY OR CONTRACT NO. 36224259

☐ REINSTATEMENT   ☐ DELIVERY   OF POLICY OR CONTRACT NO. _____

### SECTION I

**Requested Change** (see below for adding RTI and CTI): Reduce the Face Amount from $9,000,000 to $7,200,000. Effective date of change is December 1, 1987.

_____

_____

_____

**ADD** ☐ Renewable Term Rider (RTI) on Insured      Amt. $_____

☐ Renewable Term Rider (RTI) on Additional Insured      Amt. $_____

☐ Children's Term Rider (CTI)      Amt. $_____ Units_____

For RTI on the Additional Insured and for CTI, the Beneficiary will be as stated in the rider for those benefits unless otherwise designated above in "Requested Change" (in any designation include Full Name and Relationship to Insured).

*Complete below and answer the Questions in Section II as to the Additional Insured and as to each Child proposed for CTI.*

**PERSON(S) TO BE COVERED UNDER RTI ON ADDITIONAL INSURED AND/OR CTI:**

NOTE: To be eligible for CTI, Children (including stepchildren and legally adopted children) must not yet have reached their 18th birthday. Coverage does not begin until a Child is 15 days old.

| RTI or CTI? | First Name | Middle Initial | Last Name | Sex | Date of Birth | | |
|---|---|---|---|---|---|---|---|
| | | | | | Mo. | Day | Yr. |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

*Complete a.-e. only as to Additional Insured for RTI.*

a. List all current occupations—Give Title(s) and Duties.

_____

_____

b. Age Nearest Birthday_____

c. Place of Birth: State of _____

d. Residence: State of _____

e. Owner's Relationship to Addl. Insured: _____

The signers of this request agree that:

1. If evidence of insurability is required, the statements and answers to the questions
   ☐ in Sections I and II of this form
   ☐ in Sections I and II of this form and on the medical history form dated _____
   are reaffirmed and offered as part of this request.

   Such statements and answers are true and complete to the best of my knowledge and belief. The Insurer may rely on them in acting on this request.

2. The Insurer shall incur no liability under this request
   (a) until it has been approved by the Insurer and the full consideration required in connection with it has been paid; and
   (b) unless, if evidence of insurability is required, the

statements and answers made part of this request and offered as evidence of insurability are, without material change, true and complete to the best of my knowledge and belief as of the time of payment of such consideration.

3. Any new policy or contract issued in connection with a change request shall be subject to: (1) Any assignment of the original policy or contract in force and on file with the Insurer at its Home Office; and (2) To any loan made by the Insurer on the original policy or contract and to the rights of the Insurer in connection with it.

4. No agent or medical examiner has authority to make or modify any contract or to waive any of the Insurer's rights or requirements. The Insurer shall not be bound by any information unless it is stated in this form or in any other form submitted in connection with this request.

Dated at N.Y.  N.Y.  on 11-30  1987
         City    State

*See reverse side for Signature Requirements.*

_____ , TRUSTEE

_____

*Signature(s)*

Will any other existing insurance or annuity be replaced or changed (or has it been) assuming that any new insurance or annuity applied for will be issued?   ☐ Yes ☐ No

Signature of Agent _____

Also complete Production Credits information on the back.

180-333C

Cat. No. 45837

<u>EXHIBIT A</u>

EXHIBIT A

## Application (Continued)

### SECTION II

**3.**

For each new Person to be covered, answer Questions 1 and 2. Also answer Questions 3, 4 and 5 if Non-Medical.

For persons already covered by life policy or contract, such questions need be answered only as to occurrences that took place after last date of application for the policy or contract.

**1. Has any Person To Be Covered:**

a. Within the last two years been convicted of two or more moving violations of driving under the influence of alcohol or drugs, or had a driver's license suspended or revoked? (Give full details—including dates, types of violation, and reason for license suspension or revocation.)  ☐ Yes ☐ No

b. Any plan to travel or reside outside the U.S.? (Give full details.)  ☐ Yes ☐ No

c. Any other life insurance now in effect or application now pending? (Give companies and amounts.)  ☐ Yes ☐ No

**2. Has any Person To Be Covered:**

a. Within the last year flown other than as a passenger or plan to do so?  ☐ Yes ☐ No

If yes: Total Flying (time at present) _____ Hours;
Last 12 months _____ Hours; Next 12 mos. _____ Est. Hours.
(Complete Aviation Supplement for competition, test, stunt or military flying, or crop dusting.)

b. Engaged within the last year, or any plan to engage in motor racing on land or water, underwater diving, sky diving, ballooning, hang-gliding or parachuting? (If yes, complete Avocation Supplement.)  ☐ Yes ☐ No

c. Ever had an Application for life or health insurance declined, rated, postponed, or premium or was otherwise modified? (Give full details.)  ☐ Yes ☐ No

**For Person to be Covered:**

d. Replaced or changed any other existing insurance or annuity (or any plan to do so) assuming that any new insurance or annuity applied for will be issued? (State companies, plans and amounts.)  ☐ Yes ☐ No

**3. Insured:** Height _____ Ft. _____ In. Weight _____ lbs.
**Additional Insured:** Height _____ Ft. _____ In. Weight _____ lbs.

**4. Has any Person To Be Covered:**

a. Ever been treated for or had any indication of heart trouble, stroke, high blood pressure, chest pain, diabetes, cancer or cancer? (Give full details.)  ☐ Yes ☐ No

b. Within the last 5 years, consulted a physician, or been examined or treated in a hospital or other medical facility? (Include medical check-ups in the last 2 years. Do not include colds, minor virus infections, minor injuries, or normal pregnancy.) (Give full details.)  ☐ Yes ☐ No

**5. Has any Person To Be Covered:**

a. Within the last ten years repeatedly used barbiturates, amphetamines, hallucinatory drugs or narcotics? (Give full details.)  ☐ Yes ☐ No

b. Within the last ten years received counseling or treatment regarding the use of alcohol or drugs? (Give full details.)  ☐ Yes ☐ No

**6. DETAILS.** For each yes answer give Question number, name of person(s) affected and full details. For 4 and 5 also include condition, dates, duration, treatment and results, and names and addresses of physicians and medical facilities.

| No. | Name of Person Affected | Details |
|-----|------------------------|---------|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

### TO BE COMPLETED BY AGENT.

For Production Credits (Service Agent Use)

| (Print) Agent's Name(s) | First | Middle | Name of Last Name | % | Agency & Code No. _____ |
|---|---|---|---|---|---|
|  |  |  |  |  | District & Code No. _____ |
|  |  |  |  |  | Date _____ 19 ___ |
|  |  |  |  |  | Service Agent's Signature |

### SIGNATURE REQUIREMENTS

Charge. Owner (and assignee if policy is assigned) must sign. If evidence of insurability is required, each person covered by the change must also sign.

Reinstatement. Each person covered by the policy must sign. If the Insured is not the Owner or if the policy is absolutely assigned, the Owner or Absolute Assignee must also sign.

● Delivery. Same signature requirements as an original application.

NOTE: If the Owner or any person to be covered is a child under age 15, the parent or guardian should sign for the child.

No. 333C

EXHIBIT A

EXHIBIT A

# THE EQUITABLE ⬡EVLICO

## REQUEST FOR CHANGE OF BENEFICIARY AND/OR OWNER TO
☐ THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES
☒ EQUITABLE VARIABLE LIFE INSURANCE COMPANY

EQUITABLE AND EVLICO REQUESTS FOR CHANGE OF BENEFICIARY AND/OR OWNER MUST BE SUBMITTED ON SEPARATE FORMS.

**BEFORE COMPLETING THIS REQUEST, PLEASE READ THE INSTRUCTIONS ON THE COVER PAGE AND THE PROVISIONS ON THE REVERSE SIDE OF THIS FORM.**

**DO NOT RETURN THE POLICY WITH THIS REQUEST**

PLAN NUMBER: 36 025 259

INSURED'S/ANNUITANT'S NAME: Malcolm H. Wiener

CHANGE OF BENEFICIARY: ☒ YES   ☐ NO (No change from present Beneficiary if neither box is checked)

FULL NAME OF NEW BENEFICIARY, RELATIONSHIP TO INSURED/ANNUITANT, ADDRESS OF ALL NAMED BENEFICIARIES, AND SOCIAL SECURITY NUMBER.

Carolyn Seely Wiener, Wife   Soc. Sec. # 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
720 Park Avenue
New York, N.Y. 10021

ATTACHED   APP-042

CHANGE OF OWNER: ☒ YES   ☐ NO (No change from present Owner if neither box is checked)

FULL NAME OF NEW OWNER AND RELATIONSHIP TO INSURED/ANNUITANT:

Malcolm H. Wiener, Self

### THIS CHANGE IS SUBJECT TO THE PROVISIONS ON THE REVERSE SIDE

Owner's Address: If applicable, check one and complete.
☒ Address of NEW OWNER is:   ☐ Change address of SAME OWNER is:

720 Park Avenue
New York, N.Y. 10021

### SUBSTITUTE FORM W-9 — FOR NEW INDIVIDUAL OWNER ONLY

PART ONE — Enter your taxpayer identification number in the appropriate box. For most taxpayers, this is the Social Security Number.

Social Security Number ☐☐☐-☐☐-☐☐☐☐   OR   Employer I.D. Number ☐☐-☐☐☐☐☐☐☐

PART TWO — Check the box if you are NOT subject to backup withholding under the provisions of section 3406(a)(1)(c) of the Internal Revenue Code. ☐

CERTIFICATION — Under penalties of perjury, I certify that this information is true, correct and complete.

Signature _____   Date: ____

FOR NEW INDIVIDUAL OWNER ONLY

Federal Law requires that you provide the following Data (see reverse side for explanation):

Date: 7/7/9?   Signature: _____

### FOR EQUITABLE/EVLICO USE ONLY

The Equitable/EVLICO certifies that this change has been recorded.

Date: 11/11/93   By: _____

IMPORTANT: Please use typewriter or ball point pen. Press firmly since entries should be legible on both parts. Avoid erasures or alterations. When this page and its duplicate are completed, send both completed copies to us. When we have recorded the change, we will return a copy of the form signed by us as evidence of the change.

ITEM #43211V6
CATALOG #11119M

K 11/11/93

EXHIBIT A

Part 1 of an Application for Fixed Benefit Life Insurance To
**Equitable Variable Life Insurance Company (EVLICO)**

□ UV; □ CV; □ OK i

**1. Proposed Insured** a. Print name to appear on policy.
*MALCOLM A   M.   WOLPER*

b. □ Mr. □ Miss □ Mrs. □ Ms. □ Other Title,
c. List all current occupations—Give Title(s) and Duties
*BANK OPERATIONS OFFICER*

d. Date of Birth: Mo. 07 Day 03 Yr. 19 55
e. Age Nearest Birthday. 27
f. Place of Birth: State of *CHINA*
g. Residence: State of *CT*
h. □ Male □ Female

**2. Plan**
□ Indeterminate Premium—Yearly
Renewable Term for Ten years.
□ Modified Yearly Renewable Term for Amounts and Years selected below.

| Amount of Insurance | | |
|---|---|---|
| | 5. | |
| 5. | 10. | |

| Year | Fare Amount | Year | Fare Amount |
|---|---|---|---|
| 1 | $ | 5 | $ 1,000,000 |
| 2 | | 6 | |
| 3 | | 7 | |
| 4 | | 8 | |
| | | 9 | |
| | | 10 | |

□ Single Premium Endorsement
□ Other
□ Flexible Premium Adjustable Life
Is the Death Benefit to include the Policy Account? □ Yes (Option B) □ No (Option A)

**7. Premium Payment Plan**
Check mode, and (if Flexible Premium Policy complete the following:)
Initial Prem. Payment $ *4,181.15*
Planned Periodic Prems. $ *4,181.30*
□ Do not send premium reminder notices.
□ Annual □ Semi-Annual □ Quarterly
□ Monthly □ System-Matic (Attach S-M Form)
□ Single
□ Military  Allotment: Branch,
_____ Register Date,
□ Salary Allotment: Register Date,

Unit __ Name,
Unit/Sub-Unit No. If established:
Divisible by □ 1 □ 4 Payroll No. _____
□ Hold Prem $ _____

**3. Optional Benefits**
□ Accidental Death Benefit $
□ Renewable Term on Additional Insured $
_____ Units
□ Children's Term $
□ Disability Premium Waiver □Disability Benefit-Flexible Prem. Pol.
□ Other _____ □ Waiver Cost of Insurance
□ Credit $ _____ per.

**8. Note:**
Premiums for the Indeterminate Premium policy may change annually, subject to a guaranteed maximum annual renewal premium shown in the policy.

**4. Beneficiary** for Insurance on Proposed Insured. Include Full Name and Relationship to Proposed Insured
*DORIS M. WOLPER*

Unless otherwise requested, the contingent beneficiary will be the surviving children of the Insured, in equal shares. If none survive, payment will be made to the Insured's estate.
The Beneficiary under any Term Insurance Rider or an Additional Insured or on Child's rider will be as stated in those riders, unless otherwise designated in Special Instruction.

**9. Special Instructions**
a. □ Preliminary Term (PT) period of _____ days
ending __ Mo. __ Day __ Yr. __ PT Premium $ _____
b. □ Date to save insurance age.
c. □ Other
*ISSUE w/POLICYOWNER'S PT*
*PT-1-89*
*REGISTER DATE 11-1-88*

**5. Owner** Owner's Soc. Sec. or Tax No. *067 38 68 1009 1*
□ The Owner is □ Proposed Insured □ Applicant (for Child) (See 10.c.)
□ Other (Give Full Name): *DORIS WOLPER, TRUSTEE UND THE*
*MALCOLM A WOLPER INSURANCE TRUST DATED 10-18-88*
b. □ Mr. □ Miss □ Mrs. □ Ms. Other Title,
Relationship to Insured
Specify a successor Owner if desired

If the Proposed Insured or the Applicant for a Child is not the Owner and if all persons designated as Owner die before the Insured, the Owner will be the estate of the last of such persons to die except where the Insured is a Child (See Note in 10.c.).

**6. Mailing Address** of Business (Give Full Name) □ Residence

□ of *MALCOLM WOLPER*
No. *4809 BLACKRUN TRAIL* Apt. Street
*HIGH RIDGE MISSOURI 63049* City State Zip

EV14-155

Cat. No. 110.50

EXHIBIT A

EXHIBIT A

**10. Complete if Proposed Person is a Child (Issue Ages 0-14).**

a. Until there be more life insurance in effect on the Child than on any older child in the family?   ☐ Yes  ☐ No
If yes, explain:

b. Applicant—Complete if other than the Child.
   i.  _____
        First Name    Middle Initial    Last Name
   ii. ☐Mr. ☐Mrs. ☐Miss, ☐Ms., ☐Other Title _____
   iii. Date of Birth ___ Month ___ Day ___ Year
   iv. ☐ Male   ☐ Female
   v.  Relationship to Child:
   vi. Total Life insurance now in effect: $ _____

c. Owner. If the Applicant is to be the Owner, enter the Applicant's name. If the Child is to be the Owner unless otherwise designated in Special Instructions (in any such designation include Owner's Full Name, Relationship to Child, and Social Security or Tax Number).
   NOTE: Consider designating an adult secondary Owner.

**11. Complete for Children's Term Rider.**
Give Names of Children below and answer the Questions on page 3 as to each Child.

CHILDREN PROPOSED FOR INSURANCE.
NOTE: To be eligible, children (including stepchildren and legally adopted children) must not yet have reached their 18th birthday. Coverage does not begin until a child is 15 days old.

| First Name | Middle Initial | Last Name |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**12. Complete for Renewable Term Rider on Additional Insured.**
Complete below and answer the Questions on page 3 as to the Additional Insured.

PROPOSED ADDITIONAL INSURED PERSON
a. Print name as it is to appear on the Policy.
   _____
   First Name    Middle Initial    Last Name
b. List all current occupations—Give Title(s) and Duties.

   c. Date of Birth: Mo. ___ Day ___ Yr. 19 ___
   d. Age Normal Birthday:
   e. Place of Birth: State of
   f. Residence: State of
   g. ☐ Male   ☐ Female
   h. Owner's Relationship to Additional Insured Person:

**13. Complete if Using Existing Option to Purchase Insurance.**

i.  Existing Individual Policy No. _____
ii. ☐ Option Date or   iii. Option Amount: $ _____
    ☐ Regular Option or
    ☐ Option on Birth or Adoption of Child
       Date of Birth or Adoption _____
iv. If applying for Disability Waiver Benefit, is Proposed Insured now totally disabled as defined in the Disability Waiver provision in the above policy?   ☐ Yes  ☐ No

This application is made under a provision in the policy indicated above permitting the purchase of individual life insurance (the "Option Provision").

If this application is made within the time allowed and in accordance with the other terms in the Option Provision, including timely payment of the full first premium for the option insurance, then the option insurance shall take effect upon the terms of the policy EVLICO would issue. Otherwise, the option insurance shall not take effect.

Answer the Questions on page 3 only if evidence of insurability is required in connection with the purchase of individual life insurance or the Option Date or the Owner wishes to purchase an option amount applied for over the insurance amount permitted by the Option Provision (the option insurance).

EVA-155

NO. B   92070

2

EXHIBIT A

4. Optional Benefits on Applicant.
   ☐ Supplemental Protective Benefit. Give Applicant's:
   i. Age Nearest         ii. Place of
      Birthday                  Birth
      _____           _____
                               Co.          St.
   iii. Origin—Give Title(s) and Duties:   in. Weight   in. ___
   iv. Occupation—Give Title(s) and Duties:   lbs.

   Also answer questions on page 3 as to Applicant.

   c. Limitations On Child's ADB and DPW Benefits.
   If the Accidental Death Benefit is applied for on the Child, the benefit is payable only if the Child dies after the Child's 5th birthday.
   If the Disability Waiver Benefit is applied for on the Child, the benefit is effective only if the Child becomes totally disabled on or after the Child's 5th birthday.

| | Sex | Date of Birth |  |  |
|---|---|---|---|---|
| | | Mo. | Day | Yr. |

7 0 0 8 1 2 1   0 0 0 1 1 2 1

EXHIBIT A

**OTHER INFORMATION—On any Person Proposed for Insurance:**

14. a. Ever had a driver's license suspended or revoked in, within the last three years, been convicted of two or more moving violations or driving under the influence of alcohol or drugs? (Give full details—including dates, types of violation, and reason for license suspension or revocation.)  ☐ Yes ☑ No

b. Are plan to travel or reside outside the U.S.?  ☐ Yes ☑ No
(Give full details.)

c. Any other life insurance now in effect or applied for with this or another company? (State companies and amounts.)  ☑ Yes ☐ No

d. Smoked cigarettes within the last 12 months?  ☑ Yes ☐ No

15. a. In the last two years (other than as a passenger) on plan to do so?  ☐ Yes ☑ No
If yes: Total flying time at present _____ Hours;
Last 12 months _____ Hours; Next 12 mo. _____ Est. Hours.
(Complete Aviation Supplement for pilot instruction, competitive, test, stunt or military flying, or crop dusting.)

b. Engaged within the last two years, or plan to engage in motor racing on land or water, underwater diving, sky diving, balloning, hang-gliding or parachuting? (If yes, complete Avocation Supplement.)  ☐ Yes ☑ No

c. Ever had an application for life or health insurance declined, postponed, modified or, within the last three years that required an extra premium or was either wise modified? (Give full details.)  ☐ Yes ☑ No

d. Replaced or changed any existing insurance or annuity for any plan to do so assuming the insurance applied for will be issued? (State companies, plans and amounts.)  ☐ Yes ☑ No

**Answer Questions 16, 17 and 18 only if Non-Medical.**

16. Proposed Insured: Height ___ Ft. ___ In. Weight ___ lbs.
    Additional Insured: Height ___ Ft. ___ In. Weight ___ lbs.
    Has any Person Proposed for Insurance:

17. a. Ever been treated for or had any indication of heart trouble, stroke, high blood pressure, chest pain, diabetes, tumor or cancer? (Give full details.)

b. In the last 5 years, consulted a physician, or been examined or treated in a hospital or other medical facility? (Include: medical check-up in the last 2 years. Do not include colds, minor virus infections, minor injuries, or normal pregnancy.) (Give full details.)

18. a. In the last 10 years used barbiturates, amphetamines, hallucinatory drugs or narcotics? (Give full details.)  ☐ Yes ☐ No

b. In the last 10 years received counseling or treatment for the use of alcohol or drugs? (Give full details.)  ☐ Yes ☐ No

19. **DETAILS.** For each yes answer give Question number and full details. For 17 and 18 also include conditions, dates, duration, treatment and results, and names and addresses of physicians and medical facilities.

| No. | Name of Person Affected | Details |
|---|---|---|
| 14b | BAKRAIN | TRAVEL 2 BUS/PLEAS Aus, FR, GREECE 3/0/9/X |
|  |  | SWZ, ARAB/X |
|  |  |  |
|  |  |  |
|  |  |  |

20. Complete if First Premium is Paid or a Payroll Deduction Authorization is Signed Before the Policy is Delivered:
    ☐ Amount Paid $ _NONE_    (Draw checks in order of EVLICO.)    ☐ Payroll deduction authorization signed.

**AGREEMENT.** Each signer of this application agrees that:
(1) The statements and answers in all parts of this application are true and complete to the best of my knowledge and belief. EVLICO may rely on them in acting on this application.
(2) EVLICO's Temporary Insurance Agreement states the conditions under which EVLICO will be liable for insurance prior to the full first premium for the policy applied for is paid, or a payroll deduction authorization is signed, before the policy is delivered.

(3) Except as stated in the Temporary Insurance Agreement, no insurance shall take effect on this application until: a policy is delivered and the full first premium for it is paid, or a payroll deduction authorization is signed while the Proposed Insured is living; (b) before any Register Date specified in this application and at (a) are met at the time of my knowledge and belief the statements and answers in all parts of this application continue to be true and complete, without material change, as of the time such premium is paid or a payroll deduction authorization is signed.

(4) No agent or medical examiner has authority to modify this Agreement, or the Temporary Insurance Agreement, nor to waive any of EVLICO's rights or requirements. EVLICO shall not be bound by any information unless it is stated on application Part 1, 1A or 2.

Dated at _New York, New York_ on _July 14_, 19 _84_.
                                                    City        State

X _____
Signature of Proposed Insured or of Applicant if Proposed Insured is a Child, Issue Age 0-14.

X _____
Signature of Proposed Additional Insured if required.

X _____
Signature of Purchaser (if not Proposed Insured, (if corp. show firm's name and signature of authorized officer.)

Signature of Agent
_____

EV64155                                          3

EXHIBIT A

EXHIBIT A

05/03/2014  13:19   7008121  000117

# LARGE AMOUNT SUPPLEMENT

To: ☐ The Equitable Life Assurance Society of the United States
☐ Equitable Variable Life Insurance Company

*Instructions:* Complete Section I and applicable Section(s) II (Personal Insurance) or III (Business Insurance)

PROPOSED INSURED'S NAME   MALCOLM  A.  WIENER   ASU (Alpha)/App. No.  00A 74222

## Section I - General Information
(Complete in all Insureds)

A. Insurance in Force (All Companies)                    B. Insurance Applied For (All Companies)

| Purpose | Face Amount |
|---|---|
| Personal | $ |
| Business | $ ~0~ |
| Total in Force | $ |

| Purpose | Face Amount |
|---|---|
| | $ |
| | $ |
| Amount applied for elsewhere ☐ competitive ☐ additional $ |

C. Financial Information

1. Income:

| | Current | Previous Full Year |
|---|---|---|
| Gross Annual Compensation: (e.g. Salary, Commissions, Bonuses, etc.) | $ 5,000,000 | $ |
| Gross Annual Investment and Other Income: (e.g. Dividends, Interest, Net Real Estate Income, etc.) | $ 5,000,000 | $ |
| Total Annual Cash Income before taxes | $ | |

2. Net Personal Worth:     Assets: $

Liabilities (Including mortgage): $
Net Worth: $ 100,000,000

3. Have either Proposed Insured or Applicant filed for bankruptcy within the past 5 years? Yes ☐ No ☑

(If yes, explain)

## Section II - Personal Insurance
(Complete only when applying for Personal Insurance)

Purpose: (Report appropriate box(es) and answer all supplemental questions.)
☐ Family Income   ☐ Execution Fund   ☐ Gift   ☐ Mortgage Protection   ☐ Personal Loan Collateral (other than mortgage protection): answer supplemental questions under Business Loan Collateral in Section III, C)

☐ Estate Settlement:

Taxable Estate $

Estimated Settlement Costs (taxes and administration expenses) $

Total Liquid Assets $

☐ Other (specify)

The above statements and answers are true and complete to the best of my knowledge and belief. I agree that such statements and answers shall be made part of the application for insurance or request for policy change or reinstatement, as the case may be. The Insurer may rely on them in acting on this application.

Dated at _____ on ___/___, 19__

Witnessed by: _____

Signature of Proposed Insured, or Applicant if Proposed Insured is a Child

Witnessed by: _____

Signature of Agent

PHOTO

EXHIBIT A

EXHIBIT A

**Application Part 2** (180-M205M)

☐ To The Equitable Life Assurance Society of the United States
☑ Or To Equitable Variable Life Insurance Company

Reason for submission of this form: ☑ New Policy ☐ Policy Change ☐ Reinstatement

1. a. Proposed Insured (Please Print) — First Name: MALCOLM; Middle Initial: H.; Last Name: WIENER
   b. Height: 6 ft. 0 in.
   c. Weight: 177 lbs.
   c. ☑ Male ☐ Female
   d. Birth Date: Mo. 7 Day 3 Yr. 35 (July 3, 1935)

2. a. Name and address of personal physician (or medical facility used instead): (If none, so state) Dr. John Brown E. 70 NY, NY
   b. Date and reason last consulted if within the last 5 years: 6 months ago. Annual
   c. What treatment was given or recommended? (If none, so state) Exam - was Normal

3. Has Proposed Insured ever been treated for or ever had any known indication of: (Circle items that apply)

| | Yes | No |
|---|---|---|
| a. Disease or disorder of eyes, ears, nose or throat? | ☐ | ☑ |
| b. Dizziness, fainting, convulsions; paralysis or stroke; psychiatric, psychological or emotional problem or disturbance; mental or nervous disease or disorder? | ☐ | ☑ |
| c. Shortness of breath; blood spitting; bronchitis, asthma, emphysema, tuberculosis or other chronic respiratory disease or disorder? | ☐ | ☑ |
| d. Chest pain, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disease or disorder of the heart or blood vessels? | ☐ | ☑ |
| e. Ulcer, hernia, colitis, intestinal bleeding; jaundice, hemorrhoids, or other disease or disorder of the stomach, intestines, liver or gallbladder? | ☐ | ☑ |
| f. Sugar, albumin, blood or pus in urine; stone or other disease or disorder of kidney or bladder? | ☐ | ☑ |
| g. Diabetes; cyst, tumor, or cancer; thyroid or glandular disorder; skin disease or disorder? | ☐ | ☑ |
| h. Neuritis, arthritis, gout, or disease or disorder of the muscles or bones, including the back, or joints? | ☑ | ☐ |
| i. Deformity, lameness or amputation? | ☐ | ☑ |
| j. Allergies; anemia; other blood or lymph disease or disorder? | ☐ | ☑ |
| k. Disorder of prostate, reproductive organs, breasts, menstruation or pregnancy? | ☐ | ☑ |

4. Is Proposed Insured now under observation or taking treatment? ☐ Yes ☑ No

5. Has Proposed Insured:

| | Yes | No |
|---|---|---|
| a. Ever used barbiturates, amphetamines, hallucinatory drugs, heroin, opiates or other narcotics, except as prescribed by a physician? | ☐ | ☑ |
| b. Ever received counseling or treatment regarding the use of alcohol or drugs? | ☐ | ☑ |

6. Other than as stated in answers to Questions 2-5, has Proposed Insured within the last 5 years:

| | Yes | No |
|---|---|---|
| a. Consulted or been examined or treated by any physician or practitioner? | ☑ | ☐ |
| b. Had any illness, injury, or surgery? | ☐ | ☑ |
| c. Been a patient in or been examined or treated at a hospital, clinic, sanatorium, or other medical facility? | ☐ | ☑ |
| d. Had electrocardiogram, X-ray, or other diagnostic test? | ☑ | ☐ |
| e. Been advised to have any diagnostic test, hospitalization, treatment or surgery which was not completed? | ☐ | ☑ |

7. Has Proposed Insured's weight changed by more than 10 pounds in the last 6 months? ☐ Yes ☑ No

8. Have any of the Proposed Insured's parents, brothers or sisters ever had cancer, diabetes, high blood pressure or heart disease before age 60? If yes, specify person and condition. ☐ Yes ☑ No

9. Family History:

| 9. Family History | Age if Living | Cause of Death | Age at Death |
|---|---|---|---|
| Father | | Stroke | 77 |
| Mother | | Childbirth | 17 |
| Brothers and Sisters | | NONE KNOWN | |

DETAILS FOR YES ANSWERS. Include: i. Question Number ii. Diagnosis and Treatment. iii. Results. iv. Dates and Duration. v. Names and Addresses of all attending physicians and medical facilities.

(6a) General exams - annually x 20. Exams have been Normal including CXR, EKG, Blood, & Urine tests. Dr. Brown

(6d) Treadmill stress EKG was normal - 6 months ago. Dr. Brown has record

(3h) Dr. Nagler - NY Hospital. Sports related - L4-5 ache resolved with exercises ~4 yrs ago - No recurrence. CAT scan of lower spine was normal

(6a) Evaluation of chest ache - once ~ 1 month ago and about 1 yr ago - EKG's were normal. It was felt this was minor indigestion - Dr. Brown. No medications

The above statements and answers are true and complete to the best of my knowledge and belief. [illegible] that such statements and answers shall be part of the application for insurance or request for policy change or reinstatement, as the case may be. The Insurer may rely on them in acting on the application or making the policy change [illegible] statement.

Dated at NY, NY (city) (state) on 10-13-1986

Signature of Proposed Insured: [signature] M.H. Wiener

Witness: [signature]

180-M205M (Ed. 10-84)

EXHIBIT A

EXHIBIT A

03/03/2014  13:20    7008121  0001172    CRA.  PHOTO

EXHIBIT A

**TO THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES**
**OR TO EQUITABLE VARIABLE LIFE INSURANCE COMPANY.**

POL. NO. 36204 259   File 0 2 0 7

Prepared (Insured) Malcolm Wiener   ASU Alpha   PPA   AM No. 25222

Date Sent 10-22-04   Rep. at

Special Instruction All Cases - Inspq PH Co Seam Ipsp a/o   Jim Costello
                     Amt 20,000,000

Direct (Applicant Interview)   □ - Key □

This report will assist in considering an insurance application. The Proposed Insured has been advised that an investigation may be made. A copy of the Agent's Report is attached. GENERAL INSTRUCTIONS: Answer all pertinent questions, and use reverse side for narrative. Comment on all significant aspects. Make no reference to any person's race, creed, color, national origin or sexual lifestyle. Do not make comments which are not related to the stated purpose of this report. Public record information should be limited to the past 7 years. When reporting criminal records, list convictions or pending charges, but not arrests. DIRECT (Applicant Interview) INSTRUCTIONS: Attempt to complete report by direct (telephone) interview. If applicant is not available, use other qualified sources to avoid delay. KEY INSTRUCTIONS - Contact qualified sources in your area. All statements should be confirmed to insure accuracy.

I. DIRECT and KEY:

|  | NO | YES |
| --- | --- | --- |
| A. Describe the exact duties of all occupations - full and part time. *Malcolm Wiener Group* *Chairman / CEO - Alternative Energy Company* | | |
| B. Any occupational change in occupation? | | □ |
| C. Plan to work or travel in foreign countries? *I Travel overseas twice / three x a year* | □ | |
| D. Any weight problem (over or under), including marked loss? *Ht 5'10" Wt 195* | | □ |
| E. Any history of illness, operation, or injury? | □ | |
| F. Any operation contemplated? | □ | |
| G. Any medical treatment or consultation within 3 years? | □ | |
| H. Any past or present alcohol problem? | □ | |
| I. Any past or present drug habit? (Marijuana, cocaine, barbiturates, amphetamines, hallucinogens, heroin, opiates, or other narcotics) If questions H or I answered "Yes", is it important to comment fully and factually regarding all aspects) | □ | |
| J. Any cigarettes smoked in last 12 months? | □ | |
| K. Within the last year, engaged in motor racing on land or water, underwater diving, sky diving, ballooning, hang-gliding or parachuting? | □ | |
| L. Within the last year, any aircraft flights other than as a passenger? (If "Yes", state in narrative as to whether pilot, student pilot or crew member, frequency, etc.) | □ | |
| M. Within last 2 years, any traffic violations or accidents? | | □ |
| N. This insurance to replace or change any existing insurance or annuity? | □ | |
| 2. KEY Only: | | |
| A. Estimate net worth: □ Under $100,000   □ $100,000 - $500,000   □ Over $500,000 (Check One) | | |
| B. Annual income from occupation: $ *2 millions* | | |
| C. Annual income from other sources (explain in narrative section) | | |
| D. Anything regarding activities or environment that is potentially hazardous or unlawful? | | □ |
| 3. Sources of Information: | | |
| A. Applicant Interviewed? | | □ |
| B. Indicate on reverse side all other sources of information, their qualifications for providing information, and length of time known. | | |

Date _____ Sign _____   Key _____   CRA _____ PHOTO

(COMPLETE NARRATIVE PORTION ON REVERSE SIDE)



# EXHIBIT B

| | |
|---|---|
| *INSURED PERSON* | MALCOLM H WIENER |
| *POLICY OWNER* | MALCOLM H WIENER |
| *FACE AMOUNT OF INSURANCE* | $7,200,000 |
| *DEATH BENEFIT* | OPTION B (SEE PAGE 6) |
| *POLICY NUMBER* | 37 205 147 |

 **AXA EQUITABLE**

**LIFE
INSURANCE
POLICY**

**We agree** to pay the insurance benefits and to provide the other rights and benefits of this policy in accordance with its provisions.

### Flexible Premium Adjustable Life Plan

This is a flexible premium adjustable life policy. You can:

- increase or decrease the face amount of insurance;
- change the amount and frequency of the premiums you pay;
- change the death benefit option.

This is a non-participating policy.

All of these rights and benefits are subject to the terms and conditions of this policy. All requests for policy changes are subject to our approval and may require evidence of insurability.

*Pauline Sherman*

Pauline Sherman, Senior Vice President,
Secretary and Associate General Counsel

*Cnle*

Christopher M. Condron, Chairman,
President and Chief Executive Officer

**You Have Ten Days to Examine this Policy.** If you are not satisfied with this policy for any reason, you may cancel it by returning it to us within 10 days after you receive it. If you do, we will refund the premium that was paid.

No. 85-200

# Contents

*Policy Information*   3

*Table of Guaranteed Maximum Insurance Costs*   4

*Who Benefits from this Policy?*   5

*The Insurance Benefits We Pay*   5

*The Premiums You Pay*   7

*Your Policy Account and How it Works*   8

*Our Annual Report to You*   10

*The Cash Surrender Value of this Policy*   10

*How a Loan Can be Made*   11

*How Benefits are Paid*   12

*Other Important Information*   13

*A copy of the application for this policy and any additional benefit riders are at the back of the policy.*

### In this policy:

*"We", "our"* and *"us"* mean AXA Equitable Life Insurance Company.

*"You"* and *"your"* mean the owner of the policy at the time an owner's right is exercised.

References to amounts and values include all adjustments provided by this policy.

No. 85-200

POLICY INFORMATION

INSURED PERSON    MALCOLM H WIENER

POLICY OWNER      MALCOLM H WIENER
FACE AMOUNT
OF INSURANCE      $7,200,000

DEATH BENEFIT     OPTION B (SEE PAGE 6)

POLICY NUMBER     37205147

BENEFICIARY       CAROLYN SEELY WIENER

REGISTER DATE     NOV 01, 1986              ISSUE AGE   51

DATE OF ISSUE     APR 24, 1987                    SEX   MALE

                                              NON-SMOKER

PARTIAL
CASH VALUE
WITHDRAWAL    MINIMUM WITHDRAWAL IS $500.

STATE OF
RESIDENCE     CONNECTICUT

AN INITIAL PREMIUM PAYMENT OF $96,782.50 IS DUE ON OR BEFORE DELIVERY
OF THE POLICY.

THE PLANNED PERIODIC PREMIUM OF $96,782.50 IS PAYABLE SEMIANNUALLY.

PREMIUM PAYMENTS ARE FOR THE INSURANCE BENEFITS AND ANY ADDITIONAL
BENEFIT RIDERS LISTED BELOW.

THE PREMIUM PAYMENTS SHOWN ABOVE MAY NOT BE SUFFICIENT TO CONTINUE THE
POLICY AND LIFE INSURANCE COVERAGE IN FORCE TO THE FINAL POLICY DATE,
WHICH IS THE POLICY ANNIVERSARY NEAREST THE INSURED PERSON'S 95TH
BIRTHDAY.  THE PERIOD FOR WHICH THE POLICY AND COVERAGE WILL CONTINUE
IN FORCE WILL DEPEND ON:  (1) THE AMOUNT, TIMING AND FREQUENCY OF PREMIUM
PAYMENTS; (2) CHANGES IN THE FACE AMOUNT OF INSURANCE AND THE DEATH BENEFIT
OPTIONS; (3) CHANGES IN THE INTEREST RATES CREDITED, AND IN THE MONTHLY
COST OF INSURANCE DEDUCTIONS FROM THE POLICY ACCOUNT FOR THIS POLICY AND
ANY BENEFITS PROVIDED BY RIDERS TO THIS POLICY; AND (4) LOAN AND PARTIAL
NET CASH SURRENDER VALUE WITHDRAWAL ACTIVITY.

POLICY INFORMATION CONTINUED - POLICY NUMBER 37205147

----------------TABLE OF EXPENSE CHARGES----------------

INITIAL ADMINISTRATIVE CHARGE:

$250 SUBTRACTED FROM THE INITIAL PREMIUM PAYMENT.

CHARGE FOR APPLICABLE TAXES:

2% OF EACH PREMIUM PAYMENT. THIS AMOUNT IS SUBTRACTED FROM EACH
PREMIUM PAYMENT. WE RESERVE THE RIGHT TO CHANGE THIS PERCENTAGE TO
CONFORM TO CHANGES IN LEGISLATION OR IF THE INSURED PERSON CHANGES
RESIDENCE.

MONTHLY ADMINISTRATIVE CHARGE:

$4 DEDUCTED MONTHLY FROM THE POLICY ACCOUNT. WE RESERVE THE RIGHT TO
CHANGE THIS CHARGE, BUT IT WILL NEVER BE MORE THAN $8 A MONTH. CHANGES
WILL BE AS DESCRIBED IN "CHANGES IN POLICY COST FACTORS" ON PAGE 14.

FOR PARTIAL WITHDRAWAL OF NET CASH SURRENDER VALUE:

$25 DEDUCTED FROM THE POLICY ACCOUNT WHENEVER THERE IS A PARTIAL NET CASH
SURRENDER VALUE WITHDRAWAL.

FOR AN INCREASE YOU ASK FOR IN THE FACE AMOUNT OF INSURANCE:

$1.50 FOR EACH $1,000 OF INCREASE (BUT NOT MORE THAN $250) IS DEDUCTED
FROM THE POLICY ACCOUNT.

POLICY INFORMATION CONTINUED - POLICY NUMBER 37205147

----------------TABLE OF SURRENDER CHARGES----------------

| POLICY YEAR | CHARGE |
| ------ | ------ |
| 1 | $76,950 |
| 2 | 76,950 |
| 3 | 76,950 |
| 4 | 76,950 |
| 5 | 76,950 |
| 6 | 76,950 |
| 7 | 61,560 |
| 8 | 46,170 |
| 9 | 30,780 |
| 10 | 15,390 |

THE APPLICABLE SURRENDER CHARGE IS SUBTRACTED FROM THE POLICY ACCOUNT IF THE POLICY IS GIVEN UP FOR ITS NET CASH SURRENDER VALUE IN THE FIRST 10 POLICY YEARS.  IF THE FACE AMOUNT OF INSURANCE IS REDUCED IN THE FIRST 10 POLICY YEARS, A PRO RATA SHARE OF THE SURRENDER CHARGE FOR THAT POLICY YEAR MAY BE SUBTRACTED FROM THE POLICY ACCOUNT.  SEE PAGE 11.

---------------ENDORSEMENTS---------------

1.  AMENDMENT TO SUICIDE EXCLUSION:  THE SUICIDE EXCLUSION IN THIS POLICY, OTHER THAN IN ANY ACCIDENTAL DEATH BENEFIT RIDER, IS AMENDED BY DELETING THE PHRASE "WHILE SANE OR INSANE."

2.  WE WILL REVIEW THE POLICY ACCOUNT INTEREST RATES EACH POLICY YEAR AND WILL REVIEW THE COST OF INSURANCE RATES AT LEAST EVERY FIVE YEARS AND AT THE TIME ANY CHANGE IS MADE FOR NEW ISSUES.  ANY ADJUSTMENT IN THESE RATES WILL BE BY CLASS AND BASED UPON CHANGES IN FUTURE EXPECTATIONS FOR SUCH ELEMENTS AS INVESTMENT EARNINGS, MORTALITY, PERSISTENCY, EXPENSES AND TAXES, AND WILL BE DETERMINED IN ACCORDANCE WITH PROCEDURES AND STANDARDS ON FILE WITH THE NEW YORK INSURANCE DEPARTMENT.

3.  THE INTEREST WE CREDIT TO THE POLICY ACCOUNT WITH RESPECT TO ANY LOANED AMOUNTS WILL BE AT AN ANNUAL RATE NOT LESS THAN THE RATE WE CHARGE FOR LOAN INTEREST REDUCED BY 2%; IN NO EVENT WILL WE CREDIT LESS THAN 4.5% A YEAR.

4.  THE MONTHLY ADMINISTRATIVE CHARGE AS DESCRIBED ON PAGE 3 CONTINUED AND PAGE 10 OF YOUR POLICY WILL NOT APPLY.

85-200-3                    PAGE 3 - CONTINUED
(CONTINUED ON NEXT PAGE)

POLICY INFORMATION CONTINUED - POLICY NUMBER 37205147

5. THE FIRST $1,000 OF POLICY ACCOUNT WILL BE CREDITED WITH 4.5% EFFECTIVE ANNUAL INTEREST.

6. AMENDMENT TO "POLICY LOANS" PROVISION:  THE THIRD SENTENCE IS DELETED.

7. AMENDMENT TO "THE BASIS WE USE FOR COMPUTATION" PROVISION:  THE LAST SENTENCE OF THE FIRST PARAGRAPH IS DELETED.

8. THE PHRASE "AS INTERPRETED BY US" IS DELETED FROM

    A. ITEM 5 ON PAGE 7 OF THE POLICY;

    B. THE THIRD PARAGRAPH ON PAGE 8;

    C. THE FIRST PARAGRAPH ON PAGE 12; AND

    D. THE THIRD PARAGRAPH ON PAGE 14.

9. THE PHRASE "WE DEEM IT" IS ALSO DELETED FROM THE THIRD PARAGRAPH ON PAGE 14.

S.85-98

85-200-3          PAGE 3 - CONTINUED

POLICY INFORMATION CONTINUED - POLICY NUMBER 37205147

---------TABLE OF GUARANTEED MAXIMUM INSURANCE COSTS---------

GUARANTEED MAXIMUM MONTHLY RATES PER $1,000
OF NET AMOUNT AT RISK (SEE PAGE 9)

| INSURED PERSON'S ATTAINED AGE | MONTHLY RATE | INSURED PERSON'S ATTAINED AGE | MONTHLY RATE |
|---|---|---|---|
| 51 | $ 0.61000 | 86 | $15.02167 |
| 52 | 0.66583 | 87 | 16.35667 |
| 53 | 0.72833 | 88 | 17.73833 |
| 54 | 0.80000 | 89 | 19.17167 |
| 55 | 0.87667 | 90 | 20.67750 |
| 56 | 0.96000 | 91 | 22.28750 |
| 57 | 1.04667 | 92 | 24.06333 |
| 58 | 1.14000 | 93 | 26.12000 |
| 59 | 1.23917 | 94 | 28.81333 |
| 60 | 1.35000 | | |
| 61 | 1.47333 | | |
| 62 | 1.61333 | | |
| 63 | 1.77250 | | |
| 64 | 1.94917 | | |
| 65 | 2.14333 | | |
| 66 | 2.35083 | | |
| 67 | 2.57250 | | |
| 68 | 2.80917 | | |
| 69 | 3.06500 | | |
| 70 | 3.35333 | | |
| 71 | 3.68167 | | |
| 72 | 4.06000 | | |
| 73 | 4.49583 | | |
| 74 | 4.98333 | | |
| 75 | 5.51333 | | |
| 76 | 6.07667 | | |
| 77 | 6.66583 | | |
| 78 | 7.27583 | | |
| 79 | 7.92417 | | |
| 80 | 8.63500 | | |
| 81 | 9.43083 | | |
| 82 | 10.33917 | | |
| 83 | 11.37333 | | |
| 84 | 12.51417 | | |
| 85 | 13.73750 | | |

## Who Benefits from this Policy?

**Owner.** The owner of this policy is the insured person unless stated otherwise in the application, or later changed.

If the insured person is living on the Final Policy Date defined in the Policy Information section, we will pay you the amount in the Policy Account on that date minus any outstanding loan and loan interest. This policy will then end.

As the owner, you are entitled to exercise all the rights of this policy while the insured person is living. To exercise a right, you do not need the consent of anyone who has only a conditional or future ownership interest in this policy.

**Beneficiary.** The beneficiary is as stated in the application, unless later changed. The beneficiary is entitled to the insurance benefits of this policy. If two or more persons are named, those who survive the insured person will share the insurance benefits equally, unless you have made another arrangement with us.

If there is no designated beneficiary living at the death of the insured person, we will pay the benefits to the surviving children of the insured person in equal shares. If none survive, we will pay the insured person's estate.

**Changing the Owner or Beneficiary.** While the insured person is living, you may change the owner or beneficiary by written notice in a form satisfactory to us. (You can get such a form from our agent or by writing to us.) The change will take effect on the date you sign the notice. But, it will not apply to any payment we make or other action we take before we receive the notice. If you change the beneficiary, any previous arrangement you made as to a payment option for benefits is cancelled. You may choose a payment option for the new beneficiary in accordance with "How Benefits Are Paid" on Page 12.

**Assignment.** You can assign this policy, but we will not be bound by an assignment unless we have received it in writing. Your rights and those of any other person referred to in this policy will be subject to the assignment. We assume no responsibility for the validity of an assignment.

## The Insurance Benefits We Pay

We will pay the insurance benefits of this policy to the beneficiary when we receive proof that the insured person died before the Final Policy Date. These insurance benefits include the following amounts, which we will determine as of the date of the insured person's death:

- the death benefit described below;
- plus any other benefits then due from riders to this policy;
- minus any loan (and loan interest) on the policy;
- minus any overdue monthly deductions if the insured person dies during the grace period.

*THE INSURANCE
BENEFITS
WE PAY (continued)*

We will add interest to the resulting amount for the period from the date of death to the date of payment. We will compute the interest at a rate we determine, but not less than the greater of (a) the rate we are paying on the date of payment under the Deposit Option on Page 12; or (b) the rate required by any applicable law.

Payment of these benefits may also be affected by other provisions of this policy. See Pages 14 and 15, where we specify the suicide exclusion, our right to contest the policy, and what happens if age or sex has been misstated. Special exclusions or limitations (if any) are listed in the Policy Information section.

Death Benefit. The death benefit will be determined under either Option A or Option B below, whichever is chosen and is in effect on the date the insured person dies:

Under Option A, the death benefit is the greater of the following items (a) or (c).

Under Option B, the death benefit is the greater of the following items (b) or (c).

(a) The Face Amount of Insurance on the date of death.

(b) The Face Amount of Insurance *plus* the amount in the Policy Account on the date of death.

(c) A percentage of the amount in the Policy Account on the date of death. Such percentage is the applicable percentage from the table below for the insured person's age (nearest birthday) at the beginning of the policy year in which death occurs.

*TABLE OF
APPLICABLE PERCENTAGES*

For ages not shown, the applicable percentages shall decrease by a ratable portion for each full year

| Insured Person's Age | Percentage | Insured Person's Age | Percentage |
|---|---|---|---|
| 40 and under | 250% | 65 | 120% |
| 45 | 215 | 70 | 115 |
| 50 | 185 | 75 thru 90 | 105 |
| 55 | 150 | 95 | 100 |
| 60 | 130 | | |

Changing the Face Amount of Insurance or the Death Benefit Option. During the first policy year the death benefit option and the Face Amount of Insurance will be those you chose on the application for this policy and which are shown in the Policy Information section. At any time after the first policy year while this policy is in force, you may change the death benefit option or the Face Amount of Insurance by written request to us, subject to our approval and the following:

1. You may ask us to increase the Face Amount of Insurance if you provide evidence satisfactory to us of the insurability of the insured person. Any increase you ask for must be at least $10,000. We will deduct the charge for such increase shown in the Policy Information section from the Policy Account as of the date the increase takes effect.

2. You may ask us to reduce the Face Amount of Insurance but not to less than the minimum amount for which we would then issue this policy under our rules. If you do this in the first ten policy years, we may deduct from the Policy Account a pro rata share of the applicable surrender charge (see Page 11).

3. You can change your death benefit option. If you ask us to change from Option A to Option B, we will decrease the Face Amount of Insurance by the amount in the Policy Account on the date of change. However, we reserve the right to decline to make such change if it would reduce the Face Amount of Insurance below the minimum amount for which we would then issue this policy under our rules. If you ask us to change from Option B to Option A, we will increase the Face Amount of Insurance by the amount in the Policy Account on the date of change. Such decreases and increases in the Face Amount of Insurance are made so that there is no change in the Net Amount at Risk (see Page 9).

4. Any change will take effect on the monthly policy anniversary which coincides with or next follows the date we approve the request.

5. We reserve the right to decline to make any change that we determine would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us (see Page 14).

6. We will send you a written notice showing each change. The notice is to be attached to and made part of this policy. The information in it will supersede the corresponding information in the Policy Information section. We may require you to return the policy to us to make a change.

*The Premiums You Pay*

The initial premium payment shown in the Policy Information section is due on or before delivery of the policy. No insurance will take effect before the initial premium payment is paid. Other premiums may be paid at any time at the premium collection office we designate while the policy is in force and before the Final Policy Date. They may be in any amount subject to the limits described below.

EXHIBIT B

**THE PREMIUMS**
**YOU PAY** *(continued)*

We will send premium reminder notices to you for the planned periodic premium shown in the Policy Information section unless you ask us not to in the application for this policy or later by written notice. You may skip planned premium payments or change their frequency and amount.

**Limits.** Each premium payment after the initial one must be at least $100. We may increase this minimum limit 90 days after we send you written notice of such increase.

We reserve the right not to accept premium payments in a policy year that we determine would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us (see Page 14).

**Grace Period.** If the Net Cash Surrender Value on any monthly anniversary is less than the monthly deductions for that month described on Page 9, we will stop making such deductions. There will then be a grace period of 61 days after that anniversary. If a grace period starts, we will send you and any assignee on our records at last known addresses a notice. The notice will state the grace period and the amount sufficient to cover 3 monthly deductions.

If by the end of the grace period we do not receive an amount sufficient to cover at least 3 monthly deductions, we will then send you and any assignee on our records at last known addresses a notice that this policy has ended without value.

If the insured person dies during the grace period, we will pay the insurance benefits as described on Page 5.

**Reinstatement.** If this policy has ended without value, you may reinstate it while the insured person is alive if you:

1. Ask for reinstatement within 3 years after the end of the grace period; and

2. Provide evidence of insurability satisfactory to us; and

3. Make a premium payment sufficient to keep the policy in force for at least 3 months after the date of reinstatement.

The effective date of the reinstated policy will be the monthly anniversary on or next following the date we approve your reinstatement application.

*Your Policy*
*Account and*
*How it Works*

When we receive your premium payments, we subtract the expense charges shown in the table in the Policy Information section. We put the balance into your Policy Account as of the date we receive the premium payment, and before any deductions from the Policy Account due on that date are made. We also put into your Policy Account any credits arising from a disability benefit under this policy.

S5 200 *

Page 8

EXHIBIT B

Your Policy Account earns interest at effective annual rates we determine. This interest is also added to your Policy Account. We make deductions from the Policy Account as described below. We will also subtract from the Policy Account any Net Cash Surrender Values you ask for. More details are given below and in the cash surrender value section on Page 10.

How We Add Interest. We will determine such interest rates annually in advance for unloaned and loaned amounts. The loaned amount, if any, is the part of the Policy Account equal to the amount of any outstanding policy loan and loan interest. The interest rates we determine each year will apply to the policy year that follows the date of determination. Any change in the interest rates we determine will be as described in "Changes in Policy Cost Factors" on Page 14. Such effective annual interest rates will not be less than 4½%.

We will add interest to your account at the end of each policy month based on amounts that were in the account throughout the month. We will credit interest on the balance of premium payments received in a policy month that are put into your Policy Account from the date we receive them, except that interest on the initial premium payment will be credited from the Register Date if later. We will credit interest on amounts that you withdraw from the Policy Account during a policy month only from the beginning of the policy month to the date of withdrawal.

Monthly Deductions. At the beginning of each policy month we make a deduction from the Policy Account to provide insurance coverage, subject to the Grace Period provision on Page 8. Such deduction for any policy month is the sum of the following amounts determined as of the beginning of that month:

- The monthly cost of insurance for the insured person that we determine.
- The monthly cost of any benefits provided by riders to this policy, as determined in accordance with such riders.

The monthly cost of insurance is our current monthly "cost of insurance rate" times the "net amount at risk" (Death Benefit minus the amount in the Policy Account) at the beginning of the policy month; *plus* any extra charge shown in the Policy Information section times the Face Amount of Insurance at the beginning of the policy month. For this purpose the amount in the Policy Account is determined before the monthly cost of insurance deduction but after all other deductions due on that date have been made. The cost of insurance rate is based on the sex, attained age, and rating class of the insured person. ("Attained age" means age on the birthday nearest to the beginning of the then current policy year.)

We will determine cost of insurance rates from time to time. Any change in the cost of insurance rates we use will be as described in "Changes in Policy Cost Factors" on Page 14. They will never be more than those shown in the Table of Guaranteed Maximum Insurance Costs on Page 4 plus any extra charge in the Policy Information section.

*YOUR POLICY*
*ACCOUNT AND HOW*
*IT WORKS (continued)*

Also at the beginning of each policy month, we make a deduction from the Policy Account for monthly administrative charges, subject to the Grace Period provision on Page 8. They are shown in the Table of Expense Charges in the Policy Information section.

Other Deductions. We also make the following other deductions from the Policy Account as they occur:

- If you make a partial withdrawal of the Net Cash Surrender Value, we deduct the charge for it shown in the Table of Expense Charges in the Policy Information Section.
- We subtract surrender charges if you give up the policy for its Net Cash Surrender Value or if you reduce the Face Amount of Insurance.
- We make a deduction from the Policy Account if you increase the Face Amount of Insurance (see Page 7).

*Our Annual*
*Report to You*

For each policy year we will send you a report that shows the current Death Benefit, value of your Policy Account, cash surrender value and any outstanding policy loan with the current loan interest rate. It will also show all amounts added to or deducted from the Policy Account in the year: the premiums paid, interest added, insurance cost deductions, and all expense charges, surrender charges and partial net cash surrender value withdrawals made in the year. The report will also show such other information as may be required by the insurance supervisory official of the jurisdiction in which this policy is delivered.

*The Cash*
*Surrender Value*
*of this Policy*

Net Cash Surrender Value. You may give up this policy for its Net Cash Surrender Value at any time while the insured person is living. You may do this by sending us a written request and this policy. The Net Cash Surrender Value is equal to the Cash Surrender Value minus any loan and loan interest. We will compute the Net Cash Surrender Value as of the date we receive your request and this policy. All insurance coverage under this policy ends on such date.

Cash Surrender Value. The Cash Surrender Value on any date is equal to the amount in the Policy Account on that date minus any applicable surrender charge.

Surrender Charges. If you give up this policy for its Net Cash Surrender Value in the first ten policy years, we will subtract a surrender charge from the Policy Account. The surrender charge for each such year is shown in the Table of Surrender Charges in the Policy Information section. The surrender charge stays the same throughout a policy year, except as stated below.

If the Face Amount of Insurance is reduced during any of the first ten policy years because you ask us to reduce it, we may also deduct from the Policy Account a pro rata surrender charge. The amount of the pro rata surrender charge will be determined by the following formula:

$$\frac{A}{B} \times C$$

where A — Represents the decrease in the Face Amount of Insurance to which a surrender charge will be applied. The amount of the decrease is the difference between the current Face Amount of Insurance and the new Face Amount of Insurance. However, this amount will be reduced by (1) the sum of all requested and approved prior increases in the Face Amount of Insurance; less (2) the sum of all requested and approved prior reductions in the Face Amount of Insurance (as described in sections 1 and 2 of "Changing the Face Amount of Insurance or the Death Benefit Option" on Page 7) minus the portion of such prior reductions on which a pro rata surrender charge was previously made.

where B — Is the initial Face Amount of Insurance.

where C — Is the original surrender charge for the applicable policy year as shown in the Table of Surrender Charges when this policy was issued.

When a pro rata surrender charge is made, the Table of Surrender Charges for that year and subsequent years will be reduced proportionately.

The written notice we send you when the Face Amount of Insurance is reduced at your request will show surrender charges. If because of such pro rata deductions the surrender charge is reduced to zero, there will be no further surrender charges.

Partial Net Cash Surrender Value Withdrawal. After the first policy year you may ask for a partial Net Cash Surrender Value withdrawal, subject to our approval and to the minimum withdrawal amount shown in the Policy Information section. A partial withdrawal will result in a reduction in the Death Benefit, the Cash Surrender Value and in the Policy Account equal to the amount withdrawn plus the amount of the following expense charge. When a partial withdrawal is made, we will deduct an expense charge from the Policy Account equal to the amount shown in the Table of Expense Charges in the Policy Information section.

Such change in the Death Benefit, Cash Surrender Value and in the Policy Account will take effect on the date of withdrawal. We will send you a written notice showing each change. The notice is to be attached to and made part of this policy. The information in it will supersede the corresponding information in the Policy Information section. We may require you to return the policy to us to make a change.

We reserve the right to decline a request for a partial Net Cash Surrender Value withdrawal if: (a) the Death Benefit would be reduced below the minimum amount for which we would then issue this policy under our rules; or (b) we determine that the withdrawal would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us (see Page 14).

## How a Loan Can Be Made

**Policy Loans.** You can get a loan on this policy while it has a loan value. This policy will be the only security for the loan. The initial loan and each additional loan must be for at least the minimum loan amount shown in the Policy Information section, except for a loan to pay a premium to us. Any amount on loan is still considered to be part of your Policy Account. While on loan, it will still earn interest as stated on Page 9.

The amount of the loan may not be more than the loan value. Any existing loan and loan interest will be subtracted from a new loan.

**Loan Value.** The loan value on any date is the Cash Surrender Value on that date.

**Loan Interest.** Interest on a loan accrues daily, at an annual rate of 8%. We may charge a lower rate for any period of time. Interest is due on each policy anniversary. If the interest is not paid when due, it will be added to the loan and bear interest at the loan rate.

**Loan Repayment.** You may repay all or part of a policy loan at any time while the insured is alive and this policy is in force. We will assume that any payment you make to us while you have a loan is a loan repayment, unless you tell us in writing that it is a premium payment.

Failure to repay a policy loan or to pay loan interest will not terminate this policy. However, if the Net Cash Surrender Value is not sufficient for the monthly deduction due on a monthly anniversary the Grace Period provision will apply (see Page 8).

## How Benefits Are Paid

You can have insurance benefits, net cash surrender value withdrawals, and the Policy Account payable on the Final Policy Date paid immediately in one sum. Or, you can choose another form of payment for all or part of them. If you do not arrange for a specific choice before the insured person dies, the beneficiary will have this right when the insured person dies. If you do make an arrangement, however, the beneficiary cannot change it after the insured person dies.

The options are:

1. DEPOSIT: The sum will be left on deposit for a period mutually agreed upon. We will pay interest at the end of every month, every 3 months, every 6 months or every 12 months, as chosen.

2.  INSTALLMENT PAYMENTS: There are two ways that we pay installments:

FIXED PERIOD: We will pay the sum in equal installments for a specified number of years (not more than 30). The installments will be at least those shown in the Table of Guaranteed Payments on Page 16.

FIXED AMOUNT: We will pay the sum in installments as mutually agreed upon until the original sum, together with interest on the unpaid balance, is used up.

3.  MONTHLY LIFE INCOME: We will pay the sum as a monthly income for life. The amount of the monthly payment will be at least that shown in the Table of Guaranteed Payments on Page 16. You may choose any one of three ways to receive monthly life income. We will guarantee payments for at least 10 years (called "10 Years Certain"); at least 20 years (called "20 Years Certain"); or until the payments we make equal the original sum (called "Refund Certain").

4.  OTHER: We will apply the sum under any other option requested that we make available at the time of the insured person's death or net cash surrender value withdrawal, or on the Final Policy Date, whichever applies.

We guarantee interest under the Deposit Option at the rate of 3% a year and under either Installment Option at $3\frac{1}{2}$% a year. We may raise these guaranteed rates. We may also allow interest under the Deposit Option and under either Installment Option at a rate above the guaranteed rate.

The payee may name and change a successor payee for any amount we would otherwise pay to the payee's estate.

Any arrangements involving more than one of the options, or a payee who is not a natural person (for example, a corporation) or who is a fiduciary, must have our approval. Also, details of all arrangements will be subject to our rules at the time the arrangement takes effect. These include rules on: the minimum amount we will apply under an option and minimum amounts for installment payments; withdrawal or commutation rights; naming payees and successor payees; and proving age and survival.

Payment choices (or any later changes) will be made and will take effect in the same way as a change of beneficiary. Amounts applied under these options will not be subject to the claims of creditors or to legal process, to the extent permitted by law.

## Other Important Information

Your Contract with Us. This policy is issued in consideration of payment of the initial premium payment shown in the Policy Information section.

*OTHER IMPORTANT*
*INFORMATION*
*(continued)*

This policy, and the attached copy of the initial application and all subsequent applications to change the policy, make up the entire contract.

Only our President or one of our Vice Presidents can modify this contract or waive any of our rights or requirements under it. The person making these changes must put them in writing and sign them.

Policy Changes – Applicable Tax Law. For you and the beneficiary to receive the tax treatment accorded to life insurance under the federal law, this policy must qualify initially and continue to qualify as life insurance under the Internal Revenue Code or successor law. Therefore, to assure this qualification for you we have reserved earlier in this policy the right to decline to accept premium payments, to decline to change death benefit options, or to decline to make partial withdrawals that would cause the policy to fail to qualify as life insurance under applicable tax law as interpreted by us. Further, we reserve the right to make changes in this policy or its riders (for example in the percentages on Page 6) or to make distributions from the policy to the extent we deem it necessary to continue to qualify this policy as life insurance. Any such changes will apply uniformly to all policies that are affected. You will be given advance written notice of such changes.

Changes in Policy Cost Factors. Changes in policy cost factors (interest, cost of insurance deductions and expense charges) will be by class and based upon changes in future expectations for such elements as: investment earnings, mortality, persistency, expenses and taxes. Any change in policy cost factors will be determined in accordance with procedures and standards on file, if required, with the insurance supervisory official of the jurisdiction in which this policy is delivered.

When the Policy is Incontestable. We have the right to contest the validity of this policy based on material misstatements made in the initial application for this policy. We also have the right to contest the validity of any policy change based on material misstatements made in any application for that change. However, we will not contest the validity of this policy after it has been in effect during the lifetime of the insured person for two years from the Date of Issue shown in the Policy Information section. We will not contest any policy change that requires evidence of insurability, or any reinstatement of this policy, after the change or reinstatement has been in effect for two years during the insured person's lifetime.

No statement shall be used to contest a claim unless contained in an application.

All statements made in an application are representations and not warranties.

See any additional benefit riders for modifications of this provision that apply to them.

What If Age or Sex has Been Misstated? If the insured person's age or sex has been misstated on any application, we will adjust any benefits to reflect the correct age and sex.

**How the Suicide Exclusion Affects Benefits.** If the insured person commits suicide (while sane or insane) within two years after the Date of Issue shown in the Policy Information section, our liability will be limited to the payment of a single sum. This sum will be equal to the premiums paid, minus any loan and loan interest and minus any partial withdrawal of the net cash surrender value. If the insured person commits suicide (while sane or insane) within two years after the effective date of a change that you asked for that increases the Death Benefit, then our liability as to the increase in amount will be limited to the payment of a single sum equal to the monthly cost of insurance deductions made for such increase.

**How We Measure Policy Periods and Anniversaries.** We measure policy years, policy months and policy anniversaries from the Register Date shown in the Policy Information section. Each policy month begins on the same day in each calendar month as the day of the month in the Register Date.

**How and When We Defer Payment.** We may defer payment of any cash surrender withdrawal or loan amount (except a loan to pay a premium to us) for up to six months after we receive a request for it. We will allow interest, at a rate of at least 3% a year, on any cash surrender value payment we defer for 30 days or more.

**The Basis We Use for Computation.** We provide cash surrender values that are at least equal to or more than those required by law. If required to do so, we have filed with the insurance supervisory official of the jurisdiction in which this policy is delivered a detailed statement of our method of computing such values. We compute reserves under this policy by the Commissioners Reserve Valuation Method.

We base minimum cash surrender values and reserves on the "Commissioners 1980 Standard Ordinary Male and Female Mortality Tables." We also use these tables as the basis for determining maximum insurance costs, taking account of sex, attained age and rating class of the insured person. We use interest compounded annually at $4\frac{1}{2}\%$.

**Policy Illustrations.** Upon request we will give you an illustration of the future benefits under this policy based upon both guaranteed and current cost factor assumptions. However, if you ask us to do this more than once in any policy year, we reserve the right to charge you a fee for this service.

**Policy Changes.** You may change this policy to another available plan of insurance or add additional benefit riders or make other changes, subject to our rules at the time of change.

### Table of Guaranteed Payments
*MINIMUM AMOUNT FOR EACH $1,000 OF ORIGINAL SUM*

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Option 2** | | | | **Option 3** | | | | | | |
| **FIXED PERIOD INSTALLMENTS** | | | | **MONTHLY LIFE INCOME** | | | | | | |
| | | | | | 10 Years Certain | | 20 Years Certain | | Refund Certain | |
| Number of Years' Installments | Monthly Installment | Annual Installment | AGE | | Male | Female | Male | Female | Male | Female |
| 1 | $84.70 | $1,000.00 | 50 | | $4.50 | $3.96 | $4.27 | $3.89 | $4.28 | $3.87 |
| 2 | 43.08 | 508.60 | 51 | | 4.58 | 4.02 | 4.32 | 3.94 | 4.35 | 3.93 |
| 3 | 29.21 | 344.86 | 52 | | 4.67 | 4.09 | 4.38 | 4.00 | 4.42 | 3.99 |
| 4 | 22.28 | 263.04 | 53 | | 4.75 | 4.16 | 4.44 | 4.06 | 4.50 | 4.05 |
| 5 | 18.12 | 213.99 | 54 | | 4.85 | 4.24 | 4.50 | 4.12 | 4.58 | 4.11 |
| 6 | 15.36 | 181.32 | 55 | | 4.94 | 4.32 | 4.56 | 4.18 | 4.66 | 4.18 |
| 7 | 13.38 | 158.01 | 56 | | 5.04 | 4.40 | 4.62 | 4.24 | 4.74 | 4.25 |
| 8 | 11.91 | 140.56 | 57 | | 5.15 | 4.49 | 4.68 | 4.31 | 4.83 | 4.33 |
| 9 | 10.76 | 127.00 | 58 | | 5.26 | 4.58 | 4.74 | 4.38 | 4.93 | 4.41 |
| 10 | 9.84 | 116.18 | 59 | | 5.37 | 4.68 | 4.81 | 4.45 | 5.03 | 4.49 |
| 11 | 9.09 | 107.34 | 60 | | 5.49 | 4.78 | 4.86 | 4.52 | 5.13 | 4.58 |
| 12 | 8.47 | 99.98 | 61 | | 5.62 | 4.89 | 4.92 | 4.59 | 5.24 | 4.67 |
| 13 | 7.94 | 93.78 | 62 | | 5.75 | 5.00 | 4.98 | 4.66 | 5.35 | 4.77 |
| 14 | 7.49 | 88.47 | 63 | | 5.88 | 5.12 | 5.04 | 4.73 | 5.48 | 4.88 |
| 15 | 7.11 | 83.89 | 64 | | 6.03 | 5.25 | 5.09 | 4.80 | 5.60 | 4.99 |
| 16 | 6.77 | 79.89 | 65 | | 6.17 | 5.39 | 5.14 | 4.88 | 5.74 | 5.10 |
| 17 | 6.47 | 76.37 | 66 | | 6.32 | 5.53 | 5.19 | 4.95 | 5.88 | 5.22 |
| 18 | 6.20 | 73.25 | 67 | | 6.48 | 5.68 | 5.24 | 5.01 | 6.03 | 5.35 |
| 19 | 5.97 | 70.47 | 68 | | 6.64 | 5.83 | 5.28 | 5.08 | 6.18 | 5.49 |
| 20 | 5.76 | 67.98 | 69 | | 6.80 | 6.00 | 5.32 | 5.14 | 6.35 | 5.64 |
| 21 | 5.57 | 65.74 | 70 | | 6.97 | 6.17 | 5.35 | 5.20 | 6.53 | 5.79 |
| 22 | 5.40 | 63.70 | 71 | | 7.15 | 6.34 | 5.38 | 5.26 | 6.71 | 5.96 |
| 23 | 5.24 | 61.85 | 72 | | 7.32 | 6.53 | 5.41 | 5.30 | 6.91 | 6.13 |
| 24 | 5.10 | 60.17 | 73 | | 7.50 | 6.72 | 5.43 | 5.35 | 7.12 | 6.32 |
| 25 | 4.97 | 58.62 | 74 | | 7.67 | 6.92 | 5.45 | 5.38 | 7.34 | 6.52 |
| 26 | 4.84 | 57.20 | 75 | | 7.85 | 7.12 | 5.47 | 5.42 | 7.58 | 6.73 |
| 27 | 4.73 | 55.90 | 76 | | 8.02 | 7.32 | 5.48 | 5.44 | 7.82 | 6.96 |
| 28 | 4.63 | 54.69 | 77 | | 8.19 | 7.53 | 5.49 | 5.46 | 8.09 | 7.21 |
| 29 | 4.54 | 53.57 | 78 | | 8.36 | 7.75 | 5.50 | 5.48 | 8.38 | 7.47 |
| 30 | 4.45 | 52.53 | 79 | | 8.52 | 7.96 | 5.50 | 5.49 | 8.67 | 7.75 |
| | | | 80 | | 8.67 | 8.16 | 5.51 | 5.50 | 9.00 | 8.05 |
| | | | 81 | | 8.81 | 8.36 | 5.51 | 5.51 | 9.34 | 8.39 |
| | | | 82 | | 8.94 | 8.55 | 5.51 | 5.51 | 9.70 | 8.73 |
| | | | 83 | | 9.06 | 8.73 | 5.51 | 5.51 | 10.10 | 9.12 |
| | | | 84 | | 9.16 | 8.90 | 5.51 | 5.51 | 10.52 | 9.53 |
| | | | 85 & over | | 9.26 | 9.05 | 5.51 | 5.51 | 10.96 | 9.97 |

If installments are paid every 3 months, they will be 25.32% of the annual installments. If they are paid every 6 months, they will be 50.43% of the annual installments.

Amounts for Monthly Life Income are based on age nearest birthday when income starts. Amounts for ages not shown will be furnished on request.

## Limitation on Amount
## of Insurance Rider

(This limitation is required
by the laws of New York State)

*In this rider, "we", "our" and "us" mean AXA Equitable Life Insurance Company. "You" and "your" mean the Owner of the policy at the time an Owner's right is exercised.*

If the insured person dies before the age of 14 years and 6 months, the benefit paid may be limited. The total amount of life insurance payable on the life of the insured person under this policy and under all other insurance policies in effect on the Date of Issue of this policy, in our company and all other companies, shall be subject to the following maximum amount limitation:

| Insured Person's Attained Age | Maximum Amount Limitation |
|---|---|
| Less than 4 years and 6 months | The greater of:<br>a) $5,000; or<br>b) 25% of the total amount of life insurance in effect on the life of the applicant for this policy on its Date of Issue. |
| Between 4 years and 6 months and 14 years and 5 months | The greater of:<br>a) $10,000; or<br>b) 50% of the total amount of life insurance in effect on the life of the applicant for this policy on its Date of Issue. |

"Total amount of life insurance" as used in this rider shall not include: (a) return premium benefits; (b) additional benefits in the event of death by accident; (c) any additional insurance provided by use of dividends; (d) any variable death benefit above the guaranteed minimum death benefit provided under a variable life insurance policy; (e) any additional insurance provided by amounts credited to a policy after its issue; or (f) any insurance provided by a policy in excess of the face amount of insurance in force at the time of demand or death. Any part of this Policy not in excess of the above limits at the date of issue will not become in excess by reason of any later reduction in the amount of insurance on the Applicant's life.

If the total amount of life insurance on the life of the insured person is in excess of this maximum, we will terminate the amount of such excess insurance that is in effect under this policy. We will do this when the insured person dies or upon your earlier written request, but only if we are given satisfactory proof that such excess exists at the time of such death or request.

We will make an appropriate refund of the Monthly Deductions from the Policy Account if such excess insurance is terminated. We will determine the amount of the refund based on the Monthly Deductions made for the terminated insurance, with appropriate adjustments to recognize interest on such deductions (at 4½% per year compounded annually), any loan on the policy, and any partial withdrawal of the net cash surrender value. We will pay the refund to you if the insured person is living at the time of payment. If the insured person is not then living, we will pay it to the beneficiary. When such refund is paid, all of our obligations for such excess insurance terminate.

No such refund will be paid, however, if we have paid an excess amount as part of a death claim without having had proof satisfactory to us that an excess amount of insurance existed.

*AXA Equitable Life Insurance Company*

:ren Field Hazin, Vice President,
:cretary and Associate General Counsel

Christopher M. Condron,
Chairman and Chief Executive Officer

5-406

EXHIBIT B

## Exchange Privilege Rider

*In this rider, "we", "our" and "us" mean AXA Equitable Life Insurance Company. "You" means the Owner of the policy at the time an Owner's right is exercised.*

After the first policy year you may exchange this policy for a new policy on the life of a new insured person, subject to conditions we determine. These conditions include but are not limited to the following:

1. We must be satisfied that the new insured person is insurable for the amount of insurance applied for.

2. The new insured person must join in the request for the new policy and the owner of the new policy must have an insurable interest in the new insured person. If this policy is assigned, the assignee must consent to the exchange.

3. The exchange may be made as of the beginning of any policy month if neither the original insured person nor the new insured person is then over age 65.

4. This policy must be in effect on the exchange date with all monthly deductions from the Policy Account having been made, and with no such deductions then being waived nor amounts credited to the Policy Account by a disability rider.

5. Within 31 days before the date of exchange, we must receive (a) written request for the exchange on our application form; and (b) evidence of the new insured person's insurability satisfactory to us.

6. We will carry over to the new policy any loan and loan interest not repaid.

7. Insurance under this policy will cease when insurance under the new policy takes effect.

8. The new policy must qualify as life insurance under the Internal Revenue Code or successor legislation.

THE NEW POLICY. Planned periodic premiums for the new policy will be based on our rules in effect on its Register Date for the insurance age of the new insured person on that date. The Register Date of the new policy will be the same as the Register Date of this policy. However, if the new insured person's date of birth is later than the Register Date of this policy, the Register Date of the new policy will be the policy anniversary of this policy next preceding the date of exchange. The face amount of insurance and the death benefit option in the new policy will be the same as in effect in this policy on the date of exchange.

You may ask that additional benefit riders be included in the new policy. The issue of any rider will require our consent and evidence of insurability satisfactory to us.

The time periods in the Incontestability and Suicide Exclusion provisions of the new policy will begin on the Date of Issue of the new policy.

### AXA Equitable Life Insurance Company

Karen Field Hazin, Vice President,
Secretary and Associate General Counsel

Christopher M. Condron,
Chairman and Chief Executive Officer

185-405NY    Exchange Privilege

EXHIBIT B

EXHIBIT B

EXHIBIT B

03/28/2014  11:27  7005103  0003094

**Application To** ☐ The Equitable Life Assurance Society of the United States
☒ Equitable Variable Life Insurance Company

REQUEST FOR ☒ **CHANGE** (as specified in Section II of POLICY OR CONTRACT NO. 32105142
☐ **REINSTATEMENT** ☐ **DELIVERY** OF POLICY OR CONTRACT NO.

SECTION I

**Requested Change** (see below for adding RTI and CTI). Reduce the Face Amount from $9,000,000
to $7,200,000. Effective date of change is December 1, 1997.

ADD ☐ Renewable Term Rider (RTI) on Insured _____ Amt. $ _____
☐ Renewable Term Rider (RTI) on Additional Insured _____ Amt. $ _____
☐ Children's Term Rider (CTI) _____ Amt: $ _____ Units _____

For RTI on the Additional Insured and for CTI, the Beneficiary will be as stated in the rider for those benefits unless otherwise designated above in "Requested Change" (in any designation include Full Name and Relationship to Insured).

Complete below and answer the Questions in Section II as to the Additional Insured and as to each Child proposed for CTI.

**PERSONS TO BE COVERED UNDER RTI OR ADDITIONAL INSURED AND/OR CTI:**

NOTE: To be eligible for CTI, Children (including stepchildren and legally adopted children) must not yet have reached their 18th birthday. Coverage does not begin until a Child is 15 days old.

| RTI or CTI | First Name | Middle Initial | Last Name | Sex | Mo. | Day | Yr. |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Date of Birth

Complete a-e, only as to Additional Insured for RTI.

a. List all current occupations—Give Title(s) and Duties. _____

b. Age Nearest Birthday _____

c. Place of Birth: State of _____

d. Resident: State of _____

e. Owner's Relationship to Addit. Insured: _____

**The signers of this request agree that:**

1. If evidence of insurability is required, the statements and answers to the questions:
   ☐ in Sections I and II of this form.
   ☐ in Sections I and II of this form and on the medical history form dated _____
   are confirmed and offered as part of this request.
   Such statements and answers are true and complete to the best of my knowledge and belief. The Insurer may rely on them in acting on this request.

2. The Insurer shall incur no liability under this request
   (a) until it has been approved by the Insurer and the full consideration required in connection with it has been paid; and
   (b) unless evidence of insurability is required, the

   Dated at __C.S.__ N.Y. on 11-19 19 97
                City        State

   Will any other existing insurance or annuity be replaced or changed for or has it been, or is any other insurance or annuity applied for will be issued? ☐ Yes ☐ No

   Signature
   of Agent _____
   (See complete Production Credit Information on the back.

statements and answers made part of this request and offered as evidence of insurability are, without material change, true and complete to the best of my knowledge and belief as of the time of payment of such consideration.

3. Any new policy or contract issued in connection with a change requested shall be subject to (i) Any assignment of the original policy or contract in force and on file with the Insurer at its Home Office, and (ii) To any loan made by the Insurer on the original policy or contract and to the rights of the Insurer in connection with it.

4. No agent or medical examiner has authority to make or modify any contract or to waive any of the Insurer's rights or requirements. The Insurer shall not be bound by any information unless it is stated in this form or in any other form submitted in connection with this request.

See reverse side for Signature Requirements.

X _NEW_ _Phillip Aaron Jones_

(Signature)

160-33JC

Cat. No. 45937

EXHIBIT B

EXHIBIT B

## Application (Continued)

### SECTION II

*For each new Person to be covered, answer Questions 1 and 2. Also answer Questions 3, 4 and 5 if Non-Medical.*
*For persons already covered by the policy or contract, each questions need be answered only as to occurrences that took place after the date of application for the policy or contract.*

**1. Has any Person To Be Covered:**

a. Within the last two years been convicted of two or more moving violations or driving under the influence of alcohol or drugs, or had a driver's license suspended or revoked? (Give full details, including dates, types of violation, and reasons for license suspension or revocation.)  ☐ Yes ☐ No

b. Any plan to travel or reside outside the U.S.? ☐ Yes ☐ No
(If yes, give full details.)

c. Any other life insurance now in effect or application now pending? (State companies and amounts.)  ☐ Yes ☐ No

**2. Has any Person To Be Covered:**

a. Within the last year flown other than as a passenger or plan to do so?  ☐ Yes ☐ No
If yes: Total flying time at present _____ Hours;
Last 12 mos. _____ Hours;  Next 12 mos. _____ Est. Hours.
(Complete a Aviation Supplement for competitive, test, stunt or military flying, or crop dusting.)  ☐ Yes ☐ No

b. Engaged within the last year, or any plan to engage in motor racing on  land or water, underwater diving, sky diving, ballooning, hang gliding or parachuting? (If yes, complete Avocation Supplement.)  ☐ Yes ☐ No

c. Ever had an application for life or health insurance declined, postponed, rated or otherwise modified? (Give full details.)  ☐ Yes ☐ No

**6. Replaced or changed any other existing insurance or annuity** (or any plan to do so) assuming that any new insurance or annuity applied for will be issued? (State companies, policies and amounts.)  ☐ Yes ☐ No

**3. Insured:**  Height: ____ Ft. ____ In. Weight: ____ lbs.
Additional Insured: Height ____ Ft. ____ In. Weight ____ lbs.

**4. Has any Person To Be Covered:**

a. Ever been treated for or had any indication of heart trouble, stroke, high blood pressure, chest pain, diabetes, urine or cancer? (Give full details.)  ☐ Yes ☐ No

b. Within the last 5 years, consulted a physician, or been examined or treated in a hospital or other medical facility? (Include medical check-ups in the last 2 years. Do not include colds, minor virus infections, minor injuries, or normal pregnancy.) (Give full details.)  ☐ Yes ☐ No

**5. Has any Person To Be Covered:**

a. Within the last ten years repeatedly used barbiturates, amphetamines, hallucinatory drugs or narcotics? (Give full details.)  ☐ Yes ☐ No

b. Within the last ten years received counseling or treatment regarding the use of alcohol or drugs? (Give full details.)  ☐ Yes ☐ No

**6. DETAILS. For each yes answer give Question number, name of person(s) affected and full details. For 4 and 5 also include conditions, dates, durations, treatment and results, and names and addresses of physicians and medical facilities.**

| No. | Name of Person Affected | Details |
|-----|------------------------|---------|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

---

**TO BE COMPLETED BY AGENT.**
For Production Credits (Service Agent first)

| (Print) Agent's Name(s) | Initial of Last Name | Number | Share of Ins. | % |
|-------------------------|---------------------|--------|---------------|---|
| | | | | |
| | | | | |

Agency & Code No. _____

District & Code No. _____

Date _____ 19____

Service Agent's Signature _____

---

**SIGNATURE REQUIREMENTS**

Change. Owner (and assignee if policy is assigned) must sign. If evidence of insurability is required, each person covered by the change must also sign.

Reinstatement. Each person covered by the policy must sign. If the insured is not the Owner or if the policy is absolutely assigned, the Owner or Absolute Assignee must also sign.

New. Same signature requirements as on original application.

● NOTE: If the Owner or any person to be covered is a child under age 15, the parent or guardian should sign for the child.

180-33C

EXHIBIT 8

EXHIBIT 8

# THE EQUITABLE

## ⬦EVLICO®

### REQUEST FOR CHANGE OF BENEFICIARY AND/OR OWNER TO

☐ THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

☒ EQUITABLE VARIABLE LIFE INSURANCE COMPANY

EQUITABLE AND EVLICO REQUESTS FOR CHANGE OF BENEFICIARY AND/OR OWNER MUST BE SUBMITTED ON SEPARATE FORMS.

**BEFORE COMPLETING THIS REQUEST, PLEASE READ THE INSTRUCTIONS ON THE COVER PAGE AND THE PROVISIONS ON THE REVERSE SIDE OF THIS FORM. DO NOT RETURN THE POLICY WITH THIS REQUEST.**

INSURED/ANNUITANT'S NAME Malcom B. Wiener          POLICY NUMBER 27 205 147

CHANGE OF BENEFICIARY:   ☒ YES   ☐ NO (No change from present Beneficiary if neither box is checked)

FULL NAME OF NEW BENEFICIARY, RELATIONSHIP TO INSURED/ANNUITANT, ADDRESS OF ALL NAMED BENEFICIARIES, AND SOCIAL SECURITY NUMBER.

Carolyn Seely Wiener, Wife   Soc. Sec. # 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

720 Park Avenue

New York, N.Y. 1008l

CHANGE OF OWNER:   ☐ YES   ☒ NO (No change from present Owner if neither box is checked)

FULL NAME OF NEW OWNER AND RELATIONSHIP TO INSURED/ANNUITANT.

THIS CHANGE IS SUBJECT TO THE PROVISIONS ON THE REVERSE SIDE

Owner's Address: If applicable, check one and complete.
☐ Address of NEW OWNER is   ☒ change address of SAME OWNER as:

720 Park Avenue

New York, N.Y.   1008l

SUBSTITUTE FORM W-9 — FOR NEW INDIVIDUAL OWNER ONLY

Federal Law requires that you provide the following (See reverse side for explanation):

PART ONE — Enter your taxpayer identification number in the appropriate box. For most taxpayers, this is the Social Security Number.

Social Security Number ☐☐☐—☐☐—☐☐☐☐  OR  Employer I.D. Number ☐☐—☐☐☐☐☐☐☐

PART TWO — Check this box if you are NOT subject to backup withholding under the provisions of section 3406(a)(1)(C) of the Internal Revenue Code. ☐

CERTIFICATION — Under penalties of perjury, I certify that this information is true, correct and complete.

Signature of New Owner _____ Date: _____

FOR EQUITABLE/EVLICO USE ONLY

The Equitable/EVLICO certifies that this change has been recorded.

Date: 11—17—93   By Ronald Dain

Signature of Insured/Annuitant Malcolm B. Wiener   Date: 11-17 93

IMPORTANT: Please use typewriter or ball point pen. Press firmly since entries must be legible on all copies. If the signatures or other address, When this page and form is duplicate are completed, once both complete copies it is certain we have recorded the change, we will serve a copy of the form signed by us as evidence of the change.

Item Reorder
CATALOG #123364   K-4-16-43

EXHIBIT B

EXHIBIT B

**Part 1 of an Application for Fixed Benefit Life Insurance To**
**Equitable Variable Life Insurance Company (EVLICO)**   ☐ UV.  ☐ OPA)

**1. Proposed Insured**   a. Print name to appear on policy.

b. ☐ Mr.  ☐ Mrs.  ☐ Miss  ☐ Ms.  ☐ Other Title.
c. List all current occupations—Give Title(s) and Duties

**2. Plan**
☐ Indemnity Premium—Yearly
  Renewable Term for five years
☐ Modified Yearly Renewable Term for Amount and Years selected below:

| Year | Face Amount | Year | Face Amount |
|------|-------------|------|-------------|
| 1 | $ | 5 | $ |
| 2 | | 6 | |
| 3 | | 7 | |
| 4 | | | |

☐ Single Premium Endorsement
☐ Flexible Premium Adjustable Life

**Amount of Insurance**

$

**3. Optional Benefits**
☐ Accidental Death Benefit $
☐ Renewable Term on Additional Insured $
☐ Children's Term $   Units
☐ Disability Premium Waiver

**4. Beneficiary** (In Insurance on Proposed Insured. Include Full Name and Relationship to Proposed Insured)

Unless otherwise requested, the contingent beneficiary will be the surviving children of the Insured, in equal shares. If none survive, payment will be made to the Insured's estate.

**5. Owner** (Owner's Soc. Sec. or Tax No.)
The Owner is ☐ Proposed Insured,  ☐ Applicant for Child (See 10.c.)

☐ Mr.  ☐ Mrs.  ☐ Miss  ☐ Ms.  Other Title.
Relationship to Insured
Specify a successor Owner if desired

**6. Mailing Address** ☐ Business (Give Full Name) ☐ Residence

d. Date of Birth   e. Age Nearest Birthday
f. Place of Birth: State of
g. Residence: State of
h. ☐ Male  ☐ Female

**7. Premium Payment Plan**
Check mode, and if Flexible Premium Policy complete the following:
Planned Periodic Premium $
Initial Prem. Payment $
☐ Do not send premium reminder notice
☐ Annual  ☐ Semi-Annual  ☐ Quarterly
☐ Monthly  ☐ Spouse-Mate (Attach S-M Form)
☐ Single
☐ Military  Allotment: Branch
  Register  Date.
☐ Salary  Allotment: Register  Date.
Unit  Name.
Unit/Sub-Unit No. if established:
Divide by ☐ 1 ☐ F Payroll No.
Hold From $

**8. Note:**
Premiums for the Indeterminate Premium policy may change annually, subject to a guaranteed maximum annual renewal premium shown in the policy.

**9. Special Instructions**
a. ☐ Preliminary Term (PT) period of   days
  ending   Mo.   Day   Yr.
b. ☐ Date to save insurance age.
c. Other

EV4-155

Cat. No. 110150

EXHIBIT B

EXHIBIT B

**10. Complete if Proposed Insured Person is a Child (Issue Ages 0-14).**

a. Will there be more life insurance in effect on the Child than on any older child in the family?   ☐ Yes   ☐ No
If yes, explain: _____

b. **Applicant–Complete if other than the Child.**

i. _____
First Name   Middle Initial   Last Name

ii. ☐Mr. ☐Mrs. ☐Ms. ☐Other Title._____

iii. Date of Birth _____ _____ 19____
Month   Day   Year

iv. ☐ Male   ☐ Female

v. Relationship to Child _____

vi. Child's Date of Birth (or) 5 _____

c. **Owner.** If the Applicant is to be the Owner, after the Applicant's death the Child will be the Owner unless otherwise designated in Special Instructions (in any such designations include Owner's Full Name, Relationship to Child, and Social Security or Tax Number).

NOTE: Consider designating an adult secondary Owner.

d. **Optional Benefit on Applicant.**

☐ Supplemental Protective Benefit. Give Applicant's:
i. Age of Parent
_____ _____
Birthday.   ii. Place of   iii. Sex
Birth

iii. Height. ____Ft. ____In. Weight. ____lbs.

iv. Occupation–Give Title(s) and Duties. _____

Also answer questions on page 3 as to Applicant.

e. **Limitations On Child's ADB and DPW Benefits.** If the scheduled Death Benefit is applied for on the Child, the benefit is payable only if the Child dies after the Child's first birthday.
If the Disability Waiver Benefit is applied for on the Child, the benefit is effective only if the Child becomes totally disabled on or after the Child's 5th birthday.

**11. Complete for Children's Term Rider.**

Give Names of Children below and answer the Questions on page 3 as to each Child.

**CHILDREN PROPOSED FOR INSURANCE.**
NOTE: To be eligible, children (including grandchildren and legally adopted children) must not yet have reached their 18th birthday. Coverage does not begin until a child is 15 days old.

_____
First Name   Middle Initial   Last Name

| | | | Sex | Date of Birth |
| | | | | Mo. | Day | Yr. |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**12. Complete for Renewable Term Rider on Additional Insured.**
Complete below and answer the Questions on page 3 as to the Additional Insured.

PROPOSED ADDITIONAL INSURED PERSON
a. Print name as it is to appear on the Policy.

_____
First   Middle Initial   Last

b. List all current occupations–Give Title(s) and Duties.
_____

c. Date of Birth: Mo._____ Day_____ Yr. 19____

d. Age Nearest Birthday _____

e. Place of Birth–State of _____

f. Residence: State of _____

g. ☐ Male   ☐ Female

h. Owner's Relationship to Additional Insured Person. _____

**13. Complete if Using Existing Option to Purchase Insurance.**

i. Existing Individual Policy No._____

ii. Option Date. _____   iii. Option Amount: $_____

iv. ☐ Regular Option or
☐ Option on Birth or Adoption of Child
Child's Name _____
Date of Birth or Adoption _____

v. If applying for Disability Waiver Benefit, is Proposed Insured now totally disabled as defined in the Disability Waiver provision in the above policy?   ☐ Yes   ☐ No

This application is made under a provision in the policy indicated above permitting the purchase of individual life insurance (the "Option Provision").

If that application is made while the insured and in accordance with the other terms in the Option Provision, including timely payment of the full first premium for the option insurance, then the option insurance shall take effect upon the terms of the policy EVLICO would issue. Otherwise, the option insurance shall not take effect.

Answer the Questions on page 3 only (evidence of insurability required in connection with an option benefit only by reason of the insurance amount applied for over the insurance amount permitted by the Option Provision then in effect).

EVM-155          NO. B   92045          2

EXHIBIT B

EXHIBIT B

**OTHER INFORMATION—Has any Person Proposed for Insurance:**

14. a. Ever had a driver's license suspended or revoked or, within the last three years, been convicted of one or more moving violations or driving under the influence of alcohol or drugs? (Give full details—including dates, types of violation, and reason for license suspension or revocation.) ☐ Yes ☐ No

b. Any plan to travel or reside outside the U.S.? ☐ Yes ☐ No (Give full details.)

c. Any other life insurance now in effect or applied for now pending? (State companies and amounts.) ☐ Yes ☐ No

d. Smoked cigarettes within the last 12 months? ☐ Yes ☐ No

15. a. In the last year been floored other than as a passenger or plan to do so? ☐ Yes ☐ No (If yes: Total flying time at present _____ Hours; Last 12 months _____ Hours; Next 12 months _____ Hours. (Complete Aviation Supplement for pilot instruction; remember, test, stunt or military flying; or crop dusting.)

b. Engaged within the last year, or any plan to engage in motor racing on land or water, underwater diving, sky diving, ballooning, hang-gliding or parachuting? (If yes, complete Avocation Supplement.) ☐ Yes ☐ No

c. Ever had an application for life or health insurance declined, postponed, rated or modified? ☐ Yes ☐ No

16. a. Ever had a driver's license suspended or revoked or modified? (Give full details.) ☐ Yes ☐ No

b. Replaced or changed any existing insurance or annuity for any plan in do so) assuming the insurance applied for will be issued? (State companies, plans and amounts.) ☐ Yes ☐ No

Answer Questions 16, 17 and 18 only if Non-Medical:

16. Proposed Insured: Height ____ Ft. ____ In. Weight ____ lbs.
Additional Insured: Height ____ Ft. ____ In. Weight ____ lbs.
Has any Person Proposed for Insurance:

17. a. Ever been treated for or had any indication of heart trouble, stroke, high blood pressure, chest pain, diabetes, tumor or cancer? (Give full details.) ☐ Yes ☐ No

b. In the last 5 years, consulted a physician, or been examined or treated at a hospital or other medical facility? (Include medical check-up in the last 5 years. Do not include colds, minor virus infections, minor injuries, or normal pregnancy.) (Give full details.) ☐ Yes ☐ No

18. a. In the last 10 years used barbiturates, amphetamines, hallucinogenic drugs or narcotics? (Give full details.) ☐ Yes ☐ No

b. In the last 10 years received counseling or treatment for the use of alcohol or drugs? (Give full details.) ☐ Yes ☐ No

19. **DETAILS.** For each Yes answer give Question number and full details. For 17 and 18 also include conditions, dates, durations, treatments and results, and names and addresses of physicians and medical facilities.

| No. | Name of Person Affected | Details |
|---|---|---|
| 14a | William J Williams | Traffic violations, drunk driving |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

20. Complete if First Premium is Paid or a Payroll Deduction Authorization is Signed Before the Policy is Delivered:
Have the undersigned read and do they agree to the conditions of EVLICO's Temporary Insurance Agreement, including (i) the requirement that all of the conditions in the Agreement must be met before any insurance takes effect, and (ii) the $250,000 insurance amount limitation? ☐ Yes ☐ No (If "No," a premium may not be paid nor a payroll deduction authorization signed before the policy is delivered.)

☐ Amount Paid $ _____ ——————(Draw checks to order of EVLICO.)

☐ Payroll deduction authorization signed.

**AGREEMENT.** (Each signer of this application agrees that:
(1) The statements and answers in all parts of this application are true and complete to the best of my knowledge and belief. EVLICO may rely on them in acting on this application.
(2) If EVLICO's Temporary Insurance Agreement states the conditions that must be met before any insurance takes effect, if the full first premium for the policy applied for is paid, or a payroll deduction authorization is signed, before the policy is delivered.
(3) Except as stated in the Temporary Insurance Agreement, no insurance shall take effect on this application: (a) until a policy is delivered and the full first premium for it is paid, or a payroll deduction authorization is signed, while the Proposed of Insured is living; (b) unless any Register Date specified in this application and (c) unless to the best of my knowledge and belief the statements and answers in all parts of this application are true and complete, without material change, as of the time such premium is paid or a payroll deduction authorization is signed.

(4) No agent or medical examiner has authority to modify this Agreement or the Temporary Insurance Agreement, or to waive any of EVLICO's rights or requirements. EVLICO shall not be bound by any information which is stated in applications Part 1, I.A. or 2.)

Signature of Agent                        Dated at _____ City _____ on ____ Sept 19 83 Date

William J Williams                       [X] William Williams
                                          Signature of Proposed Insured or of Applicant if Proposed Insured is a Child, State Age 0-14.

EV4155                                    Signature of Proposed Additional Insured if required.

                                          William Williams president
                                          Signature of Purchaser if not Proposed Insured. (If corp. show firm's name and signature of authorized Officer.)

3



# EXHIBIT C

EXHIBIT C

INSURED PERSON   MALCOLM H WIENER

POLICY OWNER   MALCOLM H WIENER

FACE AMOUNT
OF INSURANCE   $1,600,000

DEATH BENEFIT   OPTION B (SEE PAGE 6)

POLICY NUMBER   37 205 155

 AXA EQUITABLE

**LIFE
INSURANCE
POLICY**

**We agree** to pay the insurance benefits and to provide the other rights and benefits of this policy in accordance with its provisions.

### Flexible Premium Adjustable Life Plan

This is a flexible premium adjustable life policy. You can:

- increase or decrease the face amount of insurance;
- change the amount and frequency of the premiums you pay;
- change the death benefit option.

This is a non-participating policy.

All of these rights and benefits are subject to the terms and conditions of this policy. All requests for policy changes are subject to our approval and may require evidence of insurability.

*Pauline Sherman*
Pauline Sherman, Senior Vice President,
Secretary and Associate General Counsel

*Condron*
Christopher M. Condron, Chairman,
President and Chief Executive Officer

**You Have Ten Days to Examine this Policy.** If you are not satisfied with this policy for any reason, you may cancel it by returning it to us within 10 days after you receive it. If you do, we will refund the premium that was paid.

No. 85-200

EXHIBIT C

EXHIBIT C

# Contents

Policy Information     3

Table of Guaranteed Maximum Insurance Costs     4

Who Benefits from this Policy?     5

The Insurance Benefits We Pay     5

The Premiums You Pay     7

Your Policy Account and How it Works     8

Our Annual Report to You     10

The Cash Surrender Value of this Policy     10

How a Loan Can be Made     11

How Benefits are Paid     12

Other Important Information     13

*A copy of the application for this policy and any additional benefit riders are at the back of the policy.*

## In this policy:

"We", "our" and "us" mean AXA Equitable Life Insurance Company.

"You" and "your" mean the owner of the policy at the time an owner's right is exercised.

References to amounts and values include all adjustments provided by this policy.

EXHIBIT C

EXHIBIT C

POLICY INFORMATION

INSURED PERSON   MALCOLM H WIENER

POLICY OWNER   MALCOLM H WIENER
FACE AMOUNT
OF INSURANCE   $1,600,000

DEATH BENEFIT   OPTION B (SEE PAGE 6)

POLICY NUMBER   37205155

BENEFICIARY   CAROLYN SEELY WIENER

REGISTER DATE   NOV 01, 1986                  ISSUE AGE   51

DATE OF ISSUE   APR 24, 1987                            SEX   MALE

                                                      NON-SMOKER

PARTIAL
CASH VALUE
WITHDRAWAL   MINIMUM WITHDRAWAL IS $500.

STATE OF
RESIDENCE   CONNECTICUT

AN INITIAL PREMIUM PAYMENT OF $21,776.00 IS DUE ON OR BEFORE DELIVERY
OF THE POLICY.

THE PLANNED PERIODIC PREMIUM OF $21,776.00 IS PAYABLE SEMIANNUALLY.

PREMIUM PAYMENTS ARE FOR THE INSURANCE BENEFITS AND ANY ADDITIONAL
BENEFIT RIDERS LISTED BELOW.

THE PREMIUM PAYMENTS SHOWN ABOVE MAY NOT BE SUFFICIENT TO CONTINUE THE
POLICY AND LIFE INSURANCE COVERAGE IN FORCE TO THE FINAL POLICY DATE,
WHICH IS THE POLICY ANNIVERSARY NEAREST THE INSURED PERSON'S 95TH
BIRTHDAY.   THE PERIOD FOR WHICH THE POLICY AND COVERAGE WILL CONTINUE
IN FORCE WILL DEPEND ON:  (1) THE AMOUNT, TIMING AND FREQUENCY OF PREMIUM
PAYMENTS; (2) CHANGES IN THE FACE AMOUNT OF INSURANCE AND THE DEATH BENEFIT
OPTIONS; (3) CHANGES IN THE INTEREST RATES CREDITED, AND IN THE MONTHLY
COST OF INSURANCE DEDUCTIONS FROM THE POLICY ACCOUNT FOR THIS POLICY AND
ANY BENEFITS PROVIDED BY RIDERS TO THIS POLICY; AND (4) LOAN AND PARTIAL
NET CASH SURRENDER VALUE WITHDRAWAL ACTIVITY.

85-200-3NY

PAGE 3
(CONTINUED ON NEXT PAGE)

EXHIBIT C

EXHIBIT C

POLICY INFORMATION CONTINUED - POLICY NUMBER 37205155

----------------TABLE OF EXPENSE CHARGES----------------

INITIAL ADMINISTRATIVE CHARGE:

    $250 SUBTRACTED FROM THE INITIAL PREMIUM PAYMENT.

CHARGE FOR APPLICABLE TAXES:

    2% OF EACH PREMIUM PAYMENT.  THIS AMOUNT IS SUBTRACTED FROM EACH
    PREMIUM PAYMENT.  WE RESERVE THE RIGHT TO CHANGE THIS PERCENTAGE TO
    CONFORM TO CHANGES IN LEGISLATION OR IF THE INSURED PERSON CHANGES
    RESIDENCE.

MONTHLY ADMINISTRATIVE CHARGE:

    $4 DEDUCTED MONTHLY FROM THE POLICY ACCOUNT.  WE RESERVE THE RIGHT TO
    CHANGE THIS CHARGE, BUT IT WILL NEVER BE MORE THAN $8 A MONTH.  CHANGES
    WILL BE AS DESCRIBED IN "CHANGES IN POLICY COST FACTORS" ON PAGE 14.

FOR PARTIAL WITHDRAWAL OF NET CASH SURRENDER VALUE:

    $25 DEDUCTED FROM THE POLICY ACCOUNT WHENEVER THERE IS A PARTIAL NET CASH
    SURRENDER VALUE WITHDRAWAL.

FOR AN INCREASE YOU ASK FOR IN THE FACE AMOUNT OF INSURANCE:

    $1.50 FOR EACH $1,000 OF INCREASE (BUT NOT MORE THAN $250) IS DEDUCTED
    FROM THE POLICY ACCOUNT.

EXHIBIT C

EXHIBIT C

POLICY INFORMATION CONTINUED - POLICY NUMBER 37205155

--------------TABLE OF SURRENDER CHARGES--------------

| POLICY YEAR | CHARGE |
|---|---|
| 1 | $17,100 |
| 2 | 17,100 |
| 3 | 17,100 |
| 4 | 17,100 |
| 5 | 17,100 |
| 6 | 17,100 |
| 7 | 13,680 |
| 8 | 10,260 |
| 9 | 6,840 |
| 10 | 3,420 |

THE APPLICABLE SURRENDER CHARGE IS SUBTRACTED FROM THE POLICY ACCOUNT IF THE POLICY IS GIVEN UP FOR ITS NET CASH SURRENDER VALUE IN THE FIRST 10 POLICY YEARS. IF THE FACE AMOUNT OF INSURANCE IS REDUCED IN THE FIRST 10 POLICY YEARS, A PRO RATA SHARE OF THE SURRENDER CHARGE FOR THAT POLICY YEAR MAY BE SUBTRACTED FROM THE POLICY ACCOUNT. SEE PAGE 11.

--------------ENDORSEMENTS--------------

1. AMENDMENT TO SUICIDE EXCLUSION:  THE SUICIDE EXCLUSION IN THIS POLICY OTHER THAN IN ANY ACCIDENTAL DEATH BENEFIT RIDER, IS AMENDED BY DELETING THE PHRASE "WHILE SANE OR INSANE."

2. WE WILL REVIEW THE POLICY ACCOUNT INTEREST RATES EACH POLICY YEAR AND WILL REVIEW THE COST OF INSURANCE RATES AT LEAST EVERY FIVE YEARS AND AT THE TIME ANY CHANGE IS MADE FOR NEW ISSUES.  ANY ADJUSTMENT IN THESE RATES WILL BE BY CLASS AND BASED UPON CHANGES IN FUTURE EXPECTATIONS FOR SUCH ELEMENTS AS INVESTMENT EARNINGS, MORTALITY, PERSISTENCY, EXPENSES AND TAXES, AND WILL BE DETERMINED IN ACCORDANCE WITH PROCEDURES AND STANDARDS ON FILE WITH THE NEW YORK INSURANCE DEPARTMENT.

3. THE INTEREST WE CREDIT TO THE POLICY ACCOUNT WITH RESPECT TO ANY LOANED AMOUNTS WILL BE AT AN ANNUAL RATE NOT LESS THAN THE RATE WE CHARGE FOR LOAN INTEREST REDUCED BY 2%; IN NO EVENT WILL WE CREDIT LESS THAN 4.5% A YEAR.

4. THE MONTHLY ADMINISTRATIVE CHARGE AS DESCRIBED ON PAGE 3 CONTINUED AND PAGE 10 OF YOUR POLICY WILL NOT APPLY.

85-200-3

PAGE 3 - CONTINUED
(CONTINUED ON NEXT PAGE)

EXHIBIT C

EXHIBIT C

POLICY INFORMATION CONTINUED - POLICY NUMBER 37205155

5. THE FIRST $1,000 OF POLICY ACCOUNT WILL BE CREDITED WITH 9.5% EFFECTIVE ANNUAL INTEREST.

6. AMENDMENT TO "POLICY LOANS" PROVISION:  THE THIRD SENTENCE IS DELETED

7. AMENDMENT TO "THE BASIS WE USE FOR COMPUTATION" PROVISION:  THE LAST SENTENCE OF THE FIRST PARAGRAPH IS DELETED.

8. THE PHRASE "AS INTERPRETED BY US" IS DELETED FROM

    A. ITEM 5 ON PAGE 7 OF THE POLICY;

    B. THE THIRD PARAGRAPH ON PAGE 8;

    C. THE FIRST PARAGRAPH ON PAGE 12; AND

    D. THE THIRD PARAGRAPH ON PAGE 14.

9. THE PHRASE "WE DEEM IT" IS ALSO DELETED FROM THE THIRD PARAGRAPH ON PAGE 14.

S.85-98

85-200-3                    PAGE 3 - CONTINUED

EXHIBIT C

EXHIBIT C



POLICY INFORMATION CONTINUED - POLICY NUMBER 37205155

=========TABLE OF GUARANTEED MAXIMUM INSURANCE COSTS=========

GUARANTEED MAXIMUM MONTHLY RATES PER $1,000
OF NET AMOUNT AT RISK (SEE PAGE 9)

| INSURED PERSON'S ATTAINED AGE | MONTHLY RATE | INSURED PERSON'S ATTAINED AGE | MONTHLY RATE |
|---|---|---|---|
| 51 | $ 0.61000 | 86 | $15.02167 |
| 52 | 0.66583 | 87 | 16.35667 |
| 53 | 0.72833 | 88 | 17.73833 |
| 54 | 0.80000 | 89 | 19.17167 |
| 55 | 0.87667 | 90 | 20.67750 |
| 56 | 0.96000 | 91 | 22.28750 |
| 57 | 1.04667 | 92 | 24.06333 |
| 58 | 1.14000 | 93 | 26.12000 |
| 59 | 1.23917 | 94 | 28.81333 |
| 60 | 1.35000 | | |
| 61 | 1.47333 | | |
| 62 | 1.61333 | | |
| 63 | 1.77250 | | |
| 64 | 1.94917 | | |
| 65 | 2.14333 | | |
| 66 | 2.35083 | | |
| 67 | 2.57250 | | |
| 68 | 2.80917 | | |
| 69 | 3.06500 | | |
| 70 | 3.35333 | | |
| 71 | 3.68167 | | |
| 72 | 4.06000 | | |
| 73 | 4.49583 | | |
| 74 | 4.98333 | | |
| 75 | 5.51333 | | |
| 76 | 6.07667 | | |
| 77 | 6.66583 | | |
| 78 | 7.27583 | | |
| 79 | 7.92417 | | |
| 80 | 8.63500 | | |
| 81 | 9.43083 | | |
| 82 | 10.33917 | | |
| 83 | 11.37333 | | |
| 84 | 12.51417 | | |
| 85 | 13.73750 | | |

85-200-4                         PAGE 9

EXHIBIT C

EXHIBIT C

## Who Benefits from this Policy?

**Owner.** The owner of this policy is the insured person unless stated otherwise in the application, or later changed.

If the insured person is living on the Final Policy Date defined in the Policy Information section, we will pay you the amount in the Policy Account on that date minus any outstanding loan and loan interest. This policy will then end.

As the owner, you are entitled to exercise all the rights of this policy while the insured person is living. To exercise a right, you do not need the consent of anyone who has only a conditional or future ownership interest in this policy.

**Beneficiary.** The beneficiary is as stated in the application, unless later changed. The beneficiary is entitled to the insurance benefits of this policy. If two or more persons are named, those who survive the insured person will share the insurance benefits equally, unless you have made another arrangement with us.

If there is no designated beneficiary living at the death of the insured person, we will pay the benefits to the surviving children of the insured person in equal shares. If none survive, we will pay the insured person's estate.

**Changing the Owner or Beneficiary.** While the insured person is living, you may change the owner or beneficiary by written notice in a form satisfactory to us. (You can get such a form from our agent or by writing to us.) The change will take effect on the date you sign the notice. But, it will not apply to any payment we make or other action we take before we receive the notice. If you change the beneficiary, any previous arrangement you made as to a payment option for benefits is cancelled. You may choose a payment option for the new beneficiary in accordance with "How Benefits Are Paid" on Page 12.

**Assignment.** You can assign this policy, but we will not be bound by an assignment unless we have received it in writing. Your rights and those of any other person referred to in this policy will be subject to the assignment. We assume no responsibility for the validity of an assignment.

## The Insurance Benefits We Pay

We will pay the insurance benefits of this policy to the beneficiary when we receive proof that the insured person died before the Final Policy Date. These insurance benefits include the following amounts, which we will determine as of the date of the insured person's death:

› the death benefit described below;

› plus any other benefits then due from riders to this policy;

› minus any loan (and loan interest) on the policy;

› minus any overdue monthly deductions if the insured person dies during the grace period.

EXHIBIT C

EXHIBIT C

*THE INSURANCE*
*BENEFITS*
*WE PAY (continued)*

We will add interest to the resulting amount for the period from the date of death to the date of payment. We will compute the interest at a rate we determine, but not less than the greater of (a) the rate we are paying on the date of payment under the Deposit Option on Page 12; or (b) the rate required by any applicable law.

Payment of these benefits may also be affected by other provisions of this policy. See Pages 14 and 15, where we specify the suicide exclusion, our right to contest the policy, and what happens if age or sex has been misstated. Special exclusions or limitations (if any) are listed in the Policy Information section.

Death Benefit. The death benefit will be determined under either Option A or Option B below, whichever is chosen and is in effect on the date the insured person dies:

Under Option A, the death benefit is the greater of the following items (a) or (c).

Under Option B, the death benefit is the greater of the following items (b) or (c).

(a) The Face Amount of Insurance on the date of death.

(b) The Face Amount of Insurance *plus* the amount in the Policy Account on the date of death.

(c) A percentage of the amount in the Policy Account on the date of death. Such percentage is the applicable percentage from the table below for the insured person's age (nearest birthday) at the beginning of the policy year in which death occurs.

*TABLE OF*
*APPLICABLE PERCENTAGES*

For ages not shown, the applicable percentages shall
decrease by a ratable portion for each full year



| Insured Person's Age | Percentage | Insured Person's Age | Percentage |
|---|---|---|---|
| 40 and under | 250% | 65 | 120% |
| 45 | 215 | 70 | 115 |
| 50 | 185 | 75 thru 90 | 105 |
| 55 | 150 | 95 | 100 |
| 60 | 130 | | |

EXHIBIT C

EXHIBIT C

Changing the Face Amount of Insurance or the Death Benefit Option. During the first policy year the death benefit option and the Face Amount of Insurance will be those you chose on the application for this policy and which are shown in the Policy Information section. At any time after the first policy year while this policy is in force, you may change the death benefit option or the Face Amount of Insurance by written request to us, subject to our approval and the following:

1. You may ask us to increase the Face Amount of Insurance if you provide evidence satisfactory to us of the insurability of the insured person. Any increase you ask for must be at least $10,000. We will deduct the charge for such increase shown in the Policy Information section from the Policy Account as of the date the increase takes effect.

2. You may ask us to reduce the Face Amount of Insurance but not to less than the minimum amount for which we would then issue this policy under our rules. If you do this in the first ten policy years, we may deduct from the Policy Account a pro rata share of the applicable surrender charge (see Page 11).

3. You can change your death benefit option. If you ask us to change from Option A to Option B, we will decrease the Face Amount of Insurance by the amount in the Policy Account on the date of change. However, we reserve the right to decline to make such change if it would reduce the Face Amount of Insurance below the minimum amount for which we would then issue this policy under our rules. If you ask us to change from Option B to Option A, we will increase the Face Amount of Insurance by the amount in the Policy Account on the date of change. Such decreases and increases in the Face Amount of Insurance are made so that there is no change in the Net Amount at Risk (see Page 9).

4. Any change will take effect on the monthly policy anniversary which coincides with or next follows the date we approve the request.

5. We reserve the right to decline to make any change that we determine would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us (see Page 14).

6. We will send you a written notice showing each change. The notice is to be attached to and made part of this policy. The information in it will supersede the corresponding information in the Policy Information section. We may require you to return the policy to us to make a change.

*The Premiums You Pay*

The initial premium payment shown in the Policy Information section is due on or before delivery of the policy. No insurance will take effect before the initial premium payment is paid. Other premiums may be paid at any time at the premium collection office we designate while the policy is in force and before the Final Policy Date. They may be in any amount subject to the limits described below.

EXHIBIT C

EXHIBIT C

**THE PREMIUMS**
**YOU PAY** *(continued)*

We will send premium reminder notices to you for the planned periodic premium shown in the Policy Information section unless you ask us not to in the application for this policy or later by written notice. You may skip planned premium payments or change their frequency and amount.

Limits. Each premium payment after the initial one must be at least $100. We may increase this minimum limit 90 days after we send you written notice of such increase.

We reserve the right not to accept premium payments in a policy year that we determine would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us (see Page 14).

Grace Period. If the Net Cash Surrender Value on any monthly anniversary is less than the monthly deductions for that month described on Page 9, we will stop making such deductions. There will then be a grace period of 61 days after that anniversary. If a grace period starts, we will send you and any assignee on our records at last known addresses a notice. The notice will state the grace period and the amount sufficient to cover 3 monthly deductions.

If by the end of the grace period we do not receive an amount sufficient to cover at least 3 monthly deductions, we will then send you and any assignee on our records at last known addresses a notice that this policy has ended without value.

If the insured person dies during the grace period, we will pay the insurance benefits as described on Page 5.

Reinstatement. If this policy has ended without value, you may reinstate it while the insured person is alive if you:

1. Ask for reinstatement within 3 years after the end of the grace period; and

2. Provide evidence of insurability satisfactory to us; and

3. Make a premium payment sufficient to keep the policy in force for at least 3 months after the date of reinstatement.

The effective date of the reinstated policy will be the monthly anniversary on or next following the date we approve your reinstatement application.

*Your Policy*
*Account and*
*How it Works*

When we receive your premium payments, we subtract the expense charges shown in the table in the Policy Information section. We put the balance into your Policy Account as of the date we receive the premium payment, and before any deductions from the Policy Account due on that date are made. We also put into your Policy Account any credits arising from a disability benefit under this policy.

EXHIBIT C

EXHIBIT C

Your Policy Account earns interest at effective annual rates we determine. This interest is also added to your Policy Account. We make deductions from the Policy Account as described below. We will also subtract from the Policy Account any Net Cash Surrender Values you ask for. More details are given below and in the cash surrender value section on Page 10.

How We Add Interest. We will determine such interest rates annually in advance for unloaned and loaned amounts. The loaned amount, if any, is the part of the Policy Account equal to the amount of any outstanding policy loan and loan interest. The interest rates we determine each year will apply to the policy year that follows the date of determination. Any change in the interest rates we determine will be as described in "Changes in Policy Cost Factors" on Page 14. Such effective annual interest rates will not be less than $4\frac{1}{2}\%$.

We will add interest to your account at the end of each policy month based on amounts that were in the account throughout the month. We will credit interest on the balance of premium payments received in a policy month that are put into your Policy Account from the date we receive them, except that interest on the initial premium payment will be credited from the Register Date if later. We will credit interest on amounts that you withdraw from the Policy Account during a policy month only from the beginning of the policy month to the date of withdrawal.

Monthly Deductions. At the beginning of each policy month we make a deduction from the Policy Account to provide insurance coverage, subject to the Grace Period provision on Page 8. Such deduction for any policy month is the sum of the following amounts determined as of the beginning of that month:

- The monthly cost of insurance for the insured person that we determine.

- The monthly cost of any benefits provided by riders to this policy, as determined in accordance with such riders.

The monthly cost of insurance is our current monthly "cost of insurance rate" times the "net amount at risk" (Death Benefit minus the amount in the Policy Account) at the beginning of the policy month; plus any extra charge shown in the Policy Information section times the Face Amount of Insurance at the beginning of the policy month. For this purpose the amount in the Policy Account is determined before the monthly cost of insurance deduction but after all other deductions due on that date have been made. The cost of insurance rate is based on the sex, attained age, and rating class of the insured person. ("Attained age" means age on the birthday nearest to the beginning of the then current policy year.)

We will determine cost of insurance rates from time to time. Any change in the cost of insurance rates we use will be as described in "Changes in Policy Cost Factors" on Page 14. They will never be more than those shown in the Table of Guaranteed Maximum Insurance Costs on Page 4 plus any extra charge in the Policy Information section.

EXHIBIT C

EXHIBIT C

*YOUR POLICY ACCOUNT AND HOW IT WORKS (continued)*

Also at the beginning of each policy month, we make a deduction from the Policy Account for monthly administrative charges, subject to the Grace Period provision on Page 8. They are shown in the Table of Expense Charges in the Policy Information section.

Other Deductions. We also make the following other deductions from the Policy Account as they occur:

- If you make a partial withdrawal of the Net Cash Surrender Value, we deduct the charge for it shown in the Table of Expense Charges in the Policy Information Section.

- We subtract surrender charges if you give up the policy for its Net Cash Surrender Value or if you reduce the Face Amount of Insurance.

- We make a deduction from the Policy Account if you increase the Face Amount of Insurance (see Page 7).

## Our Annual Report to You

For each policy year we will send you a report that shows the current Death Benefit, value of your Policy Account, cash surrender value and any outstanding policy loan with the current loan interest rate. It will also show all amounts added to or deducted from the Policy Account in the year: the premiums paid, interest added, insurance cost deductions, and all expense charges, surrender charges and partial net cash surrender value withdrawals made in the year. The report will also show such other information as may be required by the insurance supervisory official of the jurisdiction in which this policy is delivered.

## The Cash Surrender Value of this Policy



Net Cash Surrender Value. You may give up this policy for its Net Cash Surrender Value at any time while the insured person is living. You may do this by sending us a written request and this policy. The Net Cash Surrender Value is equal to the Cash Surrender Value minus any loan and loan interest. We will compute the Net Cash Surrender Value as of the date we receive your request and this policy. All insurance coverage under this policy ends on such date.

Cash Surrender Value. The Cash Surrender Value on any date is equal to the amount in the Policy Account on that date minus any applicable surrender charge.

Surrender Charges. If you give up this policy for its Net Cash Surrender Value in the first ten policy years, we will subtract a surrender charge from the Policy Account. The surrender charge for each such year is shown in the Table of Surrender Charges in the Policy Information section. The surrender charge stays the same throughout a policy year, except as stated below.

EXHIBIT C

EXHIBIT C

If the Face Amount of Insurance is reduced during any of the first ten policy years because you ask us to reduce it, we may also deduct from the Policy Account a pro rata surrender charge. The amount of the pro rata surrender charge will be determined by the following formula:

$$\frac{A}{B} \times C$$

where A — Represents the decrease in the Face Amount of Insurance to which a surrender charge will be applied. The amount of the decrease is the difference between the current Face Amount of Insurance and the new Face Amount of Insurance. However, this amount will be reduced by (1) the sum of all requested and approved prior increases in the Face Amount of Insurance; less (2) the sum of all requested and approved prior reductions in the Face Amount of Insurance (as described in sections 1 and 2 of "Changing the Face Amount of Insurance or the Death Benefit Option" on Page 7) minus the portion of such prior reductions on which a pro rata surrender charge was previously made.

where B — Is the initial Face Amount of Insurance.

where C — Is the original surrender charge for the applicable policy year as shown in the Table of Surrender Charges when this policy was issued.

When a pro rata surrender charge is made, the Table of Surrender Charges for that year and subsequent years will be reduced proportionately.

The written notice we send you when the Face Amount of Insurance is reduced at your request will show surrender charges. If because of such pro rata deductions the surrender charge is reduced to zero, there will be no further surrender charges.

Partial Net Cash Surrender Value Withdrawal. After the first policy year you may ask for a partial Net Cash Surrender Value withdrawal, subject to our approval and to the minimum withdrawal amount shown in the Policy Information section. A partial withdrawal will result in a reduction in the Death Benefit, the Cash Surrender Value and in the Policy Account equal to the amount withdrawn plus the amount of the following expense charge. When a partial withdrawal is made, we will deduct an expense charge from the Policy Account equal to the amount shown in the Table of Expense Charges in the Policy Information section.

Such change in the Death Benefit, Cash Surrender Value and in the Policy Account will take effect on the date of withdrawal. We will send you a written notice showing each change. The notice is to be attached to and made part of this policy. The information in it will supersede the corresponding information in the Policy Information section. We may require you to return the policy to us to make a change.

EXHIBIT C

EXHIBIT C

We reserve the right to decline a request for a partial Net Cash Surrender Value withdrawal if: (a) the Death Benefit would be reduced below the minimum amount for which we would then issue this policy under our rules; or (b) we determine that the withdrawal would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us (see Page 14).

## How a Loan Can Be Made

**Policy Loans.** You can get a loan on this policy while it has a loan value. This policy will be the only security for the loan. The initial loan and each additional loan must be for at least the minimum loan amount shown in the Policy Information section, except for a loan to pay a premium to us. Any amount on loan is still considered to be part of your Policy Account. While on loan, it will still earn interest as stated on Page 9.

The amount of the loan may not be more than the loan value. Any existing loan and loan interest will be subtracted from a new loan.

**Loan Value.** The loan value on any date is the Cash Surrender Value on that date.

**Loan Interest.** Interest on a loan accrues daily, at an annual rate of 8%. We may charge a lower rate for any period of time. Interest is due on each policy anniversary. If the interest is not paid when due, it will be added to the loan and bear interest at the loan rate.

**Loan Repayment.** You may repay all or part of a policy loan at any time while the insured is alive and this policy is in force. We will assume that any payment you make to us while you have a loan is a loan repayment, unless you tell us in writing that it is a premium payment.

Failure to repay a policy loan or to pay loan interest will not terminate this policy. However, if the Net Cash Surrender Value is not sufficient for the monthly deduction due on a monthly anniversary the Grace Period provision will apply (see Page 8).

## How Benefits Are Paid

You can have insurance benefits, net cash surrender value withdrawals, and the Policy Account payable on the Final Policy Date paid immediately in one sum. Or, you can choose another form of payment for all or part of them. If you do not arrange for a specific choice before the insured person dies, the beneficiary will have this right when the insured person dies. If you do make an arrangement, however, the beneficiary cannot change it after the insured person dies.

The options are:

1. DEPOSIT: The sum will be left on deposit for a period mutually agreed upon. We will pay interest at the end of every month, every 3 months, every 6 months or every 12 months, as chosen.



EXHIBIT C

EXHIBIT C

2. INSTALLMENT PAYMENTS: There are two ways that we pay installments:

FIXED PERIOD: We will pay the sum in equal installments for a specified number of years (not more than 30). The installments will be at least those shown in the Table of Guaranteed Payments on Page 16.

FIXED AMOUNT: We will pay the sum in installments as mutually agreed upon until the original sum, together with interest on the unpaid balance, is used up.

3. MONTHLY LIFE INCOME: We will pay the sum as a monthly income for life. The amount of the monthly payment will be at least that shown in the Table of Guaranteed Payments on Page 16. You may choose any one of three ways to receive monthly life income. We will guarantee payments for at least 10 years (called "10 Years Certain"); at least 20 years (called "20 Years Certain"); or until the payments we make equal the original sum (called "Refund Certain").

4. OTHER: We will apply the sum under any other option requested that we make available at the time of the insured person's death or net cash surrender value withdrawal, or on the Final Policy Date, whichever applies.

We guarantee interest under the Deposit Option at the rate of 3% a year and under either Installment Option at $3\frac{1}{2}\%$ a year. We may raise these guaranteed rates. We may also allow interest under the Deposit Option and under either Installment Option at a rate above the guaranteed rate.

The payee may name and change a successor payee for any amount we would otherwise pay to the payee's estate.

Any arrangements involving more than one of the options, or a payee who is not a natural person (for example, a corporation) or who is a fiduciary, must have our approval. Also, details of all arrangements will be subject to our rules at the time the arrangement takes effect. These include rules on: the minimum amount we will apply under an option and minimum amounts for installment payments; withdrawal or commutation rights; naming payees and successor payees; and proving age and survival.

Payment choices (or any later changes) will be made and will take effect in the same way as a change of beneficiary. Amounts applied under these options will not be subject to the claims of creditors or to legal process, to the extent permitted by law.

## *Other Important Information*

Your Contract with Us. This policy is issued in consideration of payment of the initial premium payment shown in the Policy Information section.

EXHIBIT C

EXHIBIT C

*OTHER IMPORTANT*
*INFORMATION*
*(continued)*

This policy, and the attached copy of the initial application and all subsequent applications to change the policy, make up the entire contract.

Only our President or one of our Vice Presidents can modify this contract or waive any of our rights or requirements under it. The person making these changes must put them in writing and sign them.

**Policy Changes—Applicable Tax Law.** For you and the beneficiary to receive the tax treatment accorded to life insurance under the federal law, this policy must qualify initially and continue to qualify as life insurance under the Internal Revenue Code or successor law. Therefore, to assure this qualification for you we have reserved earlier in this policy the right to decline to accept premium payments, to decline to change death benefit options, or to decline to make partial withdrawals that would cause the policy to fail to qualify as life insurance under applicable tax law as interpreted by us. Further, we reserve the right to make changes in this policy or its riders (for example in the percentages on Page 6) or to make distributions from the policy to the extent we deem it necessary to continue to qualify this policy as life insurance. Any such changes will apply uniformly to all policies that are affected. You will be given advance written notice of such changes.

**Changes in Policy Cost Factors.** Changes in policy cost factors (interest, cost of insurance deductions and expense charges) will be by class and based upon changes in future expectations for such elements as: investment earnings, mortality, persistency, expenses and taxes. Any change in policy cost factors will be determined in accordance with procedures and standards on file, if required, with the insurance supervisory official of the jurisdiction in which this policy is delivered.

**When the Policy is Incontestable.** We have the right to contest the validity of this policy based on material misstatements made in the initial application for this policy. We also have the right to contest the validity of any policy change based on material misstatements made in any application for that change. However, we will not contest the validity of this policy after it has been in effect during the lifetime of the insured person for two years from the Date of Issue shown in the Policy Information section. We will not contest any policy change that requires evidence of insurability, or any reinstatement of this policy, after the change or reinstatement has been in effect for two years during the insured person's lifetime.

No statement shall be used to contest a claim unless contained in an application.

All statements made in an application are representations and not warranties.

See any additional benefit riders for modifications of this provision that apply to them.

**What if Age or Sex has Been Misstated?** If the insured person's age or sex has been misstated on any application, we will adjust any benefits to reflect the correct age and sex.

85-200-13

Page 14

EXHIBIT C

EXHIBIT C

How the Suicide Exclusion Affects Benefits. If the insured person commits suicide (while sane or insane) within two years after the Date of Issue shown in the Policy Information section, our liability will be limited to the payment of a single sum. This sum will be equal to the premiums paid, minus any loan and loan interest and minus any partial withdrawal of the net cash surrender value. If the insured person commits suicide (while sane or insane) within two years after the effective date of a change that you asked for that increases the Death Benefit, then our liability as to the increase in amount will be limited to the payment of a single sum equal to the monthly cost of insurance deductions made for such increase.

How We Measure Policy Periods and Anniversaries. We measure policy years, policy months and policy anniversaries from the Register Date shown in the Policy Information section. Each policy month begins on the same day in each calendar month as the day of the month in the Register Date.

How and When We Defer Payment. We may defer payment of any cash surrender withdrawal or loan amount (except a loan to pay a premium to us) for up to six months after we receive a request for it. We will allow interest, at a rate of at least 3% a year, on any cash surrender value payment we defer for 30 days or more.

The Basis We Use for Computation. We provide cash surrender values that are at least equal to or more than those required by law. If required to do so, we have filed with the insurance supervisory official of the jurisdiction in which this policy is delivered a detailed statement of our method of computing such values. We compute reserves under this policy by the Commissioners Reserve Valuation Method.

We base minimum cash surrender values and reserves on the "Commissioners 1980 Standard Ordinary Male and Female Mortality Tables." We also use these tables as the basis for determining maximum insurance costs, taking account of sex, attained age and rating class of the insured person. We use interest compounded annually at $4\frac{1}{2}\%$.

Policy Illustrations. Upon request we will give you an illustration of the future benefits under this policy based upon both guaranteed and current cost factor assumptions. However, if you ask us to do this more than once in any policy year, we reserve the right to charge you a fee for this service.

Policy Changes. You may change this policy to another available plan of insurance or add additional benefit riders or make other changes, subject to our rules at the time of change.

EXHIBIT C

EXHIBIT C

## Table of Guaranteed Payments
### MINIMUM AMOUNT FOR EACH $1,000 OF ORIGINAL SUM

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Option 2** | | | | **Option 3** | | | | | |
| **FIXED PERIOD INSTALLMENTS** | | | | **MONTHLY LIFE INCOME** | | | | | |
| | | | | **10 Years Certain** | | **20 Years Certain** | | **Refund Certain** | |
| Number of Years' Installments | Monthly Installment | Annual Installment | AGE | Male | Female | Male | Female | Male | Female |
| 1 | $84.70 | $1,000.00 | 50 | $4.50 | $3.96 | $4.27 | $3.89 | $4.28 | $3.87 |
| 2 | 43.08 | 508.60 | 51 | 4.58 | 4.02 | 4.32 | 3.94 | 4.35 | 3.93 |
| 3 | 29.21 | 344.86 | 52 | 4.67 | 4.09 | 4.38 | 4.00 | 4.42 | 3.99 |
| 4 | 22.28 | 263.04 | 53 | 4.75 | 4.16 | 4.44 | 4.06 | 4.50 | 4.05 |
| 5 | 18.12 | 213.99 | 54 | 4.85 | 4.24 | 4.50 | 4.12 | 4.58 | 4.11 |
| 6 | 15.36 | 181.32 | 55 | 4.94 | 4.32 | 4.56 | 4.18 | 4.66 | 4.18 |
| 7 | 13.38 | 158.01 | 56 | 5.04 | 4.40 | 4.62 | 4.24 | 4.74 | 4.25 |
| 8 | 11.91 | 140.56 | 57 | 5.15 | 4.49 | 4.68 | 4.31 | 4.83 | 4.33 |
| 9 | 10.76 | 127.00 | 58 | 5.26 | 4.58 | 4.74 | 4.38 | 4.93 | 4.41 |
| 10 | 9.84 | 116.18 | 59 | 5.37 | 4.68 | 4.81 | 4.45 | 5.03 | 4.49 |
| 11 | 9.09 | 107.34 | 60 | 5.49 | 4.78 | 4.86 | 4.52 | 5.13 | 4.58 |
| 12 | 8.47 | 99.98 | 61 | 5.62 | 4.89 | 4.92 | 4.59 | 5.24 | 4.67 |
| 13 | 7.94 | 93.78 | 62 | 5.75 | 5.00 | 4.98 | 4.66 | 5.35 | 4.77 |
| 14 | 7.49 | 88.47 | 63 | 5.88 | 5.12 | 5.04 | 4.73 | 5.48 | 4.88 |
| 15 | 7.11 | 83.89 | 64 | 6.03 | 5.25 | 5.09 | 4.80 | 5.60 | 4.99 |
| 16 | 6.77 | 79.89 | 65 | 6.17 | 5.39 | 5.14 | 4.88 | 5.74 | 5.10 |
| 17 | 6.47 | 76.37 | 66 | 6.32 | 5.53 | 5.19 | 4.95 | 5.88 | 5.22 |
| 18 | 6.20 | 73.25 | 67 | 6.48 | 5.68 | 5.24 | 5.01 | 6.03 | 5.35 |
| 19 | 5.97 | 70.47 | 68 | 6.64 | 5.83 | 5.28 | 5.08 | 6.18 | 5.49 |
| 20 | 5.76 | 67.98 | 69 | 6.80 | 6.00 | 5.32 | 5.14 | 6.35 | 5.64 |
| 21 | 5.57 | 65.74 | 70 | 6.97 | 6.17 | 5.35 | 5.20 | 6.53 | 5.79 |
| 22 | 5.40 | 63.70 | 71 | 7.15 | 6.34 | 5.38 | 5.26 | 6.71 | 5.96 |
| 23 | 5.24 | 61.85 | 72 | 7.32 | 6.53 | 5.41 | 5.30 | 6.91 | 6.13 |
| 24 | 5.10 | 60.17 | 73 | 7.50 | 6.72 | 5.43 | 5.35 | 7.12 | 6.32 |
| 25 | 4.97 | 58.62 | 74 | 7.67 | 6.92 | 5.45 | 5.38 | 7.34 | 6.52 |
| 26 | 4.84 | 57.20 | 75 | 7.85 | 7.12 | 5.47 | 5.42 | 7.58 | 6.73 |
| 27 | 4.73 | 55.90 | 76 | 8.02 | 7.32 | 5.48 | 5.44 | 7.82 | 6.96 |
| 28 | 4.63 | 54.69 | 77 | 8.19 | 7.53 | 5.49 | 5.46 | 8.09 | 7.21 |
| 29 | 4.54 | 53.57 | 78 | 8.36 | 7.75 | 5.50 | 5.48 | 8.38 | 7.47 |
| 30 | 4.45 | 52.55 | 79 | 8.52 | 7.96 | 5.50 | 5.49 | 8.67 | 7.75 |
| | | | 80 | 8.67 | 8.16 | 5.51 | 5.50 | 9.00 | 8.05 |
| | | | 81 | 8.81 | 8.36 | 5.51 | 5.51 | 9.34 | 8.39 |
| | | | 82 | 8.94 | 8.55 | 5.51 | 5.51 | 9.70 | 8.73 |
| | | | 83 | 9.06 | 8.73 | 5.51 | 5.51 | 10.10 | 9.12 |
| | | | 84 | 9.16 | 8.90 | 5.51 | 5.51 | 10.52 | 9.53 |
| | | | 85 & over | 9.26 | 9.05 | 5.51 | 5.51 | 10.96 | 9.97 |

If installments are paid every 3 months, they will be 25.32% of the annual installments. If they are paid every 6 months, they will be 50.43% of the annual installments.

Amounts for Monthly Life Income are based on age nearest birthday when income starts. Amounts for ages not shown will be furnished on request.

S5-800-15

EXHIBIT C

EXHIBIT C

## Limitation on Amount of Insurance Rider

*(This limitation is required
by the laws of New York State)*

*In this rider, "we", "our" and "us" mean
AXA Equitable Life Insurance Company.
"You" and "your" mean the Owner of the
policy at the time an Owner's right is
exercised.*

If the insured person dies before the age of 14 years and 6 months, the benefit paid may be limited. The total amount of life insurance payable on the life of the insured person under this policy and under all other insurance policies in effect on the Date of Issue of this policy, in our company and all other companies, shall be subject to the following maximum amount limitation:

| Insured Person's Attained Age | Maximum Amount Limitation |
|---|---|
| Less than 4 years and 6 months | The greater of: a) $5,000; or b) 25% of the total amount of life insurance in effect on the life of the applicant for this policy on its Date of Issue. |
| Between 4 years and 6 months and 14 years and 6 months | The greater of: a) $10,000; or b) 50% of the total amount of life insurance in effect on the life of the applicant for this policy on its Date of Issue. |

"Total amount of life insurance" as used in this rider shall not include: (a) return premium benefits; (b) additional benefits in the event of death by accident; (c) any additional insurance provided by use of dividends; (d) any variable death benefit above the guaranteed minimum death benefit provided under a variable life insurance policy; (e) any additional insurance provided by amounts credited to a policy after its issue; or (f) any insurance provided by a policy in excess of the face amount of insurance in force at the time of demand or death. Any part of this Policy not in excess of the above limits at the date of issue will not become in excess by reason of any later reduction in the amount of insurance on the Applicant's life.

If the total amount of life insurance on the life of the insured person is in excess of this maximum, we will terminate the amount of such excess insurance that is in effect under this policy. We will do this when the insured person dies or upon your earlier written request, but only if we are given satisfactory proof that such excess exists at the time of such death or request.

We will make an appropriate refund of the Monthly Deductions from the Policy Account if such excess insurance is terminated. We will determine the amount of the refund based on the Monthly Deductions made for the terminated insurance, with appropriate adjustments to recognize interest on such deductions (at 4½% per year compounded annually), any loan on the policy, and any partial withdrawal of the net cash surrender value. We will pay the refund to you if the insured person is living at the time of payment. If the insured person is not then living, we will pay it to the beneficiary. When such refund is paid, all of our obligations for such excess insurance terminate.

No such refund will be paid, however, if we have paid an excess amount as part of a death claim without having had proof satisfactory to us that an excess amount of insurance existed.

*AXA Equitable Life Insurance Company*

Karen Field Hazin, Vice President,
Secretary and Associate General Counsel

Christopher M. Condron,
Chairman and Chief Executive Officer

R85-406

EXHIBIT C

EXHIBIT C

## Exchange Privilege Rider

In this rider, "we", "our" and "us" mean AXA Equitable Life Insurance Company. "You" means the Owner of the policy as the item on Owner's right is exercised.

After the first policy year you may exchange this policy for a new policy on the life of a new insured person, subject to conditions we determine. These conditions include but are not limited to the following:

1. We must be satisfied that the new insured person is insurable for the amount of insurance applied for.

2. The new insured person must join in the request for the new policy and the owner of the new policy must have an insurable interest in the new insured person. If this policy is assigned, the assignee must consent to the exchange.

3. The exchange may be made as of the beginning of any policy month if neither the original insured person nor the new insured person is then over age 65.

4. This policy must be in effect on the exchange date with all monthly deductions from the Policy Account having been made, and with no such deductions then being waived nor amounts credited to the Policy Account by a disability rider.

5. Within 31 days before the date of exchange, we must receive (a) written request for the exchange on our application form; and (b) evidence of the new insured person's insurability satisfactory to us.

6. We will carry over to the new policy any loan and loan interest not repaid.

7. Insurance under this policy will cease when insurance under the new policy takes effect.

8. The new policy must qualify as life insurance under the Internal Revenue Code or successor legislation.

THE NEW POLICY. Planned periodic premiums for the new policy will be based on our rules in effect on its Register Date for the insurance age of the new insured person on that date. The Register Date of the new policy will be the same as the Register Date of this policy. However, if the new insured person's date of birth is later than the Register Date of this policy, the Register Date of the new policy will be the policy anniversary of this policy next preceding the date of exchange. The face amount of insurance and the death benefit option in the new policy will be the same as in this policy on the date of exchange.

You may ask that additional benefit riders be included in the new policy. The issue of any rider will require our consent and evidence of insurability satisfactory to us.

The time periods in the Incontestability and Suicide Exclusion provisions of the new policy will begin on the Date of Issue of the new policy.

**AXA Equitable Life Insurance Company**

*Karen Field Hazin*

Karen Field Hazin, Vice President,
Secretary and Associate General Counsel

*Christopher M. Condron*

Christopher M. Condron,
Chairman and Chief Executive Officer

R85-40.5NY          Exchange Privilege

EXHIBIT C

EXHIBIT C

EXHIBIT C

☐ The Equitable Life Assurance Society of the United States
☒ Equitable Variable Life Insurance Company

**Application To**

REQUEST FOR ☒ CHANGE (as specified in Section II OF POLICY OR CONTRACT NO. 17205155
☐ REINSTATEMENT ☐ DELIVERY OF POLICY OR CONTRACT NO.

**SECTION I**

**Requested Change** (see below for adding RTI and CTI): Reduce the Face Amount from $2,000,000
to $1,600,000. Effective date of change 16 December, 1, 1987.

**ADD** ☐ Renewable Term Rider (RTI) on Insured         Amt. $
☐ Renewable Term Rider (RTI) on Additional Insured    Amt. $
☐ Children's Term Rider (CTI)                          Amt. $ ___ Units ___

For RTI on the Additional Insured and for CTI, the Beneficiary will be as stated in the rider for those benefits unless otherwise designated above in "Requested Change" for any designation include full Name and Relationship to Insured.

Complete below and answer the Questions in Section II as to the Additional Insured and as to each Child proposed for CTI.

PERSON(S) TO BE COVERED UNDER RTI OR ADDITIONAL INSURED AND/OR CTIs

NOTE: To be eligible for CTI, Children (including stepchildren and legally adopted children) must not yet have reached their 19th birthday. Coverage does not begin until a Child is 15 days old.

| RTI or CTI | First Name | Middle Initial | Last Name | Date of Birth | | |
|---|---|---|---|---|---|---|
| | | | | Sex | Mo. | Day | Yr. |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Complete a.-e. only as to Additional Insured for RTI.

a. List all current occupations—Give Title(s) and Duties.

b. Age Nearest Birthday.

c. Place of Birth: State of

d. Residence: State of

e. Owner's Relationship to Addl. Insured:

The signers of this request agree that:

1. If evidence of insurability is required, the statements and answers to the questions
☐ In Sections I and II of this form
☐ In Sections I and II of this form and on the medical history form dated
are reaffirmed and offered as part of this request.
Such statements and answers are true and complete to the best of my knowledge and belief. The Insurer may rely on them in acting on this request.

2. The Insurer shall incur no liability under this request
(a) until it has been approved by the Insurer and the full amount has been paid in connection with it has been paid; and
(b) if evidence of insurability is required, the

statements and answers made part of this request are offered as evidence of insurability are, without material change, true and complete to the best of my knowledge and belief as at the time of payment of such consideration.

3. Any new policy or contract issued in connection with a change request shall be subject to: (1) Any assignment of the original policy as contract in force and on file with the Insurer as its Home Office; and (2) To any loan made by the Insurer on the original policy or contract and to the rights of the Insurer in connection with it.

4. No agent or medical examiner has authority to make or modify any contract or to waive any of the Insurer's rights or requirements. The Insurer shall not be bound by any information unless it is stated in this form or in any other form submitted in connection with this request.

See reverse side for Signature Requirements.

Dated at ___ N.Y. ___ N.Y.
City       State

on 11-19, 19 87.

Will any other existing insurance or annuity be replaced or changed (or has it been) assuming that any new insurance or annuity applied for will be issued?
☐ Yes ☐ No

Signature ___
of Agent
Also complete Production Credits Information on the back.

18D-333C

X ___ (Signature)

X ___ TRUSTEE
(Signature)

Ch. No. 45837

EXHIBIT C

EXHIBIT C

## Application (Continued)

### SECTION II

*For each new Person to be covered, answer Questions 1 and 2. Also answer Questions 3, 4 and 5 if Non-Medical.*
*For persons already covered by the policy or contract, answer such questions need be answered only as to occurrences that took place after the date of application for the policy or contract.*

**1. Has any Person To Be Covered:**

a. Within the last two years been convicted of two or more moving violations or driving under the influence of alcohol or drugs, or had a license suspended or revoked? (Give full details—including dates, types of violation, and reason for license suspension or revocation.) ☐ Yes ☐ No

b. Any plan to travel or reside outside the U.S.? (Give full details.) ☐ Yes ☐ No

c. Any other life insurance now in effect or application now pending? (State companies and amounts.) ☐ Yes ☐ No

**2. Has any Person To Be Covered:**

a. Within the last year flown other than as a passenger or plan to do so?
If yes: Total flying time at present _____ Hours.
Last 12 mos. _____ Hours;  Next 12 mos. _____ Est. Hours.
(Complete Aviation Supplement for competitive, test, stunt or military flying, or crop dusting.) ☐ Yes ☐ No

b. Engaged within the last year, or are plan to engage in motor racing on land or water, underwater diving, sky diving, ballooning, hang-gliding or parachuting? (If yes, complete Avocation Supplement.) ☐ Yes ☐ No

c. Ever had an application for life or health insurance declined, that required an extra premium or was otherwise modified? (Give full details.) ☐ Yes ☐ No

d. Replaced or changed any other existing insurance or annuity (or any plan to do so) assuring that any new insurance or annuity applied for will be issued? (State companies, plans and amounts.) ☐ Yes ☐ No

**3. Insured:** Height _____ Ft. _____ In.  Weight _____ lbs.

**4. Additional Insured:** Height _____ Ft. _____ In.  Weight _____ lbs.

**4. Has any Person To Be Covered:**

a. Ever been treated for or had any indication of heart trouble, stroke, high blood pressure, chest pain, diabetes, tumor or cancer? (Give full details.) ☐ Yes ☐ No

b. Within the last 5 years, consulted a physician, or been examined or treated at a hospital or other medical facility? (Include medical check-ups in the last 2 years. Do not include colds, minor virus infections, minor injuries, or normal pregnancy.) (Give full details.) ☐ Yes ☐ No

**5. Has any Person To Be Covered:**

a. Within the last ten years repeatedly used barbiturates, amphetamines, hallucinatory drugs or narcotics? (Give full details.) ☐ Yes ☐ No

b. Within the last ten years received counseling or treatment regarding the use of alcohol or drugs? (Give full details.) ☐ Yes ☐ No

**6. DETAILS.** For each yes answer give Question number, name of person(s) affected and full details. For 4 and 5 also include conditions, dates, durations, treatment and results, and names and addresses of physicians and medical facilities.

| No. | Name of Person Affected | Details |
|-----|------------------------|---------|
| | | |
| | | |
| | | |
| | | |

**TO BE COMPLETED BY AGENT.**

For Protection Credits (Service Agent first)

(Print Agent's Name(s))

| | Initial of Last Name | Number | % to Ind. |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**Agency & Code No.** _____

**District & Code No.** _____

Date _____ 19___

Service Agent's Signature _____

### SIGNATURE REQUIREMENTS

*Change. Owner (and assignee if policy is assigned) must sign. (If evidence of insurability is required, each person covered by the change must also sign.*

*Reinstatement. Each person covered by the policy must sign. If the Insured is not the Owner or if the policy is absolutely assigned, the Owner or Absolute Assignee must also sign.*

Ⓐ *Delivery. Same signature requirements as on original application.*

Ⓒ *NOTE: If the Owner or any person to be covered is a child under age 15, the parent or guardian should sign for the child.*

180-323C

EXHIBIT C

EXHIBIT C

# THE EQUITABLE

## ⟐ EVLICO

### REQUEST FOR CHANGE OF BENEFICIARY AND/OR OWNER TO
☐ THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES
☒ EQUITABLE VARIABLE LIFE INSURANCE COMPANY

EQUITABLE AND EVLICO ARE REFERRED TO ON THIS FORM AS "COMPANY." A COMPLETED REQUEST MUST BE SUBMITTED ON SEPARATE FORMS.

**BEFORE COMPLETING THIS REQUEST, PLEASE READ THE INSTRUCTIONS ON THE COVER PAGE AND THE PROVISIONS ON THE REVERSE SIDE OF THIS FORM.**

**DO NOT RETURN THE POLICY WITH THIS REQUEST**
THE PROVISIONS ON THE REVERSE SIDE OF THIS FORM.

INSURED/ANNUITANT NAME Deborah A. Wiley          POLICY NUMBER 32 205 155

CHANGE OF BENEFICIARY:   ☐ YES   ☐ NO (No change from present Beneficiary if neither box is checked.)

FULL NAME OF NEW BENEFICIARY, RELATIONSHIP TO INSURED/ANNUITANT, ADDRESS
OF ALL NAMED BENEFICIARIES, AND SOCIAL SECURITY NUMBER.

Carolyn Seely, wife    Soc Sec # 016 - 48 - 1328

72a Park Avenue

New York, N.Y. 10021

ATTACHED
TO APP - 04

CHANGE OF OWNER:   ☐ YES   ☒ NO (No change from present Owner if neither box is checked.)
FULL NAME OF NEW OWNER AND RELATIONSHIP TO INSURED/ANNUITANT

THIS CHANGE IS SUBJECT TO THE PROVISIONS ON THE REVERSE SIDE

Owner's Address: If applicable, check one and complete.
☐ Address of NEW OWNER   ☒ Change address of SAME OWNER.

No. 72a Park Avenue

City New York    State N.Y.    Zip 10021

**SUBSTITUTE FORM W-9 — FOR NEW INDIVIDUAL OWNER ONLY**
Federal Law requires that you provide the following Data (see reverse side for explanation):

PART ONE — Enter your taxpayer identification number in the appropriate box. For most taxpayers, this is the Social Security Number.
Social Security Number ☐☐☐-☐☐-☐☐☐☐   OR   Employer I.D. Number ☐☐-☐☐☐☐☐☐☐

PART TWO — Check this box if you are NOT subject to backup withholding under the provisions of section 3406(a)(1)(C) of the Internal Revenue Code... ☐

CERTIFICATION — Under penalties of perjury, I certify that this information is true, correct and complete

Signature of New Owner _____    Date: _____ 19 ___

FOR EQUITABLE/EVLICO USE ONLY

The Equitable/EVLICO certifies that this change has been recorded.

Date: 11/27 19 53    By: _____

**IMPORTANT:** Please use typewriter or ball point pen. Press firmly since entries must be made on each page. Avoid erasures or alterations. When this page and its duplicate are completed, both completed copies to us. When we have recorded the change, we will return a copy of the form signed by us as evidence of the change.

TEAR & SEPARATE
CATALOG #112294

K9 11 10 53

EXHIBIT C

EXHIBIT C

**Part 1 of an Application for Fixed Benefit Life Insurance To
Equitable Variable Life Insurance Company (EVLICO) - [DPA]**

**1. Proposed Insured**  a. Print name as appears on policy.
_MiGUEL_ _____ _MGUEL_ _____
First.                     Middle Initial                     Last

b. ☑ Mr. ☐ Miss ☐ Mrs. ☐ Ms. ☐ Other Title.
c. List all current occupation—Give Title(s) and Duties
_CHIEF EXECUTIVE OFFICER_

d. Date of Birth  Mo. _07_  Day _23_  Yr. 19_58_
e. Age Nearest Birthday. ___ _57_ ___
f. Place of Birth  State of _CHINA_
g. Residence: State of _CT_
h. ☑ Male  ☐ Female

**2. Plan**                                    **Amount of Insurance**
a. ☐ Nonrenewable Premium—Yearly
Renewable Term for five years.                     $ _____
b. ☐ Modified Yearly Renewable Term for n-months and Years referred
below.                                              $ _____

| Year | Face Amount | Year | Face Amount |
|------|-------------|------|-------------|
| 1    | $           | 6    |             |
| 2    |             | 7    |             |
| 3    |             | 8    |             |
| 4    |             | 9    |             |
| 5    |             | 10   |             |

c. ☐ Single Premium Endowment                      $ _1,00,000_
d. ☐ Flexible Premium Adjustable Life               $ _____
Is the Death Benefit to include the Policy Account? ☑ Yes (Option B)  ☐ No (Option A)
_State As number_

**3. Optional Benefits**
☐ Accidental Death Benefit $ _____
☐ Renewable Term on Additional Insured $ _____
☐ Children's Term $ _____  Units
☐ Disability Premium Waiver ☐ Disability Benefit/Flexible Prem. Pol.
☐ Other _____  ☐ Waiver Cost of Insurance
   ☐ Credit $ _____  per _____

**4. Beneficiary**  for insurance on Proposed Insured. Include Full
Name and Relationship to Proposed Insured.

Unless otherwise requested, the contingent beneficiary will be the surviv-
ing children of the Insured, in equal shares. If none survive, payment will
be made to the Insured's estate.
The Beneficiary under any Term Insurance Rider on an Additional In-
sured or on a Child will be as stated in those riders, unless otherwise
designated in Special Instructions.

**5. Owner**  Owner's Soc. Sec. or Tax No. |__|__|__|—|__|__|—|__|__|__|__|
The Owner is ☐ Proposed Insured  ☐ Applicant for Child (See III.c.)
☐ Other (Give Full Name) _____
Relationship to Insured _____
☐ Mr. ☐ Miss ☐ Mrs. ☐ Ms.  Other Title _____

If the Proposed Insured or the Applicant for a Child is not the Owner and
if all persons designated die before the Insured, the Owner will be the
estate of the last of such persons to die except where the Insured is a Child
(see Note in III.c.).

**6. Mailing Address** ☑ Business (Give Full Name) ☐ Residence
_Quixada Corporation_
%_____
No.              Street
_478 Richmond Road, New Haven, England_
City                    State              Apt.
Zip

**7. Premium Payment Plan**
Check mode, and if Flexible Premium Policy com-
plete the following:
Planned Periodic Prem. $ _1,370.00_
Initial Prem. Payment $ _1,370.00_
☐ Do not send premium reminder notices
a. ☐ Annual  ☑ Semi-Annual  ☐ Quarterly
☐ Monthly ☐ System-Matic (Attach S-M Form)
☐ Single
☐ Military Allotment: Branch _____
Register  Date _____
☐ Salary Allotment: Register  Date _____
Unit  Name _____
☐ Unit/Sub-Unit No. If established: _____
Divisible by ☐ C4  ☐ C4 Payroll No.
☐ Held Prem. $ _____  PT Premium $ _____

**8. Note:**
Premiums for the Indeterminate Premium
policy may change annually, subject to a
guaranteed maximum annual renewal
premium shown in the policy.

**9. Special Instructions**
a. ☐ Preliminary Term (PT) period of _____
ending _____  Mo. Day Yr.
b. ☐ Date to save insurance age _____
c. ☐ Other _____
_Please provide _____ c. B. 69 -_
_receive loss 9-11-14_

EV6-455                                                                1          Cat. No. 110150

EXHIBIT C

EXHIBIT C

## 10. Complete If Proposed Insured Person is a Child (Issue Ages 0-14).

*to indicate the choice of a minor Child be-coming the Owner, if all persons designated die before the Child, the Owner will be the Child.*

a. Will there be more life insurance in effect on the Child than on any older child in the family?   ☐ Yes   ☐ No
If yes, explain:

### d. Optional Benefit on Applicant.

☐ Supplemental Protective Benefit. Give Applicant's:
  i. Age Nearest Birthday ___   ii. Place of Birth ___

b. Applicant-Complete if other than the Child.

i. _____   _____   _____
   First Name        Middle Initial      Last Name
ii. ☐ Mr.  ☐ Mrs.  ☐ Ms.   ☐ Other Title
iii. Date of Birth ___ Month ___ Day 19___ Year

iii. Height ___ Ft. ___ In. Weight ___ Lbs.
iv. Occupation-Give Title(s) and Duties:

*Also answer questions on page 3 as to Applicant.*

iv. ☐ Male   ☐ Female
v. Relationship to Child:
vi. Total Life Insurance now in effect: $

e. Limitations On Child's ADB and DPW Benefits.
  i. In the Accidental Death Benefit is applied for on the Child, the benefit is payable only if the Child dies after the Child's first birthday.
  ii. If the Disability Waiver Benefit is applied for on the Child, the benefit is effective only if the Child becomes totally disabled on or after the Child's 5th birthday.

c. Owner. If the Applicant is to be the Owner, after the Applicant's death the Child will be the Owner unless otherwise designated in Special Instructions (in any such designate include Owner's Full Name, Relationship to Child, and Social Security or Tax Number).
NOTE: Consider designating an adult secondary Owner.

## 11. Complete for Children's Term Rider.

Give Names of Children below and answer the Questions on page 3 as to each Child.

CHILDREN PROPOSED FOR INSURANCE.
NOTE: To be eligible, children (including stepchildren and legally adopted children) must not yet have reached their 18th birthday. Coverage does not begin until a child is 15 days old.

| | Date of Birth | | |
|---|---|---|---|
| First Name | Middle Initial | Last Name | Sex | Mo. | Day | Yr. |
| | | | | | | 1 |
| | | | | | | 2 |
| | | | | | | 3 |
| | | | | | | 4 |

## 12. Complete for Renewable Term Rider on Additional Insured.

Complete below and answer the Questions on page 3 as to the Additional Insured.

PROPOSED ADDITIONAL INSURED PERSON
a. Print name as it is to appear on the Policy.

_____   _____   _____
First          Middle Initial    Last
c. Date of Birth: Mo. ___ Day ___ Yr. 19 ___
d. Age Nearest Birthday ___
e. Place of Birth: State of ___
f. Residence: State of ___
g. ☐ Male   ☐ Female
h. Owner's Relationship to Additional Insured Person.

b. List all current occupation—Give Title(s) and Duties.

## 13. Complete if Using Existing Option to Purchase Insurance.

i. Existing Individual Policy No. ___
ii. Option Date ___   iii. Option Amount: $ ___
iii. ☐ Regular Option or
     ☐ Option on Birth or Adoption of Child
     Child's Name ___
     Date of Birth or Adoption ___
v. If applying for Disability Waiver Benefit, is Proposed Insured now totally disabled as defined in the Disability Waiver provision in the above policy?   ☐ Yes   ☐ No

The application is made under a provision in the policy indicated above permitting the purchase of individual life insurance (the "Option Provision").

If this application is made within the time allowed and in accordance with other terms in the Option Provision, including timely payment of the full first premium for the option insurance, then the option insurance shall take effect upon the terms of the policy EWLCO would issue. Otherwise, the option insurance shall not take effect.

Answer the Questions on page 3 only if evidence of insurability is required in connection with an optional benefit or for any excess of the insurance amount applied for over the insurance amount permitted by the Option Provision (the option insurance).

EW-155

NO.   A 231612

2

EXHIBIT C

**OTHER INFORMATION—Has any Person Proposed for Insurance:**

14. a. Ever had a driver's license suspended or revoked or, within the last three years, been convicted of two or more moving violations or driving under the influence of alcohol or drugs? (Give full details—including dates, types of violation, and reason for license suspension or revocation.)
☐ Yes ☑ No
b. Any plans to travel or reside outside the U.S.?   ☑ Yes ☐ No
(Give full details.)
c. Any other life insurance now in effect or application now pending? (State companies and amounts.)   ☐ Yes ☑ No
d. Smoked cigarettes within the last 12 months?   ☐ Yes ☑ No

15. a. In the last year flown other than as a passenger or plan to do so?
If yes: Total flying time as a: pilot:_____ Hours; Next 12 mos._____ Est. Hours.
Last 12 mos._____ Hours;_____ Next 12 mos._____ Est. Hours.
(Complete Aviation Supplement for pilot instruction; complete, seat, stunt or military flying; or crop dusting.)
b. Engaged within the last year, or any plan to engage in motor racing on land or water, underwater diving, sky diving, balloon-ing, hang gliding or parachuting? (If yes, complete appropriate Supplement.)   ☐ Yes ☑ No
c. Ever had an application for life or health insurance declined,

**Answer Questions 16, 17 and 18 only if Non-Medical.**

16. Proposed Insured: Height_____Ft._____In. Weight_____lbs.
Additional Insured: Height_____Ft._____In. Weight_____lbs.

Has any Person Proposed for Insurance

17. a. Ever been treated for or had any indication of heart trouble, stroke, high blood pressure, chest pain, diabetes, tumor or cancer? (Give full details.)   ☐ Yes ☐ No
b. In the last 3 years, consulted a physician, or been examined or treated at a hospital or other medical facility? (Include medical check-ups in the last 2 years. Do not include colds, minor virus infections, minor injuries, or normal pregnancy.) (Give full details.)   ☐ Yes ☐ No
c. In the last 10 years used barbiturates, amphetamines, hallucinatory drugs or narcotics? (Give full details.)   ☐ Yes ☐ No
d. In the last 10 years received counseling or treatment for the use of alcohol or drugs? (Give full details.)   ☐ Yes ☐ No

18. a. Ever been rejected for or had any indication of heart trouble,

19. **DETAILS.** For each yes answer give Questions number and full details. For 17 and 18 also include conditions, dates, durations, treatment and results, and names and addresses of physicians and medical facilities.

| No. | Details | | |
|---|---|---|---|
| 14.b | Husband | Travels Business | ask for finances about once/year/etc. |
| | | | |
| | | | |
| | | | |

☐ Amount Paid: $_____   (Draw checks to order of EVLICO.)

20. Complete if First Premium is Paid or a Payroll Deduction Authorization is Signed Before the Policy is Delivered.
Have the undersigned read and understand they agree to the conditions of EVLICO's Temporary Insurance Agreement, including (i) the requirement that all of the conditions in it must be met before any insurance takes effect, and (ii) the $250,000 insurance amount limitation?   ☐ Yes ☐ No   If "No," a premium may not be paid nor a payroll deduction authorization signed before the policy is delivered.

**AGREEMENT.** Each signer of this application agrees that:
(1) The statements and answers in all parts of this application are complete and true to the best of my knowledge and belief. EVLICO may rely on them in acting on this application.
(2) EVLICO's Temporary Insurance Agreement states the conditions under which and before any insurance takes effect; if the full first premium for the policy applied for is paid, or a payroll deduction authorization is signed, before the policy is delivered.
(3) Except as stated in the Temporary Insurance Agreement, no insurance shall take effect on this application: (a) until a policy is delivered and the full first premium for it is paid, or a payroll deduction authorization is signed, while the Proposed for Insured is living; (b) before any Register Date specified in this application; and (c) unless at the best of my knowledge and belief the statements and answers in all parts of this application continue to be true and complete, without material change, as of the time such premium is paid or a payroll deduction authorization is signed.

Signature of Payor
X _____
EVL4155

(4) No agent or medical examiner has authority to modify this Agreement or the Temporary Insurance Agreement, nor to waive any of EVLICO's rights or requirements. EVLICO shall not be bound by any information unless it is stated in application.

Dated at _____ Part 1, A or Z, _____ on ____ of ____ 19 __

(X) _____
Signature of Proposed Insured or of Applicant if Proposed Insured is a Child. (see p. D-14.)

X _____
Signature of Purchaser if not Proposed Insured. (If corp., show firm's name and signature of authorized officer.)

Signature of Proposed Additional Insured if required.

☐ Payroll deduction authorization signed.

3

EXHIBIT C

EXHIBIT C

# AXA EQUITABLE
LIFE INSURANCE COMPANY

A Stock Life Insurance Company
Home Office: 787 Seventh Avenue, New York, New York 10019

Flexible Premium Adjustable Life Plan. Insurance payable upon death before Final Policy Date. Policy Account payable on Final Policy Date. Adjustable Death Benefit. Premiums may be paid while insured person is living and before the Final Policy Date. Premiums must be sufficient to keep the policy in force. Policy Account based on declared interest rates. This is a non-participating policy.

No. 85-200

EXHIBIT C



# EXHIBIT D

EXHIBIT D

 **AXA EQUITABLE** | redefining / standards

NATIONAL OPERATIONS CENTER
P.O. BOX 1047
CHARLOTTE, NC  28201-1047



000002 AX957501   

MALCOLM H WIENER
66 VISTA DR
GREENWICH CT 06830

| | |
|---|---|
| Insured: | MALCOLM H WIENER |
| Policy Number: | 36 224 259 |
| Plan: | Flexible Premium Adjustable Life Insurance Universal Life |
| Associate: | DAVID HUNGERFORD, CHFC, CLU |
| Assoc. Phone: | (631) 385-5420 |
| Svc Ctr Phone: | (800) 777-6510 |
| Date: | December 2, 2013 |

## NOTICE OF POLICY TERMINATION

We do not want to lose you as a client.

And we do not want you to lose your valuable life insurance protection.  However, your insurance coverage has terminated without value since the payment requested in our recent lapse notice has not been received.

Nevertheless, your policy may be reinstated, subject to our approval. To request reinstatement of this policy, the enclosed application for reinstatement must be completed, signed as indicated and returned to our office within 60 days of the date of this letter.  If we approve your application for reinstatement, you will be notified of the amount you will need to send us to complete the reinstatement of this policy.  You should note that we may request additional requirements in order to approve reinstatement of this policy. After 60 days, please contact your financial professional or our Service Center at the numbers shown above for the necessary reinstatement requirements.

For policies that are business or employer owned, you should consult with your tax advisor concerning possible application of tax law requirements where coverage is reinstated.

cc: DAVID HUNGERFORD, CHFC, CLU
    ASU @ BSD-596

000002 AX957501 000002

EXHIBIT D

EXHIBIT D

 **AXA EQUITABLE**                    redefining / standards

NATIONAL OPERATIONS CENTER
P.O. BOX 1047
CHARLOTTE, NC  28201-1047



000003 AX957501   

| | |
|---|---|
| Insured: | MALCOLM H WIENER |
| Policy Number: | 37 205 147 |
| Plan: | Flexible Premium Adjustable Life Insurance Universal Life |

MALCOLM H WIENER
66 VISTA DR
GREENWICH CT 06830

| | |
|---|---|
| Associate: | DAVID HUNGERFORD, CHFC, CLU |
| Assoc. Phone: | (631) 385-5420 |
| Svc Ctr Phone: | (800) 777-6510 |
| Date: | December 2, 2013 |

## NOTICE OF POLICY TERMINATION

We do not want to lose you as a client.

And we do not want you to lose your valuable life insurance protection.  However, your insurance coverage has terminated without value since the payment requested in our recent lapse notice has not been received.

Nevertheless, your policy may be reinstated, subject to our approval. To request reinstatement of this policy, the enclosed application for reinstatement must be completed, signed as indicated and returned to our office within 60 days of the date of this letter.  If we approve your application for reinstatement, you will be notified of the amount you will need to send us to complete the reinstatement of this policy.  You should note that we may request additional requirements in order to approve reinstatement of this policy. After 60 days, please contact your financial professional or our Service Center at the numbers shown above for the necessary reinstatement requirements.

For policies that are business or employer owned, you should consult with your tax advisor concerning possible application of tax law requirements where coverage is reinstated.

cc: DAVID HUNGERFORD, CHFC, CLU
    ASU @ BSD-596

EXHIBIT D

EXHIBIT D

 **AXA EQUITABLE**　　　　　　**redefining / standards**

NATIONAL OPERATIONS CENTER
P.O. BOX 1047
CHARLOTTE, NC 28201-1047



000004 AX957501  

MALCOLM H WIENER
66 VISTA DR
GREENWICH CT 06830

| | |
|---|---|
| Insured: | MALCOLM H WIENER |
| Policy Number: | 37 205 155 |
| Plan: | Flexible Premium Adjustable Life Insurance Universal Life |
| Associate: | DAVID HUNGERFORD, CHFC, CLU |
| Assoc. Phone: | (631) 385-5420 |
| Svc Ctr Phone: | (800) 777-6510 |
| Date: | December 2, 2013 |

## NOTICE OF POLICY TERMINATION

We do not want to lose you as a client.

And we do not want you to lose your valuable life insurance protection.  However, your insurance coverage has terminated without value since the payment requested in our recent lapse notice has not been received.

Nevertheless, your policy may be reinstated, subject to our approval. To request reinstatement of this policy, the enclosed application for reinstatement must be completed, signed as indicated and returned to our office within 60 days of the date of this letter.  If we approve your application for reinstatement, you will be notified of the amount you will need to send us to complete the reinstatement of this policy.  You should note that we may request additional requirements in order to approve reinstatement of this policy. After 60 days, please contact your financial professional or our Service Center at the numbers shown above for the necessary reinstatement requirements.

For policies that are business or employer owned, you should consult with your tax advisor concerning possible application of tax law requirements where coverage is reinstated.

cc: DAVID HUNGERFORD, CHFC, CLU
    ASU @ BSD-596

000004 AX957501 000004

EXHIBIT D



# EXHIBIT E

EXHIBIT E

Malcolm H Wiener
66 Vista Drive
Greenwich, CT 06830

February 21, 2014

AXA Equitable Payment Center
BOX 371459
Pittsburgh PA 15250-7459

To Whom It May Concern:

Malcolm H. Wiener has not received the invoices for the following 3 insurance policies that may have been due on or about November 30, 2013. Based on the prior invoices received, that last ones dated July 1, 2013 (copies enclosed), we are enclosing a check for $96,093.00 for the following insurance policies:

POLICY: 36 224 259-    $43,242.00

POLICY: 37 205 147-    $43,242.00

POLICY: 37 205 155-    $ 9,609.00

Also, as of today we still have not received the invoice for these policies that would be due around March 1, 2014. Please send those along so we know the correct premium amount due.

If you need any additional information, please contact me at 212-332-7350 or gbuckbinder@millburncorp.com

Sincerely,

Gregg Buckbinder
On Behalf of Malcolm H Wiener

Enclosures

Cc: Malcolm H. Wiener
    Carolyn S. Wiener

EXHIBIT E

EXHIBIT E

MALCOLM H. WIENER
CAROLYN S. WIENER
C/O MILBURN CORP.
1270 AVENUE OF THE AMERICAS, 11TH FL
NEW YORK, NY 10020

FIRST REPUBLIC BANK
NEW YORK, NY 10020

2085

2/21/2014

PAY TO THE
ORDER OF    AXA Equitable                                    $  96,093.00

Ninety-Six Thousand Ninety-Three and 00/100                     DOLLARS

AXA Equitable Payment Center
Box 371459
Pittsburgh, PA 15250-7459

MEMO

**2085**

MALCOLM H. WIENER
CAROLYN S. WIENER

AXA Equitable                                          2/21/2014

| Date | Type | Reference | Original Amt | Balance Due | Discount | Payment |
|------|------|-----------|--------------|-------------|----------|---------|
| 2/21/2014 | Bill | 1 | 43,242.00 | 43,242.00 | | 43,242.00 |
| 2/21/2014 | Bill | 2 | 43,242.00 | 43,242.00 | | 43,242.00 |
| 2/21/2014 | Bill | 3 | 9,609.00 | 9,609.00 | | 9,609.00 |
| | | | | | Check Amount | 96,093.00 |

FRB                                                    96,093.00

MALCOLM H. WIENER
CAROLYN S. WIENER

**2085**

AXA Equitable                                          2/21/2014

| Date | Type | Reference | Original Amt | Balance Due | Discount | Payment |
|------|------|-----------|--------------|-------------|----------|---------|
| 2/21/2014 | Bill | 1 | 43,242.00 | 43,242.00 | | 43,242.00 |
| 2/21/2014 | Bill | 2 | 43,242.00 | 43,242.00 | | 43,242.00 |
| 2/21/2014 | Bill | 3 | 9,609.00 | 9,609.00 | | 9,609.00 |
| | | | | | Check Amount | 96,093.00 |

FRB                                                    96,093.00

EXHIBIT E



# EXHIBIT F

"Gregg Buckbinder" <gbuckbinder@millburncorp.com>
FW: termination notices
June 2, 2014 6:21:27 PM EDT
"Carolyn Wiener" <cswiener@yahoo.com>
9 Attachments, 785 KB

Attached are the October 2013 Lapse Notices.

Regards,
Gregg

**From:** Hungerford, David [mailto:david.hungerford@axa-advisors.com]
**Sent:** Thursday, February 27, 2014 2:33 PM
**To:** Gbuckbinder@millburncorp.com
**Cc:** Ruplin, Ferdinand
**Subject:** FW: termination notices

Greg,
I just received the following email from our branch manger, EVP Ferdinand Ruplin.
Please note that we are still pursuing a reinstatement based on the current medical information received from the still outstanding reinstatement request.  This request is currently in underwriting and reinsurance and we should hear shortly on what Mr. Wiener's options may be.  I will let you know as soon as we hear.
I am equally disappointed in this nonmedical reinstatement rejection.  They appear to confirm that all premium notices or lapse notices were mailed in a timely manner to the addresses on the attached forms.
I hope to have better news for you later.
Dave

David L. Hungerford, ChFC, CLU
Retirement Planning Specialist
Phone: 631-385-5420
Fax: 631-424-0345

David L. Hungerford is a registered representative and investment advisor representative who offers securities and investment advisory services through AXA Advisors, LLC (NY, NY 212-314-4600), member FINRA/SIPC, and is an agent who offers annuity and insurance products through AXA Network, LLC and/or its insurance agency subsidiaries.  AXA Network, LLC does business in California as AXA Network Insurance Agency of California, LLC and, in Utah, as AXA Network Insurance Agency of Utah, LLC.  AXA Advisors and AXA Network are affiliated companies and do not provide tax or legal advice.  Representatives may transact business, which includes offering products and services and/or responding to inquiries, only in state(s) in which they are properly registered and/or licensed.  Your receipt of this e-mail does not necessarily indicate that the sender is able to transact business in your state.

**From:** Ruplin, Ferdinand
**Sent:** Thu 2/27/2014 2:14 PM
**To:** Hungerford, David
**Cc:** Barber, Christopher
**Subject:** FW: termination notices

Hi David:
As you know, we have aggressively pursued getting a "technical" reinstatement (i.e. no evidence of insurability)on the Wiener cases. On the M  Wiener cases that have terminated (36 224 259, 37 205 147 and 155), enclosed find copies of

the Lapse Notices generated.  Likewise, copies of the billing notices for March due dates on 45 212 480 and 44 268 615 enclosed.  All of these statements and notices have been verified as having been mailed to the client.

The company is not going to allow the technical reinstatement based on the circumstances. There is still the option of submitting the reinstatement application. I believe that you have indicated that you are already pursuing this avenue. We certainly wish to retain this valuable client. As I'm sure you can appreciate, the company cannot offer discretionary reinstatement options to one person that they could not offer to everyone. Without adhering to the guidelines, the company could face serious adverse selection, and the associated catastrophic financial consequences, which could prevent the company from fulfilling its important promises to its clients.

We do promise that we will work diligently on the reinstatement application.

Thanks for your understanding.

Ferdinand A. Ruplin, ChFC, CLU
Executive Vice President, National Division
1000 Woodbury Rd. Suite 300
Woodbury, NY 11797
Office:   (516) 358-3742
Fax:      (516) 488-1073

 

If you are interested in a career opportunity with AXA Advisors, please click here



Ferdinand Ruplin is a registered representative and investment advisor representative who offers securities and investment advisory services through AXA Advisors, LLC (NY 212-314-4600) member FINRA/SIPC  and is an agent who offers annuity and insurance products through AXA Network  LLC and/or its insurance agency subsidiaries  AXA Network  LLC does business in California as AXA Network Insurance Agency of California, LLC and  in Utah  as AXA Network Insurance Agency of Utah  LLC  AXA Advisors and AXA Network are affiliated companies and do not provide tax or legal advice  Representatives may transact business, which includes offering products and services and/or responding to inquiries, only in state(s) in which they are properly registered and/or licensed.  Your receipt of this e-mail does not necessarily indicate that the sender is able to transact business in your state. CA Insurance Lic. #0C92176.

36 224 259  .doc (39.5 KB) 37 205 147  .doc (39.5 KB) 37 205 155  .doc (39.0 KB) 45 21  480  .doc (328 KB)

44 268 615  .doc (330 KB) Untitled atta  5.txt (0.5 KB)

EXHIBIT F

BILLING DEPARTMENT-IMMEDIATE ATTN.
P.O. BOX 1047
CHARLOTTE, NC  28201-1047                    Insured:        MALCOLM H WIENER

MALCOLM H WIENER                             Policy Number: 36 224 259
66 VISTA DR                                  Plan:           Flexible Premium Adjustable
GREENWICH CT 06830                                           Life Insurance Universal Life
                                             Associate:      DAVID HUNGERFORD, CHFC, CLU
                                             Assoc. Phone:   (631) 385-5420
                                             Svc Ctr Phone:  (800) 777-6510
                                             Date:           October 1, 2013

NOTICE OF POLICY LAPSE

Your Universal Life insurance policy from AXA Equitable may be one of the most valuable purchases you
will ever make.  It is certainly a purchase well worth protecting.

A recent review of our records indicates that the net cash surrender value in your policy is not sufficient
to cover your monthly deductions which were to have been deducted on October 1, 2013.  Therefore, as
outlined in your policy, we are requesting a minimum payment of $43,242.00.  If this amount is not
received at our service center on or before December 1, 2013, your policy will terminate without value.
You should be aware that there may be tax reporting if the policy terminates with a policy loan
outstanding.

We hope that you will choose to continue your coverage.  If you elect to do so at this time, no medical
or other evidence of insurability will be required.  However, reinstatement after the above date will be
subject to evidence of insurability satisfactory to AXA Equitable.

Since additional payments may be necessary to prevent termination of your policy in the near future,
you may wish to increase the amount of your payment.

If you have any questions, please do not hesitate to contact your financial professional or our service
center at the numbers shown above.

cc: DAVID HUNGERFORD, CHFC, CLU
    ASU @ BSD-596

PLEASE WRITE YOUR POLICY NUMBER, 36 224 259, ON YOUR CHECK.

| Grace Premium | Amount Due By |
| Required | December 1, 2013 |

| | |
|---|---|
| $43,242.00 | $43,242.00 |
| Amount Enclosed | AXA Equitable Payment Center |
| | Box 371459 |
| | Pittsburgh PA 15250-7459 |
| MALCOLM H WIENER | [3]152507459598[3] |

51000000000000000000000362242590201312010450190019004324200700

EXHIBIT F

BILLING DEPARTMENT-IMMEDIATE ATTN.
P.O. BOX 1047
CHARLOTTE, NC 28201-1047

MALCOLM H WIENER
66 VISTA DR
GREENWICH CT 06830

| | |
|---|---|
| Insured: | MALCOLM H WIENER |
| Policy Number: | 37 205 155 |
| Plan: | Flexible Premium Adjustable<br>Life Insurance Universal Life |
| Associate: | DAVID HUNGERFORD, CHFC, CLU |
| Assoc. Phone: | (631) 385-5420 |
| Svc Ctr Phone: | (800) 777-6510 |
| Date: | October 1, 2013 |

### NOTICE OF POLICY LAPSE

Your Universal Life insurance policy from AXA Equitable may be one of the most valuable purchases you will ever make. It is certainly a purchase well worth protecting.

A recent review of our records indicates that the net cash surrender value in your policy is not sufficient to cover your monthly deductions which were to have been deducted on October 1, 2013. Therefore, as outlined in your policy, we are requesting a minimum payment of $9,609.00. If this amount is not received at our service center on or before December 1, 2013, your policy will terminate without value. You should be aware that there may be tax reporting if the policy terminates with a policy loan outstanding.

We hope that you will choose to continue your coverage. If you elect to do so at this time, no medical or other evidence of insurability will be required. However, reinstatement after the above date will be subject to evidence of insurability satisfactory to AXA Equitable.

Since additional payments may be necessary to prevent termination of your policy in the near future, you may wish to increase the amount of your payment.

If you have any questions, please do not hesitate to contact your financial professional or our service center at the numbers shown above.

cc: DAVID HUNGERFORD, CHFC, CLU
    ASU @ BSD-596

PLEASE WRITE YOUR POLICY NUMBER, 37 205 155, ON YOUR CHECK.

| Grace Premium<br>Required | Amount Due By<br>December 1, 2013 |
|---|---|
| $9,609.00<br>Amount Enclosed | $9,609.00<br>AXA Equitable Payment Center<br>Box 371459<br>Pittsburgh PA 15250-7459 |
| MALCOLM H WIENER | [3]152507459598[3] |

5100000000000000000000372051550201312010450182019000960900800

EXHIBIT F

BILLING DEPARTMENT-IMMEDIATE ATTN.
P.O. BOX 1047
CHARLOTTE, NC  28201-1047                    Insured:          MALCOLM H WIENER

MALCOLM H WIENER                              Policy Number:    36 524 259
66 VISTA DR                                   Plan:             Flexible-Premium Adjustable
GREENWICH CT 06830                                              Life Insurance
                                                               Universal Life
                                             Associate:        DAVID HUNGERFORD, CHFC, CLU
                                             Assoc. Phone:     (631) 385-5410
                                             Svc Ctr Phone:    (800) 777-6510
                                             Date:             October 1, 2013
                                      NOTICE  OF  POLICY  LAPSE
Your Universal Life insurance policy from AXA Equitable may be one of the most
valuable purchases you will ever make.  It is certainly a purchase well worth protecting.
A recent review of our records indicates that the net cash surrender value in your policy
is not sufficient to cover your monthly deductions which were to have been deducted on
October 1, 2013.  Therefore, as outlined in your policy, we are requesting a minimum
payment of $43,242.00.  If this amount is not received at our service center on or before
December 1, 2013, your policy will terminate without value. You should be aware that
there may be tax reporting if the policy terminates with a policy loan outstanding.
We hope that you will choose to continue your coverage.  If you elect to do so at this time,
no medical or other evidence of insurability will be required.  However, reinstatement after
the above date will be subject to evidence of insurability satisfactory to AXA Equitable.
Since additional payments may be necessary to prevent termination of your policy in the
near future, you may wish to increase the amount of your payment.
If you have any questions, please do not hesitate to contact your financial professional or
our service center at the numbers shown above.
cc: DAVID HUNGERFORD, CHFC, CLU
           ASU Q BSE-596
PLEASE SEE ACCEPTABLE FORM OF PAYMENT RULES ON REVERSE SIDE.
PLEASE WRITE YOUR POLICY NUMBER, 36 524 259, ON YOUR CHECK.
Grace Premium                     Amount Due By
Required                          December 1, 2013

---

$43,242.00                        $43,242.00
Amount Enclosed                   AXA Equitable Payment Center
                                  Box 371459
                                  Pittsburgh PA 15250-7459
MALCOLM H WIENER                  *152507439596*
S100000000000000000000036524259070131201045019001900432420070D

EXHIBIT F

BILLING DEPARTMENT-IMMEDIATE ATTN.
P.O. BOX 1047
CHARLOTTE, NC  28201-1047

| | |
|---|---|
| Insured: | MALCOLM H WIENER |

MALCOLM H WIENER
66 VISTA DR
GREENWICH CT 06830

| | |
|---|---|
| Policy Number: | 37 205 147 |
| Plan: | Flexible Premium Adjustable Life Insurance Universal Life |
| Associate: | DAVID HUNGERFORD, CHFC, CLU |
| Assoc. Phone: | (631) 385-5420 |
| Svc Ctr Phone: | (800) 777-6510 |
| Date: | October 1, 2013 |

NOTICE  OF  POLICY  LAPSE

Your Universal Life insurance policy from AXA Equitable may be one of the most
valuable purchases you will ever make.  It is certainly a purchase well worth protecting.
A recent review of our records indicates that the net cash surrender value in your policy
is not sufficient to cover your monthly deductions which were to have been deducted on
October 1, 2013.  Therefore, as outlined in your policy, we are requesting a minimum
payment of $43,242.00.  If this amount is not received at our service center on or before
December 1, 2013, your policy will terminate without value. You should be aware that
there may be tax reporting if the policy terminates with a policy loan outstanding.
We hope that you will choose to continue your coverage.  If you elect to do so at this time,
no medical or other evidence of insurability will be required.  However, reinstatement after
the above date will be subject to evidence of insurability satisfactory to AXA Equitable.
Since additional payments may be necessary to prevent termination of your policy in the
near future, you may wish to increase the amount of your payment.
If you have any questions, please do not hesitate to contact your financial professional or
our service center at the numbers shown above.
cc: DAVID HUNGERFORD, CHFC, CLU
          ASD B BSD-S96
PLEASE SEE ACCEPTABLE FORM OF PAYMENT RULES ON REVERSE SIDE.
PLEASE WRITE YOUR POLICY NUMBER, 37 205 147, ON YOUR CHECK.

| | |
|---|---|
| Grace Premium Required | Amount Due By December 1, 2013 |

---

$43,242.00
Amount Enclosed

$43,242.00
AXA Equitable Payment Center
Box 371459
Pittsburgh PA 15250-7459

MALCOLM H WIENER          *15250741559B*
510000000000000000000037205147020131201045013201P0043242007D0

BILLING DEPARTMENT-IMMEDIATE ATTN.
P.O. BOX 1047
CHARLOTTE, NC  28201-1047

MALCOLM M WIENER
66 VISTA DR
GREENWICH CT 06830

| | |
|---|---|
| Insured: | MALCOLM M WIENER |
| Policy Number: | 37 205 155 |
| Plan: | Flexible Premium Adjustable Life Insurance Universal Life |
| Associate: | DAVID HUNGERFORD, CHFC, CLU |
| Assoc. Phone: | (631) 305-5420 |
| Svc Ctr Phone: | (800) 777-6510 |
| Date: | October 1, 2013 |

NOTICE OF POLICY LAPSE

Your Universal Life insurance policy from AXA Equitable may be one of the most valuable purchases you will ever make.  It is certainly a purchase well worth protecting. A recent review of our records indicates that the net cash surrender value in your policy is not sufficient to cover your monthly deductions which were to have been deducted on October 1, 2013.  Therefore, as outlined in your policy, we are requesting a minimum payment of $9,609.00.  If this amount is not received at our service center on or before December 1, 2013, your policy will terminate without value. You should be aware that there may be tax reporting if the policy terminates with a policy loan outstanding. We hope that you will choose to continue your coverage.  If you elect to do so at this time, no medical or other evidence of insurability will be required.  However, reinstatement after the above date will be subject to evidence of insurability satisfactory to AXA Equitable. Since additional payments may be necessary to prevent termination of your policy in the near future, you may wish to increase the amount of your payment.
If you have any questions, please do not hesitate to contact your financial professional or our service center at the numbers shown above.
cc: DAVID HUNGERFORD, CHFC, CLU
     ASM B HND-596
PLEASE SEE ACCEPTABLE FORM OF PAYMENT RULES ON REVERSE SIDE.
PLEASE WRITE YOUR POLICY NUMBER, 37 205 155, ON YOUR CHECK.

| | |
|---|---|
| Grace Premium Required | Amount Due By December 1, 2013 |

| | |
|---|---|
| $9,609.00 Amount Enclosed | $9,609.00 AXA Equitable Payment Center Box 371459 Pittsburgh PA 15250-7459 |

MALCOLM M WIENER    *152507459599*
$100000000000000000000037205155020011120104501820190009600000800

EXHIBIT F

EXHIBIT F

PLACE
POSTAGE
HERE

AXA EQUITABLE
NATIONAL OPERATIONS CENTER
PO BOX 1047
CHARLOTTE NC  28201-1047

NAME_____

ADDRESS_____

CITY_____STATE_____ZIP_____

EXHIBIT F

EXHIBIT F

**AXA EQUITABLE**

**National Operations Center**
P.O. Box 1047
Charlotte, NC 28201-1047
**Address Service Requested**

#BWNJJPT

**AXA EQUITABLE**

**National Operations Center**
P.O. Box 1047
Charlotte, NC 28201-1047
**Address Service Requested**

#BWNJJPT



# EXHIBIT G

 AXA EQUITABLE

redefining / standards'

Laura Fitzpatrick
Senior Associate
(704) 341-6790
(800) 777-6510
Fax: (855) 268-6375
laura.fitzpatrick@axa.us.com

*Client Relations*

March 5, 2014

Malcolm Wiener
66 Vista Drive
Greenwich, CT 06830

Re:    Policy Numbers:      36 224 259 et al
       Insured:             Malcolm Wiener
       Our File Number:     2038054

Dear Mr. Wiener:

The following information is being provided in response to an inquiry initiated on your behalf by Gregg Buckbinder, on March 3, 2014, regarding the lapse and subsequent termination of the above policies on December 2, 2013.

Mr. Buckbinder advised that in December of 2013 you received notification that the above policies were terminated due to non-payment of premium; but did not receive proper notification that the policies would terminate by a certain date if the required payment was not received. Mr. Buckbinder expressed his dissatisfaction with the manner in which these policies were handled and requested an exception for policy reinstatement without submitting medical evidence of insurability.

These policies were flexible premium plans, which meant that premium payments could have been made at any time, and within limits, in any amount. However, the policy account needed to remain at a level that was sufficient to cover the monthly deductions for the policies.

On the 1st of each month, a deduction was made from the net cash surrender value to cover the monthly administrative charges and to provide insurance coverage. The cost of insurance is based on gender, attained age, and rating class of the insured person. As the monthly deductions from the policy account increase, the amount of the premium payment needed to keep the policy in force increases if the policy account is not sufficient to support the higher deduction. If at any time the net cash surrender value is insufficient to support the required deduction, then the policy is in danger of lapsing. This is what happened to your policies on October 1, 2013.

*Page 2*
*March 5, 2014*
*Policy Numbers: 36 224 259 et al*
*Insured: Malcolm Wiener*

In accordance with the terms of the contracts, lapse notices were generated on October 1, 2013. (copies enclosed) These notices were generated since the net cash surrender values were insufficient to cover the monthly deductions, which were scheduled to be withdrawn on October 1, 2013. As the notices indicated, a minimum repayment of $96,093.00 (for three policies) was required by December 1, 2013, or the policies would terminate without value.

Mr. Buckbinder also advised that you have historically received quarterly statements titled "Notice of Policy Lapse" for these policies which were always paid. I would like to point out that these were not your regularly scheduled premium notices. All three policies were on a semi-annual mode and enclosed are copies of the last premium notices that generated prior to the policy lapse on October 1, 2013, titled "Notice of Payment Due". The semi-annual premium notices for November of 2013 did not generate as the policies were already in a state of lapse. Had the grace payments been received by the required due date of December 1, 2013, the November 2013 premium notices would have been automatically generated and mailed to you at that time.

I have found no basis to allow these policies to be reinstated without medical evidence of insurability as the enclosed documentation gave full disclosure of the policy lapse and pending policy termination. However, we will continue to monitor the reinstatement application dated December 23, 2013, which is currently pending underwriting approval, for status updates. Our Underwriting Department will communicate with you directly once a final decision has been reached.

If you have any questions concerning this matter, or if I may be of further assistance, please contact me at the number provided on the first page.

Sincerely,

Laura Fitzpatrick

EXHIBIT G

AXA EQUITABLE

P.O. Box 1047
Charlotte, NC 29201-1047

Malcolm Wiener
66 Vista Drive
Greenwich, CT 06830

EXHIBIT G

EXHIBIT G

BILLING DEPARTMENT-IMMEDIATE ATTN.
P.O. BOX 1047
CHARLOTTE, NC 28201-1047                Insured:        MALCOLM H WIENER

MALCOLM H WIENER                         Policy Number:  36 224 159
44 VISTA DR                              Plan:           Flexible Premium Adjustable
GREENWICH CT 06830                                       Life Insurance
                                                         Universal Life
                                         Associate:      DAVID HUNGERFORD, CHFC, CLU
                                         Assoc. Phone:   (831) 755-3410
                                         Svc Ctr Phone:  (800) 777-6510
                                         Date:           October 4, 2013

                        NOTICE OF POLICY LAPSE

Your Universal Life insurance policy from AXA Equitable may be one of the most
valuable purchases you will ever make.  It is certainly a purchase well worth protecting.
A recent review of our records indicates that the net cash surrender value in your policy
is not sufficient to cover your monthly deductions which were to have been deducted on
October 1, 2013.  Therefore, as outlined in your policy, we are requesting a minimum
payment of $43,542.00.  If this amount is not received at our service center on or before
December 1, 2013, your policy will terminate without value. You should be aware that
there may be tax reporting if the policy terminates with a policy loan outstanding.
We hope that you will choose to continue your coverage.  If you elect to do so at at this time,
no medical or other evidence of insurability will be required.  However, reinstatement after
the above date will be subject to evidence of insurability satisfactory to AXA Equitable.
Since additional payments may be necessary to prevent termination of your policy in the
near future, you may wish to increase the amount of your payment.
If you have any questions, please do not hesitate to contact your financial professional or
our service center at the numbers shown above.
cc: DAVID HUNGERFORD, CHFC, CLU

       AXA # 159-596
PLEASE SEE ACCEPTABLE FORM OF PAYMENT RULES ON REVERSE SIDE.
PLEASE WRITE YOUR POLICY NUMBER, 36 224 159, ON YOUR CHECK.
Grace Premium            Amount Due By
Required                 December 1, 2013

$43,542.00               $43,542.00
Amount Enclosed          AXA Equitable Payment Center
                         BOX 371459
                         Pittsburgh PA 15250-7459
                         *101907459396*
MALCOLM H WIENER
610000000200000000001452415907019180104501900190041242007909

EXHIBIT G

BILLING DEPARTMENT-IMMEDIATE ATTN.
P.O. BOX 1047
CHARLOTTE, NC 28201-1047                  Insured:          MALCOLM E WIEMER

MALCOLM E WIEMER                          Policy Number:    37 205 147
66 VISTA DR                               Plan:             Flexible Premium Adjustable
GREENWICH CT 06830                                          Life Insurance
                                                            Universal Life
                                          Agent:            DAVID MUNGEAFORD, ChFC, CLU
                                          Agent Phone:      (203) 195-5420

                                          Svc Ctr Phone:    (800) 777-6510
                                          Date:             October 1, 2013
                                   NOTICE OF POLICY LAPSE

Your Universal Life insurance policy from AXA Equitable may be one of the most
valuable purchases you will ever make.  It is certainly a purchase well worth protecting.
A recent review of our records indicates that the net cash surrender value in your policy
is not sufficient to cover your monthly deductions which were to have been deducted on
October 1, 2013.  Therefore, as outlined in your policy, we are requesting a premium
payment of $43,242.00.  If this amount is not received at our service center on or before
December 1, 2013, your policy will terminate without value. You should be aware that
there may be tax reporting if the policy terminates with a policy loan outstanding.
We hope that you will choose to continue your coverage.  If you elect to do so at this time,
no refund or other evidence of insurability will be required.  However, reinstatement after
the above date will be subject to evidence of insurability satisfactory to AXA Equitable.
Since additional payments may be necessary to prevent termination of your policy in the
near future, you may wish to increase the amount of your payment.
If you have any questions, please do not hesitate to contact your financial professional or
our service center at the numbers shown above.
cc: DAVID MUNGEAFORD, ChFC, CLU
     AXA # HNB-304

PLEASE SEE ACCEPTABLE FORM OF PAYMENT RULES ON REVERSE SIDE.
PLEASE WRITE YOUR POLICY NUMBER, 37 205 147, ON YOUR CHECK.
Grace Premium                             Amount Due By
Required                                  December 1, 2013
_____
$43,242.00                    $43,242.00
Amount Enclosed               AXA Equitable Payment Center
                              Box 371459
                              Pittsburgh PA 15250-7459
                              "152207188906"
MALCOLM E WIEMER
37205201500050000000003720514701013170104A012201300037420070B

EXHIBIT G

BILLING DEPARTMENT-IMMEDIATE ATTN
P.O. BOX 1047
CHARLOTTE, NC 28201-1047                Insured:          MALCOLM H WIENER

MALCOLM H WIENER                         Policy Number:    77 205 185
56 VISTA DR                              Plan:             Flexible Premium Adjustable
GREENWICH CT 06830                                         Life Insurance
                                                           Universal Life
                                         Associate:        DAVID ZINKELWOOD, CHFC, CLU
                                         Assoc. Phone:     (614) 283-3420
                                         Svc Ctr Phone:    (800) 777-6510
                                         Date:             October 1, 2013
                                         NOTICE OF POLICY LAPSE

Your Universal Life Insurance policy from AXA Equitable may be one of the most
valuable purchases you will ever make. It is certainly a purchase well worth protecting.
A recent review of our records indicates that the net cash surrender value in your policy
is not sufficient to cover your monthly deductions which were to have been deducted on
October 1, 2013. Therefore, as outlined in your policy, we are requesting a minimum
payment of 19,609.00. If this amount is not received at our service center on or before
December 1, 2013, your policy will terminate without value. You should be aware that
there may be tax reporting if the policy terminates with a policy loan outstanding.
We hope that you will choose to continue your coverage. If you elect to do so at this time,
no medical or other evidence of insurability will be required. However, reinstatement after
the above date will be subject to evidence of insurability satisfactory to AXA Equitable.
Since additional payments may be necessary to prevent termination of your policy in the
near future, you may wish to increase the amount of your payment.
If you have any questions, please do not hesitate to contact your financial professional or
our service center at the numbers shown above.
cc: DAVID ZINKELWOOD, CHFC, CLU

A39 @ 889-394
PLEASE SEE ACCEPTABLE FORM OF PAYMENT BELOW OR REVERSE SIDE.
PLEASE VERIFY YOUR POLICY NUMBER, 77 205 185, ON YOUR CHECK.
Grace Premium                Amount Due BY
Required                     December 1, 2013

| 19,609.00 | 19,609.00 |
|-----------|-----------|
| Amount Enclosed | AXA Equitable Payment Center |
|           | Box 371450 |
|           | Pittsburgh PA 15250-7450 |

MALCOLM H WIENER          *152307185908*
*5100002030000030C200037705155010131010950181013700000000800000U0

Billing Department/Insurer's Attention Required
PO Box 1047
Charlotte NC 28201-1047

01008517

MALCOLM H WIENER
66 VISTA DR
GREENWICH CT 06830-7128

| | |
|---|---|
| Insured: | Malcolm H Wiener |
| Policy: | 36 724 259 |
| Plan: | Flexible Premium Adjustable Life Insurance Universal Life |
| Face Amount: | $7,200,000 # |
| Associate: | David Hungerford, CAFC  CLU |
| Assoc. Phone: | (631) 385-5420 |
| Service Center: | (800) 777-6510 AXA-Equitable.com |
| Date: | May 14, 2013 |
| Page: | 1 of 2 |

**NOTICE OF PAYMENT DUE**

| | | |
|---|---|---|
| Premium Due Date: | ........................................ | May 1, 2013 |
| Semi-Annual Premium | ........................................ | $ 96,782.50 |

#  This is the face amount of your policy.  The amount shown does not include the death benefit from any other riders and/or features.

Quality service is our number one priority. If you have any questions about your policy or require additional information about our other products or services, please contact your financial professional or our Service Center at the numbers shown above.

SEE REVERSE SIDE FOR IMPORTANT INFORMATION

PLEASE SEE ACCEPTABLE FORM OF PAYMENT RULES ON REVERSE SIDE.
PLEASE WRITE YOUR POLICY NUMBER, 36 824 259, ON YOUR CHECK.

| Semi-Annual Premium | Amount Due by May 1, 2013 |
|---|---|
| $ 96,782.50 | $96,782.50 |

Amount Enclosed

[            ]
Malcolm H Wiener

AXA Equitable Payment Center
Box 371459
Pittsburgh PA  15250-7459

lllullulllulllulllulllulllulllulll

S0000000000000000000000362242590201350100450293019009678250100

FOR THE POLICYOWNER'S INFORMATION

Paying Your Premium and Policy Loan Interest: When making your payment please:

1. Make your check payable to AXA Equitable. A single personal or business check is the strongly preferred form of payment. If a cash equivalent (money order, bank draft, cashier's check) is used for payment, a single cash equivalent is the strongly preferred form of payment, under certain circumstances, AXA Equitable may be required to report to the Internal Revenue Service receipt of cash equivalents as payment. All payments (checks and wire transfers) must be made in US dollars from an account at a U.S. financial institution. A payment in foreign currency is not an acceptable form of payment. A traveler's check is not an acceptable form of payment. A third party check endorsed by the payee to AXA Equitable is not acceptable, except rollover of a qualified plan or 1035 transfer, or Trustee check that involves no refund. Unacceptable forms of payment will be returned to clients.

2. Write your policy number on the front of your payment and include the return portion of this notice with your payment.

3. Return both items in the enclosed envelope. Do not staple or mutilate.

4. Return your payment by the due date shown on the face of this notice. If you have a flexible premium policy (as indicated on Page 1 of this notice), or if you have elected the Champion 2000 Flexible Premium Option, payment of scheduled premiums is not required to keep your policy in force. Please read your policy for further details.

5. If a policy loan balance is shown on this notice and you own a Universal Life, Incentive Life*, Incentive Life 2000 or a Survivorship 2000 policy, we will assume your payment is a loan repayment. Write "PREMIUM PAYMENT" on the return portion of this notice if you wish it processed as a premium payment.

Your cancelled check and this notice will be your receipt. If policy loan interest is shown on this notice, and if it is not paid by the due date, it will be added to your loan and accrue interest at the rate provided in your policy. You may repay all or part of your loan as provided in your policy.

Your payment is not considered received until it is received at our Administrative Office, as stated in your prospectus and policy.

We reserve the right to reject a payment if an unacceptable form of payment is received.

* Incentive Life policy forms 88-900 and 88-300.

For online access to your policy, please visit our website, www.axa-equitable.com

Policy information and basic transactions are always available via AXA Equitable VOICEIT Interactive Telephone, 24 hours a day, 7 days a week to:
• Make Premium and Loan Payments
• Get Current Policy Values
• Update Your Mailing Address
• Request a Loan
• Request Service Forms
• Gain access to Assisted Services and much more

Simply provide your policy number and AXA Equitable VOICEIT will lead you the rest of the way.

If you need assistance, press '0' or say 'Customer Service'. Customer Service Representatives are available to assist you Monday through Friday, from 8:00 A.M. to 7:00 P.M., Eastern Time. They can answer your questions about financial transactions, assist you in filing a claim, provide policy provisions or tax processing requirements for any change you may need.

Want to manage your account online?
Find out more today by logging on at www.axa-equitable.com/register
When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.

Billing Department-Immediate Attention Required
PO Box 1047
Charlotte NC 28201-1047

01608651

MALCOLM H WIENER
66 VISTA DR
GREENWICH CT 06830-7128

| | |
|---|---|
| Insured: | Malcolm H Wiener |
| Policy: | 37 205 166 |
| Plan: | Flexible Premium |
| | Adjustable Life Insurance |
| | Universal Life |
| Face Amount: | $ 1,500,000 # |
| Associate: | David Hungerford, ChFC, CLU |
| Assoc. Phone: | (631) 365-5420 |
| Service Center: | (800) 777-6510 |
| | AXA-Equitable.com |
| Date: | May 14, 2013 |
| Page: | 1 of 2 |

NOTICE OF PAYMENT DUE

Premium Due Date: ....................................... May 1, 2013

Semi-Annual Premium ....................................... $ 21,776.00

#  This is the face amount of your policy. The amount shown does not include the death benefit from any other riders and/or features.

Quality service is our number one priority. If you have any questions about your policy or require additional information about our other products or services, please contact your financial professional or our Service Center at the numbers shown above.

SEE REVERSE SIDE FOR IMPORTANT INFORMATION

PLEASE SEE ACCEPTABLE FORM OF PAYMENT RULES ON REVERSE SIDE.
PLEASE WRITE YOUR POLICY NUMBER, 37 205 166, ON YOUR CHECK.

| Semi-Annual Premium | Amount Due by May 1, 2013 |
|---|---|
| $ 21,776.00 | $ 21,776.00 |

Amount Enclosed

Malcolm H Wiener

AXA Equitable Payment Center
Box 371459
Pittsburgh PA  15250-7459

5000000000000000000000037205155020130503045028501900217760300

### FOR THE POLICYOWNER'S INFORMATION

**Paying Your Premium and Policy Loan Interest: When making your payment please:**

1. Make your check payable to AXA Equitable. A Single personal or business check is the strongly preferred form of payment. To cash equivalent (money order, bank draft, cashier's check) is used for payment, a single cash equivalent is the strongly preferred form of payment under certain circumstances, AXA Equitable may be required to report to the Internal Revenue Service receipt of cash equivalents as payment. All payments (checks and wire transfers) must be made in US dollars from an account at a U.S. financial institution. A payment in foreign currency is not an acceptable form of payment. A traveler's check is not an acceptable form of payment. A third party check endorsed by the payee to AXA Equitable is not acceptable, except rollover of a qualified plan or 1035 transfer, or Trustee check that involves no refund. Unacceptable forms of payment will be returned to clients.

2. Write your policy number on the front of your payment and include the return portion of this notice with your payment.

3. Return both items in the enclosed envelope. Do not staple or mutilate.

4. Return your payment by the due date shown on the front of this notice. If you have a flexible premium policy (as indicated on Page 1 of this notice), or if you have elected the Charter's 2000 Flexible Premium Option, payment of scheduled premiums is not required to keep your policy in force. Please read your policy for further details.

5. If a policy loan balance is shown on this notice and you own a Universal Life, Incentive Life*, Incentive Life 2000 or a Survivorship 2000 policy, we will assume your payment is a loan repayment. Write "PREMIUM PAYMENT" on the return portion of this notice if you want it allocated as a premium payment.

Your canceled check and this notice will be your receipt. If policy loan interest is shown on this notice, and if it is not paid by the due date, it will be added to your loan and accrue interest at the rate provided in your policy. You may repay all or part of your loan as provided in your policy.

**Your payment is not considered received until it is received at our Administrative Office, as stated in your prospectus and policy.**

**We reserve the right to reject a payment if an unacceptable form of payment is received.**

* Incentive Life policy forms 86-200 and 88-300.

For online access to your policy, please visit our website, www.axa-equitable.com

Policy information and basic transactions are always available via AXA Equitable VOICEit Interactive Telephone, 24 hours a day, 7 days a week to:
- Make Premium and Loan Payments
- Get Current Policy Values
- Update Your Mailing Address
- Request a Loan
- Request Service Forms
- Gain access to Assisted Services and much more

Simply provide your policy number and AXA Equitable VOICEit will lead you the rest of the way.

If you need assistance, press '0' or say 'Customer Service'. Customer Service Representatives are available to assist you Monday through Friday, from 8:00 A.M. to 7:00 P.M., Eastern Time. They can answer your questions about financial transactions, assist you in filing a claim, provide policy provisions or the processing requirements for any change you may need.

Want to manage your account online?
Find out more today by signing up at www.axa-equitable.com/register
When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.

EXHIBIT G

Date:   May 14, 2013
Policy:  37 205 155
Page:   2 of 2

If you would like more information on any of the following topics, please check the appropriate box/boxes below, fill in your name and address and return the coupon to us.

- [ ] I would like a personal review.
- [ ] Saving for retirement.
- [ ] Structuring income at retirement.
- [ ] Saving for my child's education.
- [ ] Accumulating Wealth.
- [ ] Minimizing taxes.
- [ ] Protecting my income.
- [ ] Other

NAME _____   ADDRESS _____

CITY _____   STATE _____ ZIP _____

HOME PHONE ( ___ ) _____   BUSINESS PHONE ( ___ ) _____

37 205 155                                                          BSC 003581

---

**Change of address**    Please detach and return if address has changed

Malcolm H Wiener
66 VISTA DR
GREENWICH CT 06830-7128

POLICY NUMBER
37 205 155

Do you have any other policies for which you want this change made?
[ ] Yes   [ ] No
If yes, list the policy numbers on the left.

NEW ADDRESS   (If your address differs from that shown above, furnish new information below)

CITY _____   STATE _____   ZIP _____

EXHIBIT G



# EXHIBIT H

<u>EXHIBIT H</u>



**Malcolm H Wiener**
**66 Vista Drive**
**Greenwich CT  06830**

*To Be Opened Only By The Insured*

               **Date:**   *March 24, 2014*

               **Proposed Insured:**   *Malcolm H Wiener*

               **Application File #:**   *36 224 259, 37 205 147,*
                                       *37 205 155*

## <u>ADVICE OF UNDERWRITING DECISION</u>

This explanation of our underwriting decision is furnished to you as part of our practices described in the notice "Your Insurance Application & How It is Handled at the Axa-Equitable", which you have been given.

Your request for Reinstatement has been declined.

The decision results from <u>our evaluation</u> of specific items of information obtained from you in your application, or supplements to the application statements:
  *- specifically information received from Dr Barry Boyd.*

Please see the reverse side of this notice for a detailed explanation of your rights to access and to correct, amend or delete and your rights to obtain and review specific items of information we have that support the reason for our decision.

*[signature]*

          Richard Jaegar, MD
          Medical Director

*sh*

AXA Equitable Life Insurance Company
AXA Life and Annuity Company
1290 Avenue of the Americas, New York, NY 10104

<u>EXHIBIT H</u>

You have a right to know the specific items of information we have that supports the reasons for our decision and the names and addresses of institutional sources of the information.   Requests for such information should be made to us in writing at the address on the reverse side within 90 business days.  We will answer within 21 business days of receipt.

You also have a right to see and obtain copies of such items of information – usually through a medical professional you name, in the case of medical information.  If the information is incorrect, you have a right to have it corrected, amended or deleted.

Within 30 business days of our receipt of your written request you may have access to recorded information about you which is reasonably locatable and retrievable.  This right does not extend to information which relates to and is collected in connection with or in reasonable anticipation of a claim of civil or criminal proceeding.  We will inform you of the nature and substance of the information and the identity of any institutional source which gave us the information.  If recorded, we will advise you of those persons to whom the information has been disclosed within two years before the request, or if not recorded, we will give you the names of the persons or organizations to whom such information is normally disclosed.  If you wish, we can arrange for you to see this information or obtain a copy by mail.  You may be asked to pay a reasonable charge for the cost of providing copies.

In all cases we reserve the right to disclose medical information through a medical professional you name.

You may request correction, amendment or deletion of any information in our files pertaining to you.  We will respond within 30 business days.

We will tell you if, in fact, we complied with your request.  If we do not agree with you, we will notify you of our refusal, give you our reasons, and give you the opportunity to file a concise statement of dispute with us.  Your statement will be sent with any disclosure of the information which we make to others.

In either event we will notify any insurance support organization that furnished us the information, and any person you name who may have received such information within the preceding two years, of the dispute regarding the information.  Your statement of dispute will be sent to these parties if we did not comply with your request.

A request to inspect or obtain a copy of a report furnished to us by a Consumer Reporting Agency should be made directly to the agency named.  All other questions and requests should be sent to us at the address shown on this Advice of Underwriting Decision.  If a disclosure of medical information may be involved, the request should include the full name and address of your physician to whom you wish us to write.



A TRUE COPY
ATTEST:

SANFORD D. LEVINE
CONNECTICUT STATE MARSHAL
AN INDIFFERENT PERSON

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## FOR THE
### DISTRICT OF CONNECTICUT

## APPEARANCE

| | | |
|---|---|---|
| MALCOLM H. WIENER | : | CIVIL ACTION NO.: |
| | : | |
| Plaintiff, | | |
| | : | |
| v. | : | |
| | : | |
| AXA EQUITABLE LIFE INSURANCE COMPANY | : | JUNE 10, 2015 |
| | | |
| Defendant. | | |

TO THE CLERK OF THIS COURT AND ALL PARTIES OF RECORD:
   Please enter my appearance as counsel in this case for the defendant:

**AXA EQUITABLE LIFE INSURANCE COMPANY**

Dated at Hartford, Connecticut this 10TH day of June, 2015.

THE DEFENDANT,
AXA EQUITABLE LIFE INSURANCE COMPANY


BY:   /s/ Robert E. Cassot
         Robert W. Cassot, Esq.
         Federal Bar No.: ct24094
         Morrison Mahoney LLP
         One Constitution Plaza, 10th floor
         Hartford, CT 06103
         Telephone: (860) 616-4441
         Fax: (860) 244-3800
         E-Mail:
         rcassot@morrisonmahoney.com

1

MORRISON MAHONEY LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

1144211v1

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically on this 10th day of June, 2015, and was served by mail to anyone unable to accept electronic filing and to plaintiff's counsel named below. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

Nicole C. Bikakis, Esq.
Tracy A. Saxe, Esq.
Saxe Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT 06517
T:      203-287-2100
F:      203-287-8847
E:      tas@sdvlaw.com
        ncb@sdvlaw.com
*Counsel for Plaintiff*

                                        BY:   _Robert W. Cassot ct24094_
                                              Robert W. Cassot, Esq.

2

1144211v1

# EXHIBIT C

DOCKET NO.: FST-CV-15-6025418          : SUPERIOR COURT

MALCOLM H. WIENER                       : JUDICIAL DISTRICT

V.                                      : OF STAMFORD

AXA EQUITABLE LIFE INSURANCE COMPANY    : JUNE 10, 2015

### <u>NOTICE OF FILING NOTICE OF REMOVAL IN FEDERAL COURT</u>

Pursuant to 28 U.S.C. §1446(d), the undersigned, on behalf of Defendant, AXA

EQUITABLE LIFE INSURANCE COMPANY, hereby provides notice that it has filed a Notice

of Removal of this action in and to the United States District Court for the District of

Connecticut.  A copy of the Notice of Removal is attached hereto as Exhibit A.

According to 28 U.S.C. § 1446(d), this notice hereby effectuates removal of this action

thereby preventing any further action in the Superior Court.

THE DEFENDANT,
AXA EQUITABLE LIFE INSURANCE
COMPANY


BY:  _Robert W. Cassot (416927)____
     Robert W. Cassot, Esq.
     Morrison Mahoney LLP
     - Its Attorneys -

1

1236580v1

## CERTIFICATION

The hereby certify that a copy of the above was mailed or electronically delivered on this date to all counsel and self-represented parties of record and that written consent for electronic delivery was received from all counsel and self-represented parties of record who were electronically served.

Nicole C. Bikakis, Esq.
Tracy A. Saxe, Esq.
Saxe Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT 06517
T:      203-287-2100
F:      203-287-8847
E:      tas@sdvlaw.com
        ncb@sdvlaw.com
*Counsel for Plaintiff*

BY:   _Robert W. Cassot (416927)_
      Robert W. Cassot, Esq.

2

**MORRISON MAHONEY LLP • COUNSELLORS AT LAW**
**ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103**
**(860) 616-4441 • JURIS NO. 404459**

1236580v1

**EXHIBIT A**

# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF CONNECTICUT

MALCOLM H. WIENER            :        CIVIL ACTION NO
                                  :

Plaintiff,

      v.                      :

AXA EQUITABLE LIFE INSURANCE    :        JUNE 10, 2015
COMPANY

Defendant.

## NOTICE OF REMOVAL

    To the Judges of the United States District Court for the District of Connecticut, Defendant, AXA Equitable Life Insurance Company, hereby files this Notice of Removal pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 1441, and 28 U.S.C. § 1446 and, in support thereof, respectfully states:

    1.    On or about May 15, 2015, Defendant, AXA Equitable Life Insurance Company through the State of Connecticut, Office of the Insurance Commissioner, was served with a Summons and Complaint for this matter.  On May 26, 2015, the Summons and Complaint for this matter was filed in the Superior Court for the Judicial District of Stamford at Stamford entitled: Malcolm H. Wiener v. AXA Equitable Life Insurance Company, with docket number FST-CV15-6025418-S (hereinafter "State Action") returnable June 2, 2015, a copy of which is attached hereto as Exhibit A.

1236608v1

2.      Plaintiff alleges seven counts against the defendant arising out of  flexible premium life insurance policies issued by defendant on or about October 14, 1986 on the life of plaintiff in the amount of $16 million (collectively "the Policies).

3.      This action involves parties of different states.   At all times relevant, plaintiff was a resident of Greenwich, Connecticut.  (<u>See</u> Exhibit A, Summons).

4.      Defendant, AXA Equitable Life Insurance Company is an insurance company duly organized and existing under the laws of the State of New York with its principal place of business located at 1290 Avenue of the Americas, 15th Floor, New York, NY 10104.  Attorney Robert W. Cassot has filed a notice of appearance on behalf of the defendant, AXA Equitable Life Insurance Company, a copy of which is attached hereto as Exhibit B.

5.      Upon information and belief, and based on the allegations in Plaintiff's Complaint, the amount in controversy in this action is likely in excess of One Hundred Thousand Dollars ($100,000.00), exclusive of interest and costs.  Plaintiff's Complaint alleges that the Plaintiff obtained three universal life insurance plans that stay in effect throughout Plaintiff's life provided that the conditions of the policies are met. (<u>See</u> Exhibit A, ¶7, Complaint).

6.      Plaintiff, Malcolm H. Wiener, alleges that as a result of the defendant's failure to provide notice of premiums due, the plaintiff received a notice of policy termination  for each of the policies along with an application for reinstatement. (<u>See</u> Exhibit A, ¶26, Complaint).

7.      Plaintiff, Malcolm H. Wiener, alleges that on or about March 24, 2014, the Defendant sent notice to Plaintiff formally declining Plaintiff's reinstatement application. (Ex. A, ¶ 39, Complaint).

1236608v1

8.     The State Action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332 because (1) the citizenship of the Defendant is wholly diverse from the citizenship of the Plaintiff; and (2) the amount in controversy, exclusive of interest and costs, likely exceeds One Hundred Thousand Dollars ($100,000.00).  Removal of this action to this Court is proper pursuant to 28 U.S.C. § 1441 *et seq*.

9.     Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is filed with this Court within thirty (30) days after receipt by the undersigned Defendant of the Summons and Complaint, setting forth the claims for relief upon which the action is based.

10.     Defendant, AXA Equitable Life Insurance Company, has complied with the procedural requirements for removal as set forth in 28 U.S.C. § 1446.

11.     The Superior Court for the Stamford at Stamford is located within the District of Connecticut, and, therefore, venue is proper pursuant to 28 U.S.C. § 86, because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

12.     A copy of the written notice required by 28 U.S.C. § 1446(d) is attached hereto as Exhibit C.

WHEREFORE, Defendant, AXA Equitable Life Insurance Company, respectfully removes this action from the Superior Court of Connecticut, Judicial District of Stamford, to this Court pursuant to 28 U.S.C. § 1332 and U.S.C. § 1441.

1236608v1

THE DEFENDANT,
AXA EQUITABLE LIFE INSURANCE
COMPANY

BY:    /s/ Robert E. Cassot
        Robert W. Cassot, Esq.
        Federal Bar No.: ct24094
        Morrison Mahoney LLP
        One Constitution Plaza, 10th Floor
        Hartford, CT 06103
        Telephone: (860) 616-4441
        Fax: (860) 244-3800
        E-Mail: rcassot@morrisonmahoney.com

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically on this 10th day of June, 2015, and was served by mail to anyone unable to accept electronic filing and to plaintiff's counsel named below. Notice of this filing will be sent by e-mail to all parties by operation of the Court 's electronic filing system or by mail to anyone unable accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

Nicole C. Bikakis, Esq.
Tracy A. Saxe, Esq.
Saxe Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT 06517
T:      203-287-2100
F:      203-287-8847
E:      tas@sdvlaw.com
ncb@sdvlaw.com
*Counsel for Plaintiff*

BY:    /s/ Robert E. Cassot
Robert W. Cassot, Esq.

1236608v1

https://efile.eservices.jud.ct.gov/motion/EFileConfirmation.aspx?crn=3647102&UnID=15...



**State of Connecticut Judicial Branch**
# Civil and Family E-Services

---

**Attorney/Firm:** MORRISON MAHONEY LLP (404459)          **E-Mail:** AHILL@MAIL.MM-M.COM   Logout

Hide Instructions                **You have successfully e-filed!**

**Instructions:** The information about the item you filed is on this confirmation page. You must print a copy of this page for your records. Choose **Print This Page** at the top of the page to print your copy.

Choose **E-File Another Pleading/Motion/Other on this Case** to go back to the **Select a Motion** page to choose another document name and file another document.

Choose **Return to Civil/Family Menu** to go back to the menu page.

Choose **Return to Case Detail** to look at the documents filed in this case or to file a reclaim in this case.

> Print This Page

### Confirmation of E-filed Transaction  (print this page for your records)

| | |
|---|---|
| **Docket Number:** | FST-CV-15-6025418-S |
| **Case Name:** | WIENER, MALCOLM H. v. AXA EQUITABLE LIFE INSURANCE COMPANY |
| **Type of Transaction:** | Pleading/Motion/Other document |
| **Date Filed:** | Jun-10-2015 |
| **Motion/Pleading by:** | MORRISON MAHONEY LLP (404459) |
| **Document Filed:** | 103.00 NOTICE OF REMOVAL TO FEDERAL DISTRICT COURT |
| | |
| **Date and Time of Transaction:** | Wednesday, June 10, 2015 2:31:52 PM |

> E-File Another Pleading/Motion/Other document on this Case

> Return to Civil / Family Menu          Return to Case Detail

Copyright © 2015, State of Connecticut Judicial Branch