UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MALCOLM H. WIENER,

                Plaintiff,

-against-

AXA EQUITABLE LIFE INS. CO., DAVID
HUNGERFORD, AXA ADVISORS, L.L.C., and
AXA NETWORK, L.L.C.,

                Defendants.

**OPINION AND ORDER**

16 Civ. 4019 (ER)

Ramos, D.J.:

      Malcolm H. Wiener ("Wiener") brings this suit against his former life insurance company, AXA Equitable Life Ins. Co. ("AXA"), his life insurance agent, David Hungerford, and two related companies that serviced his policies, AXA Advisors, L.L.C. and AXA Network, L.L.C., for allowing his life insurance policies to lapse and for failing to reinstate his policies. Wiener moves the Court to reconsider its decision to preclude the testimony of two of Wiener's proposed experts. For the reasons provided below, the motion is DENIED.

**I.    Background**

      In the late 1980s, Wiener purchased three flexible premium life insurance policies from AXA. Doc. 79, 3. On December 2, 2013, AXA sent Wiener, seventy-eight years old at the time, a Notice of Policy Termination for each policy because of a lapse in payment. Doc. 79-4, 2, 3, 4. On December 23, 2013, Wiener submitted the application for reinstatement, including the requested medical evidence of insurability. *Id.* On March 24, 2014, AXA sent Wiener a letter signed by its medical director, Richard Jaeger ("Jaeger"), informing him that it had declined to reinstate the policies. Doc. 79-8, 2. Specifically, it provided, "The decision results from our evaluation of specific items of information obtained from you in your application, or

supplements to the application statements…specifically information received from Dr[.] Barry Boyd." *Id*. (emphasis omitted). Wiener alleges that his health did not materially differ between June 2008, when AXA last previously granted his reinstatement, and December 2013, when Wiener applied for reinstatement. *Id.* at 14.

During discovery, Wiener obtained additional information about AXA's decision to deny his reinstatement application. Specifically, Wiener learned that it was Hallie Hawkins ("Hawkins"), the chief underwriter, and not Jaeger, AXA's medical director, that made the determination to deny Wiener's application for reinstatement. Doc. 134-8, 8; Doc. 135-6, 16, 195. In making this decision, Hawkins relied on the Senior Applicant Medical Checklist, which is used for all life insurance applicants over the age of seventy, and the Gen Re Source Life Underwriting Manual. Doc. 135-6, 72, 98. As relevant to this motion, under the Senior Applicant Medical Checklist, the underwriter should "usually decline" to renew the policy, if the applicant has difficulty performing activities of daily living, an albumin level of 3.8 or less, or mild or worse dementia. Doc. 140-7, 3. In the life insurance industry, low albumin levels are associated with increased mortality risk. Doc. 173-I, 87:11–13.

On August 24, 2017, the first day of her deposition,[1] Hawkins testified that the deciding factors in denying Wiener's application were cerebrovascular accident ("CVA"), monoclonal gammopathy of uncertain significance ("MGUS"), mild cognitive impairment, paroxysmal atrial fibrillation ("PAF"), stroke, gait instability, and anemia. Doc. 135-6, 212. On September 19, 2017, during his deposition, Wiener testified that he had never suffered a stroke. Doc. 135-2, 9. During the second day of her deposition, on October 25, 2017, after Wiener's testimony,

---

[1] The deposition of Hawkins spanned two days because a lawyer representing one of the parties left early on the first day. Doc. 135-6, 218.

Hawkins testified, "The reason we declined Mr. Wiener's request for reinstatement was because of the serum albumin."  Doc. 135-9, 12.  Hawkins also testified that she consulted neither Wiener's treating physician, Dr. Boyd, nor AXA's medical director, even though she could not read Dr. Boyd's handwriting.  Doc. 135-6, 214; 135-9, 34.  Furthermore, Dr. Boyd contacted AXA to clarify his notes and one of Hawkins colleagues told her in an email, "Please contact the insured's doctor Barry Boyd," Doc. 136-14, 8, but Hawkins never returned the call because she claims that she did not have authorization to call Dr. Boyd.  Doc. 141-9, 31.

Defendants filed motions *in limine* to exclude the testimony and reports of three proffered expert witnesses:  Dr. Ori Ben-Yehuda, Dr. Barry Boyd—both of whom have been Wiener's treating physicians—and Larry Stern, an actuary.  Docs. 124, 122, 120.  Wiener claims that AXA inappropriately denied his reinstatement application in March 2014 and wants to introduce the testimony of these three experts to establish (1) that he was medically qualified for reinstatement, and (2) that Defendants used faulty procedures to process his reinstatement application.  On March 15, 2019, the Court determined that Larry Stern was qualified to testify on damages but precluded the testimony of Dr. Boyd and Dr. Ben-Yehuda.  Doc. 160.  The Court reasoned that Dr. Boyd and Dr. Ben-Yehuda were not qualified to testify on whether AXA's underwriting decisions were arbitrary and capricious.  The Court presumes familiarity with the remaining facts of the case.  *Id.*  Wiener now moves the Court to reconsider the doctors' preclusion.  Doc. 173, 3.

## II. Legal Standard

The Second Circuit has delineated the discretion of district courts to revisit earlier rulings by treating those decisions as "the law of the case," subject to revision only when there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice."  *Official Comm. of Unsecured Creditors of Color*

3

*Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (internal quotation marks omitted). "Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). As such, a motion for reconsideration is not an opportunity to advance new facts and arguments previously available to the movant; nor is a motion for reconsideration a substitute for appeal. *In re Optimal U.S. Litig.*, 886 F. Supp. 2d 298, 312 (S.D.N.Y. 2012).

### III. Discussion

In the underlying motions *in limine*, Wiener argued that AXA's decision to not reinstate his life insurance policies was arbitrary and capricious because it was not based on an accurate assessment of his health, medical records, or the medicine behind them. Doc. 135, 1. He further argued that Dr. Ben-Yehuda and Dr. Boyd can testify as to the understanding of the medical records and the medical significance of Wiener's albumin levels. *Id.*; Doc. 136, 1–2. In the instant motion for reconsideration, Wiener's main argument is also that Hawkins's conclusion and analysis of the medical records were wrong, and that Dr. Boyd and Dr. Ben-Yehuda are medical professionals uniquely able to opine on Wiener's medical condition and explain conflicting or illegible entries in his medical records. Doc. 173, 2. But as the Court held in its March 15, 2019 Order, Wiener fundamentally misapprehends the question to be answered here, which is whether AXA denied Wiener's reinstatement in an arbitrary and capricious manner within the framework of insurance industry underwriting standards. Doc. 160, 11.

4

The arbitrary and capricious standard means that the insurability decision was made "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Schad v. Stamford Health Sys., Inc.*, 358 F. App'x 242, 243 (2d Cir. 2009) (quoting *Miller v. United Welfare Fund*, 72 F.3d 1066, 1070 (2d Cir. 1995)). Where an insurer provides reasons for its conclusions and supports those conclusions with evidence that a reasonable mind might accept as adequate, "more than a scintilla but less than a preponderance" of evidence is enough to satisfy rationality. *Atakent v. Prudential Ins. Co. of Am.*, 125 F. App'x 369, 370 (2d Cir. 2005); *see also Wiener v. AXA Equitable Life Ins. Co.*, No. 16 CIV. 04019 (ER), 2019 WL 1228074, at *6 (S.D.N.Y. Mar. 15, 2019) (collecting cases holding insurance companies making reinstatement decisions are required to act reasonably, not arbitrarily and capriciously, in determining whether an applicant has submitted satisfactory evidence of insurability).

Here, liability will ultimately be determined, from an underwriting or insurance risk perspective, by whether AXA reasonably relied on Wiener's albumin level to determine whether he was insurable. That, at base, is an underwriting decision, not a medical one. In other words, did Hawkins act arbitrarily and capriciously when she followed the Senior Applicant Medical Checklist which says an underwriter should "usually decline" the policy if the applicant has an albumin level of 3.8 or less (a level which Wiener does not contest)? Doc. 140-7, 3. Thus, despite their medical credentials, Wiener's proposed experts cannot shed light on the question of insurability before this Court. In fact, they each acknowledged their lack of expertise in life insurance underwriting guidelines. Doc. 160, 11–12 (collecting deposition excerpts to that effect).

Lastly, Wiener has not provided the Court with any new case law, evidence, or facts upon which the Court should reconsider its ruling. *See Unsecured Creditors of Color Tile*, 322 F.3d at

5

167 (elaborating on high bar for reconsideration).  Accordingly, Wiener has not demonstrated that the extraordinary remedy of reconsideration is warranted in this case.

## IV. Conclusion

For the reasons stated above, Plaintiff's motion is DENIED.  The parties are directed to appear for a status conference on February 12, 2020 at 10:30 AM.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 172.

It is SO ORDERED.

Dated: January 24, 2020
New York, New York

Edgardo Ramos, U.S.D.J.