UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MALCOLM H. WIENER,

                Plaintiff,

– against –

AXA EQUITABLE LIFE INS. CO.,
DAVID HUNGERFORD, AXA
ADVISORS, L.L.C., and AXA
NETWORK, L.L.C.,

                Defendants.

**OPINION AND ORDER**

16 Civ. 4019 (ER)

RAMOS, D.J.:

    Malcolm H. Wiener brought this action against his former life insurance company, AXA Equitable Life Insurance Co. ("AXA Equitable"), his life insurance agent, David Hungerford, and two related companies that serviced his policies, AXA Advisors, L.L.C. and AXA Network, L.L.C., for allowing his life insurance policies to lapse and for failing to reinstate his policies. Docs. 1, 79.[1] Wiener now moves the Court to alter or amend its decision granting summary judgment to Defendants. Doc. 255. For the reasons set forth below, the motion is DENIED.

## I.   BACKGROUND

### A.  Factual Background

    The Court assumes familiarity with the facts and holdings of its prior opinions precluding the testimony of two of Wiener's proposed experts, denying reconsideration of that order, and granting summary judgment for Defendants and denying Wiener's cross-motion for partial summary judgment. Docs. 160, 177, 253.

    In brief, Wiener purchased three flexible premium life insurance policies from AXA Equitable in the late 1980s. Doc. 253 at 2. Hungerford was the agent of record on

---

[1] Wiener's third amended complaint, Doc. 79, was the operative complaint at the time the Court entered its opinion granting summary judgment to Defendants.

these policies at all relevant times since 1990.  *Id.*  Wiener relied on the financial services firm he founded, Millburn Corporation ("Millburn"), to handle all aspects of his financial portfolio, including making the necessary payments to keep his life insurance policies in effect.  *Id.* at 1–3.  Under the terms of the policies, AXA Equitable would send premium reminder notices for the planned payment period selected by the policyholder, unless the policyholder elected not to receive them.  *Id.* at 2.  However, Wiener's policies did not require fixed premium payments, and Millburn instead paid the policies' cash value based on lapse notices, because the company decided to pay only the minimum payment amount to keep the policies in force, and the lapse notices provided the minimum payment amount.  *Id.* at 2–3; Doc. 160 at 3.  From 1994 to October 2013, Millburn would not pay the monthly premiums for Wiener's insurance policies until it received a policy lapse notice from AXA Equitable, at which point it would pay the minimum amount necessary to cover monthly deductions for three months at a time.  Doc. 253 at 3.  Those payments allowed the policies to remain in force.  *Id.*

In 2009, Wiener's address of record for the policies was changed from Millburn's address to his personal address in Connecticut.  *Id.*  Wiener had a system in place at his residence to process mail he received there, and his executive assistant was responsible for sending notices from AXA Equitable to Millburn.  *Id.*  On October 1, 2013, the policies lapsed and entered a sixty-one-day grace period.  *Id.* at 4.  During that period, AXA Equitable did not send Wiener any premium reminder notices, and the parties disputed whether it sent, and whether Wiener received, any policy lapse notices.  *Id.*  In any event, Millburn did not pay the minimum premiums owed on the policies, and they were terminated on December 1, 2013.  *Id.*  On December 2, 2013, when Wiener was seventy-eight years old, he received a Notice of Policy Termination from AXA Equitable for each policy because of the lapse in payment, along with an application for reinstatement of his policies.  Docs. 79-4 at 2–4, 253 at 4.  Under the terms of the policies, Wiener could apply for either technical reinstatement, which occurs

automatically if AXA Equitable made a technical or processing mistake resulting in a lapsed policy, or a regular reinstatement, which requires evidence of insurability. Doc. 253 at 4. Wiener applied for reinstatement of his insurance in late December 2013. *Id.* On March 24, 2014, AXA Equitable sent Wiener a letter signed by its medical director, Richard Jaeger, informing him that it had declined to reinstate the policies, based on "our evaluation of specific items of information obtained from you in your application, or supplements to the application statements . . . specifically information received from Dr[.] Barry Boyd." Doc 79-8. Wiener alleged that his health did not materially differ from June 2008, when AXA Equitable had previously granted his application for reinstatement, and December 2013, when he applied for the reinstatement of his insurance policies. Doc. 79 ¶¶ 63, 93, 135.

Jaeger's letter notwithstanding, it was in fact AXA Equitable's underwriter, Hallie Hodgins (formerly known as Hallie Hawkins)[2], who reviewed Wiener's reinstatement application to determine whether he was insurable under AXA Equitable's guidelines. Doc. 253 at 4–5. In reviewing his application, Hodgins assessed Wiener's medical records against AXA Equitable's applicant medical checklist for seniors and the underwriting manual, and she requested a physician statement from Wiener's physician, Dr. Boyd. *Id.* at 5. Those records showed, among other things, that Wiener had at various times had ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* Under the Senior Applicant Medical Checklist that AXA Equitable had in place, the underwriter should "usually decline" to renew the policy if the applicant had difficulty performing activities of daily living, an albumin level of 3.8 or less, or mild or worse dementia. Doc. 140-7 at 3.

---

[2] In accordance with the parties' briefing on the instant motion, the Court will refer to her as Hallie Hodgins.

According to Jaeger's deposition testimony, in the life insurance industry, ██████ ██████████ are associated with increased mortality risk.³  Doc. 173-10 at 9.

Hodgins was deposed in this action over two days, one in August and one in October 2017.  Doc. 177 at 2–3.  On the first day of her deposition, Hodgins testified that, as she had written in a contemporaneous 2014 note, the deciding factors in denying Wiener's application for reinstatement were ████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████.  Doc. 135-6 at 211–13.  However, Wiener testified at his deposition in September 2017 that █████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████.⁴  Doc. 261 at 9.  On the second day of her deposition, after Wiener's testimony, Hodgins testified that the reason AXA Equitable denied his application for reinstatement was ██████████████████████████████████████  Doc. 135-9 at 12–13.  In its opinion granting summary judgment for Defendants, the Court held, "as to Wiener's argument regarding [Hodgins's] credibility, the record reflects that there is no inconsistency in her testimony regarding whether she relied upon ███████████ █████████ to deny his claim:  she simply testified that there were 'other factors' that counsel declining reinstatement, █████████████████████████████ █████████"  Doc. 253 at 45.

### B. North Carolina Action

In 2018, Wiener brought another case in North Carolina (the "North Carolina Action"), which proceeded to trial in the U.S. District Court for the Western District of North Carolina on Wiener's claim for negligence, alleging that AXA Equitable had

---

³ Jaeger's testimony also explained that █████████████████████████████████  Doc. 173-10 at 8.

⁴ Dr. Boyd, Wiener's primary care physician, now submits an affidavit to the same effect.  Doc. 261-5.

4

negligently reported certain medical codes to the MIB Group, Inc. (formerly the Medical Information Bureau).⁵ Docs. 261 at 4, 257-3. The jury ultimately returned a verdict in favor of Wiener, finding that AXA Equitable had negligently reported certain medical codes including ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, among other codes. The jury awarded him $8 million in damages.⁶ Docs. 261 at 5, 257-6.

As relevant to Wiener's instant motion, Hodgins testified at trial in the North Carolina Action. Doc. 261 at 11–12. At trial, she testified that, to the best of her recollection, she had attempted to contact Wiener's physician Dr. Boyd before deciding Wiener's reinstatement application, and that there was no reason she thought she was not allowed to contact him. *Id.* Hodgins's trial testimony stands in contrast to her earlier deposition testimony in this action that she had not called Dr. Boyd and that she did not believe she had authorization to contact Dr. Boyd. Doc. 141-9 at 31; *see also* Doc. 177 at 3 (denying motion for reconsideration on expert testimony). Hodgins also submitted two different responses to Wiener's discovery requests in the North Carolina Action about the codes AXA Equitable submitted to MIB. First, Defendants' January 2020 responses to

---

⁵ Wiener's 2018 complaint in the North Carolina Action brought claims for negligent misrepresentation, libel, negligence, and unfair and deceptive trade practices, but the only cause of action that proceeded to trial was negligence. Docs. 257-3 at 6–11, 261 at 4 n.3. According to the court in the North Carolina Action, "MIB is a corporation that compiles information about insurance applicants, analogous to a health history credit report. [ ] When an individual applies for life insurance with an MIB member company, the company may disclose the individual's MIB report and medical conditions, if any, to the insurance company evaluating the individual's application." *Wiener v. AXA Equitable Life Ins. Co.*, No. 18 Civ. 106 (RJC) (DSC), 2021 WL 665112, at *1 (W.D.N.C. Feb. 19, 2021).

⁶ The jury awarded $8 million in damages to Wiener, finding that he had incurred damages of $16 million due to AXA Equitable's negligence, but deducting $8 million due to his unreasonable failure to avoid or minimize his injuries. Doc. 257-6. The North Carolina court then vacated the jury's award upon AXA Equitable's post-trial motion, finding that it lacked subject matter jurisdiction because Connecticut, rather than North Carolina, law applied. "Under such circumstances, this Court does not have jurisdiction to hear a common law claim that is precluded by the state law in question." *Wiener v. AXA Equitable Life Ins. Co.*, 2021 WL 665112, at *6. Wiener then moved for reconsideration, which the North Carolina court denied in September 2021. Doc. 261 at 5 n.14; *Wiener v. AXA Equitable Life Ins. Co.*, No. 18 Civ. 106 (RJC) (DSC), 2021 WL 5988273 (W.D.N.C. Sept. 20, 2021).

Wiener's interrogatories in that case stated that Hodgins had directed employee Sandra Huffstetler to submit seven codes to be entered into Wiener's MIB file, while AXA Equitable's supplemental July 2020 interrogatory response, signed by Hodgins, stated that, "Defendant has since learned that the information actually reported to the MIB differed from what [Hodgins] requested that Ms. Huffstetler report," and thus only four codes had been reported to the MIB. Doc. 261-9 at 4, Doc. 257-9 at 4.

### C. Procedural History

Wiener brought this suit in Connecticut state court on May 26, 2015. Doc. 1 at 1. On June 10, 2015, AXA Equitable removed the action to federal court in the District of Connecticut, asserting that the court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. *Id.* at 1–2. On May 10, 2016, the parties filed a joint motion and stipulation to transfer venue to this District, and the Connecticut district court granted that request. *See* Docs. 58 and 58-1.

In his operative complaint, filed August 12, 2016, Wiener asserted thirteen claims. Doc. 79. Against AXA Equitable, Wiener asserted the following claims: declaratory and injunctive relief; equitable reinstatement; breach of contract for failure to send the October 1, 2013 policy lapse notices; breach of contract for failure to send the premium reminder notices on November 1, 2013; waiver; violation of the Connecticut Unfair Trade Practices Act ("CUTPA"); fraudulent misrepresentation; and breach of the covenant of good faith and fair dealing. *Id.* Against AXA Advisors and AXA Network, Wiener asserted the following: negligence, breach of fiduciary duty, and violation of CUTPA. *Id.* Against Hungerford, Wiener asserted the following: negligence and breach of fiduciary duty.[7] *Id.*

---

[7] While Wiener's motion to reconsider does not address any of the claims relevant to Hungerford, Hungerford filed an objection to Wiener's motion for reconsideration "in the event that the Motion seeks to alter or amend the judgment against Counts X and XII of the Complaint," and adopting AXA Equitable's opposition. Doc. 266.

6

In advance of the parties' briefing on summary judgment, Defendants filed motions in limine to exclude the testimony and reports of three proffered expert witnesses: Dr. Ori Ben-Yahuda, Dr. Boyd—both of whom had been Wiener's treating physicians—and actuary Larry Stern. Docs. 120, 124, 126, 128. On March 15, 2019, the Court precluded the testimony of Dr. Ben-Yahuda and Dr. Boyd, finding that their medical expertise was not relevant because Wiener's medical status was not at issue, and that they were not qualified to testify on whether AXA Equitable's insurance underwriting decisions were arbitrary and capricious. Doc. 160. On April 15, 2019, Wiener moved the Court to reconsider its decision excluding Dr. Ben-Yahuda's and Dr. Boyd's testimony, or in the alternative for certification of interlocutory appeal. Doc. 172. The Court denied the motion for reconsideration on January 24, 2020, and denied the request for certification of interlocutory appeal on February 14, 2020. Docs. 177, 178.

On April 17, 2020, Defendants moved for summary judgment on all of Wiener's claims, and Wiener cross-moved for partial summary judgment on his claim for breach of contract for failure to send premium reminder notices in November 2013. Docs. 186, 194, 202. On March 31, 2021, the Court granted Defendants' motions for summary judgment and denied Wiener's cross-motion for partial summary judgment. Doc. 253. Wiener moved for reconsideration of the Court's decision on April 28, 2021. Doc. 255.

## II.   DISCUSSION

### A. Legal Standard

Wiener moves to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." A motion to alter a judgment under Rule 59(e) "may be granted 'only if the movant satisfies the heavy burden of demonstrating an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 10 F. Supp. 3d 460, 475 (S.D.N.Y. 2014)

7

(quoting *Hollander v. Members of the Bd. of Regents of the Univ. of the State of N.Y.*, 524 F. App'x 727, 729 (2d Cir. 2013)). The Second Circuit has noted that it is "well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks and citation omitted).

"The standards governing motions to alter or amend judgment under Rule 59(e) and motions for reconsideration or reargument under Local Rule 6.3 are identical." *Farez-Espinoza v. Napolitano*, No. 08 Civ. 11060 (HB), 2009 WL 1118098, at *3 (S.D.N.Y. Apr. 27, 2009) (citing *Henderson v. Metro. Bank & Trust Co.*, 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007)). "A motion for reconsideration or re-argument shall be granted only if the court has overlooked 'controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court.'" *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 500 (S.D.N.Y. 2008) (quoting *Greenwald v. Orb Commc'ns & Mktg., Inc.*, No. 00 Civ. 1939 (LTS) (HBP), 2003 WL 660844, at *1 (S.D.N.Y. Feb. 27, 2003)). Under such circumstances, a motion for reconsideration may be granted "to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks and citation omitted). "Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). Both rules are "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the [C]ourt." *SOHC, Inc. v. Zentis Food Sols. N. Am., LLC*, No. 14 Civ. 2270 (JMF), 2014 WL 6603951, at *1 (S.D.N.Y. Nov. 20, 2014) (internal quotation marks and citation omitted). "Where the

movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion or attempts to advance new facts, the motion for reconsideration must be denied." *Mikol*, 554 F. Supp. 2d at 500 (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

Whether to grant or deny a motion brought under Rule 59(e) is within "the sound discretion of the district court." *In re Gildan Activewear, Inc. Sec. Litig.*, No. 08 Civ. 5048 (HB), 2009 WL 4544287, at *2 (S.D.N.Y. Dec. 4, 2009); *see also McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983). Under the strict standard applied by courts in this Circuit, "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257 (citation omitted).

### B. Hodgins's Testimony in the North Carolina Action

Wiener argues that Hodgins's testimony at trial in the North Carolina Action, which contradicted her deposition testimony in this action about whether she contacted Dr. Boyd, is new evidence relevant to her credibility and to whether AXA Equitable's denial of Wiener's application for reinstatement was arbitrary and capricious. Doc. 261 at 6. Wiener argues that "Ms. Hodgins is not credible," and that a jury must evaluate her testimony as to the rationale for AXA Equitable's denial of Wiener's application for reinstatement. *Id.* at 7. AXA Equitable responds that Wiener is estopped from claiming that evidence from the North Carolina Action is material; that evidence from that action is in fact immaterial; and that Hodgins's trial testimony in the North Carolina Action is not "new" evidence because it was available to Wiener since September 2020, approximately six months before the Court granted summary judgment for Defendants. Doc. 265 at 6–11.

9

The Court agrees with Defendants: evidence of Hodgins's testimony in the North Carolina Action is not new evidence, and even if it were, it would not have changed the outcome of the Court's prior ruling.[8]  Under Rule 59(e), as under Rule 60(b)(2), "courts apply the same strict standard for determining what qualifies as 'newly discovered evidence.'" *Becnel v. Deutsche Bank AG*, 838 F. Supp. 2d 168, 171 (S.D.N.Y. 2011).  To meet the standard for new evidence, the moving party must establish that:

> (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

*Id.* (quoting *United States v. Int'l Broth. of Teamsters,* 247 F.3d 370, 392 (2d Cir. 2001)). "These requirements must be 'strictly met.'  Moreover, the newly discovered evidence must be 'highly convincing.'"  *Apex Emp. Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.*, No. 11 Civ. 9718 (ER), 2017 WL 456466, at *7 (S.D.N.Y. Feb. 1, 2017) (citations omitted).  Hodgins's testimony in the North Carolina Action does not meet that high standard, because it fails to meet the second, third, and fourth *Teamsters* elements.

First, Wiener was not justifiably ignorant of Hodgins's testimony and discovery responses in the North Carolina Action until bringing this motion in April 2021.  As Defendants point out, Doc. 265 at 11, he was clearly aware of that testimony in September 2020, and thus he could have alerted the Court to any inconsistencies in

---

[8] AXA Equitable argues that Wiener is judicially estopped from arguing that the proceedings in the North Carolina Action are relevant, because he previously argued in opposing AXA Equitable's motion to transfer that action that "the claims in North Carolina do not concern Defendant's denial or reinstatement or termination of the Policies in any way."  Doc. 265 at 6–7.  "Typically, judicial estoppel will apply if:  (1) a party's later position is 'clearly inconsistent' with its earlier position; (2) the party's former position has been adopted in some way by the court in the earlier proceeding; and (3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel."  *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). Because the Court finds that Hodgins's testimony and discovery responses in the North Carolina Action do not meet the high standard for alteration or amendment under Rule 59(e), the Court does not reach AXA Equitable's judicial estoppel argument.

10

Hodgins's testimony well before the Court entered its opinion granting summary judgment to Defendants. In similar situations where movants did not demonstrate "why any [such] facts could not have been discovered by the time the summary judgment motion was decided," courts have denied motions for reconsideration under Rule 59 or Rule 60. *Gustavia Home, LLC v. Rice*, 724 F. App'x 87, 89 (2d Cir. 2018) (summary order); *see also Grand River Enterprises Six Nations, Ltd. v. King*, No. 02 Civ. 5068 (JFK), 2012 WL 263100, at *3, 7 (S.D.N.Y. Jan. 30, 2012) (denying motion for reconsideration in part because the movant had not explained how it was justifiably ignorant of and could not have obtained certain documents that predated the entry of judgment through public records requests or searching court records).

In reply, Wiener argues that all of the cases AXA Equitable cites regarding the timing for newly discovered evidence are inapposite because those decisions in fact turned on the materiality of the evidence proffered as new evidence, and the North Carolina Action evidence is "new evidence" because it was not available to him until after the parties' motions for summary judgment had been fully briefed and submitted. Doc. 269 at 8. Wiener relies on *Atlantic States Legal Foundation, Inc. v. Karg Bros.*, in which the district court in the Northern District of New York found that the movant's evidence of the defendant tannery's violations of its environmental permit was "newly discovered evidence," where those violations took place after the parties' summary judgment briefing had been submitted.[9] 841 F. Supp. 51, 57 (N.D.N.Y. 1993).

---

[9] The *Atlantic States* case is distinguishable because in that case the defendant agreed that "a factual issue has been raised by this new evidence[.]" 841 F. Supp. at 57. Moreover, the court found that movants' evidence of ongoing violations of defendant's wastewater discharge permit for copper and lead rendered its previous determination that those allegations should be dismissed as moot to be no longer factually correct, and therefore found that reconsideration of its prior order granting summary judgment to the defendant tannery was warranted. *Id.* Similarly, a court in this District has granted a motion for reconsideration of a summary judgment where evidence about whether the plaintiff had reached its insurance cap, not previously before the Court, became available: "That factual question has now been answered. So the ground for the denial no longer exists[.]" *In re AXIS Reinsurance Co. REFCO Related Ins. Litig.*, No. 07 Civ. 7924 (JSR), 2010 WL 1375712, at *4 (S.D.N.Y. Mar. 7, 2010), *amended sub nom. In re AXIS Reinsurance Co., REFCO Related Ins. Litig.*, No. 07 Civ. 7924 (JSR), 2010 WL 1375070 (S.D.N.Y. Mar.

11

However, courts in this District have found *Atlantic States Legal Foundation* to be inapplicable in the context of testimony that was available to the movant, even if only after the relevant briefing had concluded. *See Pettiford v. City of Yonkers*, No. 14 Civ. 6271 (JCM), 2020 WL 1989419, at *2 (S.D.N.Y. Apr. 27, 2020) ("[A]lthough [p]laintiff conducted Koch's deposition after the completion of the briefing on [p]laintiff's motion to amend, it cannot be said that Koch's deposition testimony from November 2019 was not available to [p]laintiff prior to this Court's February 13, 2020 Order."); *Kopperl v. Bain*, No. 09 Civ. 1754 (CSH), 2016 WL 310719, at *4 (D. Conn. Jan. 26, 2016) (denying motion to reconsider based on evidence derived from deposition that was conducted prior to court's ruling, and noting, "the standard applied in motions for reconsideration is whether the evidence was discovered prior to the ruling, not the completion of briefing."); *24 Seven, LLC v. Martinez*, No. 19 Civ. 7320 (VSB), 2021 WL 276654, at *3 n.3 (S.D.N.Y. Jan. 26, 2021) (citing *Pettiford*, 2020 WL 1989419, at *2).

In any event, even assuming that Wiener's proffer of new evidence is timely, his motion fails on the third and fourth *Teamsters* prongs. The Court determined in its opinion granting summary judgment that it was undisputed that ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓ at various times, and that from an underwriting or insurance risk perspective, AXA Equitable's reliance on ▓▓▓▓▓▓ to determine his insurability was reasonable. Doc. 253 at 5, 45. The Court also specifically found that "the proffered evidence addressing [Wiener's] health and any information potentially missing in health records are immaterial." *Id.* at 45. Moreover, the Court twice found that Dr. Ben-Yahuda's and Dr. Boyd's proffered expert testimony about Wiener's health, offered to challenge AXA Equitable's decision-making based ▓▓▓▓▓▓▓▓▓▓▓▓, was not

---

19, 2010), and *report and recommendation adopted sub nom. In re REFCO Sec. Litig.*, No. 07 Civ. 7924, 2010 WL 1374891 (S.D.N.Y. Apr. 5, 2010). In both *Atlantic States* and *AXIS*, movants introduced new evidence showing that the district courts' prior conclusions in granting summary judgment were, as a matter of fact, empirically incorrect. Such is not the case here.

admissible and not relevant to the issues in dispute. Docs. 160 (granting motion to preclude Ben Yahuda's and Boyd's expert testimony), 177 (denying reconsideration). Thus, to the extent Hodgins's testimony in the North Carolina Action departed from her deposition testimony about whether she did or was authorized to contact Dr. Boyd, that evidence is not material and, as Defendants point out, is "merely cumulative or impeaching," rather than new evidence under the high standard required for a Rule 59(e) motion. Furthermore, Hodgins's discovery responses about the variance in codes, whether seven or four, that AXA Equitable reported to MIB are not material to this action. Doc. 265 at 9. While Wiener is correct that assessing the credibility of a witness is a matter for the jury and not for the Court on summary judgment, Docs. 261 at 6–7, 269 at 5–8, her credibility was not and is not material to the Court's decision.[10]

### C. AXA Equitable's Expert Testimony

Next, Wiener seeks to discredit AXA Equitable's expert witness, Vera Dolan. Wiener argues that it was error for the Court to consider AXA Equitable's expert testimony because AXA Equitable did not proffer a foundation for Dolan's qualifications to opine on its insurance guidelines; because she is not a credible expert based in part on her submission of an expert affidavit in a 2014 lawsuit brought in the Southern District of Texas by "birther" Orly Taitz,[11] alleging that immigrants who seek protection in the United States are vectors of infectious disease, Doc. 257-10; and because the study that Dolan and AXA Equitable relied on at summary judgment "provides no justification whatsoever for applying a supernormal ▬▬▬ standard only to applicants over

---

[10] As AXA Equitable points out, Doc. 272 at 5, the Court's summary judgment opinion did not rely on Hodgins's deposition testimony or make a determination about her credibility as a witness, Doc. 253 at 44–45. Rather, it found that AXA Equitable's decision to deny Wiener's reinstatement application was not arbitrary or capricious, and noted "as to Wiener's argument regarding [Hodgins's] credibility, the record reflects that there is no inconsistency in her testimony regarding whether she relied upon Wiener's ▬▬▬ ▬▬▬ to deny his claim: she simply testified that there were 'other factors' that counseled declining reinstatement, ▬▬▬▬▬▬▬▬▬▬ justified that decision." *Id.* at 45.

[11] "Birtherism" refers to the conspiracy theory believed by some that President Barack Obama was not born in the United States and therefore was ineligible for the presidency.

13

age 70." Doc. 261 at 15–19.  Accordingly, Wiener claims that there are genuinely disputed issues of material fact whether AXA Equitable's guidelines based on ▬▬▬▬▬▬▬▬▬▬ were reasonable, and he renews his argument that AXA Equitable's reliance on ▬▬▬▬▬▬▬▬ to men over 70 is "blatant age discrimination."  *Id.* at 17–19.  Wiener also argues—now for the third time—that Dr. Ben-Yahuda "is in a far better position to explain the meaning of medical studies to a jury and to expose the weakness of such studies, such as those conducted by Ms. Dolan, which he has severely criticized."  *Id.* at 18.

First, while the Taitz complaint is troubling, it is not relevant to the instant suit.  More to the point, Wiener did not bring it up or question Dolan's credibility as an expert in his opposition to AXA Equitable's motion for summary judgment.[12]  *See* Doc. 216.  Nor did he ever bring a motion to preclude Dolan's testimony, as Defendants did with regard to his proposed experts, Dr. Ben-Yahuda and Dr. Boyd.  Doc. 265 at 13–14.  "New arguments may not be raised in a motion for reconsideration under Rule 59(e)[,]" *Meteor Ag v. Fed. Exp. Corp.*, No. 08 Civ. 3773 (JGK), 2009 WL 3853802, at *3 (S.D.N.Y. Nov. 18, 2009) (citing *Morse/Diesel Inc. v. Fid. & Deposit Co. of Md.*, 768 F. Supp. 115, 116 (S.D.N.Y. 1991)), and "[a] motion for reconsideration "is not a vehicle for relitigating old issues, . . . securing a rehearing on the merits, or otherwise taking a 'second bite at the apple,'" *Gustavia Home*, 724 F. App'x at 88–89 (quoting *Analytical Surveys, Inc.*, 684 F.3d at 52); *see also Rafter v. Liddle*, 288 F. App'x 768, 769 (2d Cir. 2008).

Furthermore, as AXA Equitable points out, Wiener's arguments about Dolan's credibility are inconsequential.  Doc. 272 at 6.  The Court granted summary judgment to AXA Equitable "because there is no evidence in the record challenging the reasonableness of AXA Equitable's underwriting decision" and because Wiener

---

[12] Wiener's opposition did challenge the methodology of the study co-authored by Dolan in the *Journal of Insurance Medicine* and sought to introduce other journal articles to bolster its argument that reliance on ▬▬▬▬▬▬▬▬ in the insurance industry is age discrimination.  Doc. 216 at 34–35.

"provide[d] no admissible evidence to challenge the reasonableness of AXA Equitable's reliance on ███████████ in its decision to deny reinstatement." Doc. 253 at 44–45. It only mentioned the expert testimony that AXA Equitable had offered in an aside.[13] As AXA Equitable points out, and as the Court's opinion made clear, it was Wiener's burden to show that AXA Equitable's actions were unreasonable from an insurance underwriting perspective, which he did not do. At bottom, Wiener urges the Court—again—to rewrite the rules and standards for the insurance industry. This the Court has repeatedly declined to do, and now does again here.

### D. Premium Reminder Notices and Payment Deadlines

Wiener also argues that the Court's grant of summary judgment to AXA Equitable on Counts IV and VII, for breach of contract for failure to send the November 1, 2013 premium reminder notices and the related claim for fraudulent misrepresentation, and Count III, based on AXA Equitable's alleged failure to send the policy lapse notices, was error, because there is at least a material issue of fact regarding whether AXA Equitable waived enforcement of the lapse deadlines. Doc. 261 at 19–25. Wiener argues, first, the Court's holding that AXA Equitable could send the biannual premium reminder notices "twice a year—i.e., once during each semiannual payment period—rather than on May 1 and November 1 of each year," was an error of law and fact. Doc. 261 at 19. He contends that the Court should look beyond the text of the insurance policies to the intent of the parties, and that there is a genuine issue of fact whether Wiener was damaged by AXA Equitable's not sending the reminder notices on May 1 and November 1. *Id.* at 20–22. However, as AXA Equitable points out, these are not new issues, and Wiener has not pointed to any new evidence or any change in relevant law in making these arguments. Doc. 265 at 14–15. The new arguments he now makes—that AXA Equitable was estopped from arguing that it was permitted to send

---

[13] As Wiener himself noted, Doc. 261 at 15, AXA Equitable submitted only two nonconsecutive pages of Dolan's deposition transcript, Doc. 192-13.

premium reminder notices at any time, and that as a highly intelligent man he would never have chosen to receive payment reminders that would be sent only after the payment had been made—seek to relitigate the same issues that the Court has already decided. Such arguments are not the proper subject of a motion to amend or alter judgment, or for reconsideration. *Mikol*, 554 F. Supp. at 500 (citation omitted). A motion for reconsideration is not meant for the parties to "reflexively reargue those issues already considered when a party does not like the way the original motion was resolved, and is not a substitute for an appeal." *S.E.C. v. Neto*, 27 F. Supp. 3d 434, 439 (S.D.N.Y. 2014) (internal quotation marks and citation omitted).

Likewise, Wiener's argument that AXA Equitable waived its right to enforce the payment deadline shown on the lapse deadlines by failing to enforce those deadlines before, throughout the parties' past several years of dealings, is unavailing. Doc. 261 at 23–24. Wiener introduces no new evidence or new law that would change the Court's prior ruling[14] that "as a matter of law, AXA Equitable did not waive its right to terminate the policies on December 2, 2013." Doc. 253 at 30. "Where the movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion or attempts to advance new facts, the motion for reconsideration must be denied." *Mikol*, 554 F. Supp. 2d at 500 (citing *Shrader*, 70 F.3d at 257).

Accordingly, Wiener's motion to alter or amend the Court's judgment is denied.

### E. Leave to Amend

Finally, Wiener requests leave to amend to add claims under New York General Business Law and New York Insurance Law analogous to the claim he brought under CUTPA, on which the Court granted summary judgment to Defendants after concluding

---

[14] Wiener cites a 2005 fax sent by Hungerford warning Wiener's advisors at Millburn against delaying payment to AXA Equitable and the deposition testimony of Millburn employees Harvey Beker, Gregg Buckbinder, and Maria Loh, all from September or October 2017, all of which were either available to him or actually submitted to and before the Court previously. Doc. 261 at 24.

16

that Connecticut law did not apply. Doc. 261 at 25–27. Wiener claims that AXA Equitable will not be prejudiced by amending the complaint and that amendment is in the interests of justice, because he could not have known that the Court would apply New York and not Connecticut substantive law. *Id.*

That application is denied. As the Second Circuit has instructed, "[w]here . . . a party does not seek leave to file an amended complaint until after judgment is entered, Rule 15's liberality must be tempered by considerations of finality. As a procedural matter, a party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to [Rules] 59(e) or 60(b)." *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011) (per curiam) (internal quotation marks and citations omitted); *see also Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 143 (2d Cir. 2020). Because the Court does not vacate its prior judgment, leave to amend is denied.

### III.  CONCLUSION

For the foregoing reasons, Wiener's motion for reconsideration is DENIED. The Clerk of Court is respectfully directed to terminate the motions, Docs. 255 and 273.

It is SO ORDERED.

Dated:   March 29, 2022
         New York, New York

                                                   EDGARDO RAMOS, U.S.D.J.